# United States Court of Appeals for the Seventh Circuit

---

REGINALD CLAY,

*Plaintiff-Appellee,*

V.

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:24-cv-4194 (Hon. Georgia N. Alexakis)

---

## OPENING BRIEF AND APPENDIX FOR DEFENDANT-APPELLANT UNION PACIFIC RAILROAD COMPANY

---

Michael Rubin
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1743

Gary Feinerman
Sean M. Berkowitz
Johanna M. Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

August 25, 2025

*Counsel for Defendant-Appellant Union Pacific Railroad Company*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __25-2185__

Short Caption: __Reginald Clay v. Union Pacific Railroad Company__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Union Pacific Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Union Pacific Corporation

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: _/s/ Gary Feinerman_        Date: 08/25/2025

Attorney's Printed Name: __Gary Feinerman__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes ☒    No ☐**

Address: __Latham & Watkins LLP__

    __330 North Wabash Avenue, Suite 2800, Chicago, IL 60611__

Phone Number: (312) 876-7700        Fax Number: (312) 993-9767

E-Mail Address: _gary.feinerman@lw.com_

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2185

Short Caption: Reginald Clay v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Union Pacific Railroad Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

 Union Pacific Corporation

    ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 Union Pacific Corporation

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Sean M. Berkowitz        Date: 08/25/2025

Attorney's Printed Name:  Sean M. Berkowitz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐  **No** ☒

Address: Latham & Watkins LLP

        330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700        Fax Number: (312) 993-9767

E-Mail Address: sean.berkowitz@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __25-2185__

Short Caption: __Reginald Clay v. Union Pacific Railroad Company__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Union Pacific Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Union Pacific Corporation

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __/s/ Johanna Spellman__    Date: __08/25/2025__

Attorney's Printed Name: __Johanna Spellman__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☒

Address: __Latham & Watkins LLP__

    __330 North Wabash Avenue, Suite 2800, Chicago, IL 60611__

Phone Number: __(312) 876-7700__    Fax Number: __(312) 993-9767__

E-Mail Address: __johanna.spellman@lw.com__

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __25-2185__

Short Caption: __Reginald Clay v. Union Pacific Railroad Company__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Union Pacific Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Union Pacific Corporation

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: _/s/ Kathryn A. Running_        Date: _08/25/2025_

Attorney's Printed Name: _Kathryn A. Running_

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☒

Address: _Latham & Watkins LLP_

    _330 North Wabash Avenue, Suite 2800, Chicago, IL 60611_

Phone Number: _(312) 876-7700_        Fax Number: _(312) 993-9767_

E-Mail Address: _kathryn.running @lw.com_

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2185

Short Caption: Reginald Clay v. Union Pacific Railroad Company

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

     Union Pacific Railroad Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     Latham & Watkins LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

          Union Pacific Corporation

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          Union Pacific Corporation

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

---

Attorney's Signature: /s/ Michael H. Rubin     Date: 08/25/2025

Attorney's Printed Name: Michael H. Rubin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐  **No** ☒

Address: Latham & Watkins LLP

     505 Montgomery Street, Suite 2000, San Francisco, CA 94111

Phone Number: (415) 391-0600     Fax Number: (415) 395-8095

E-Mail Address: michael.rubin@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2185

Short Caption: Reginald Clay v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Union Pacific Railroad Company

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Union Pacific Corporation

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Union Pacific Corporation

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Benjamin Harris          Date: 08/25/2025

Attorney's Printed Name:  Benjamin Harris

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes ☐  No ☒**

Address: Latham & Watkins LLP

1271 Avenue of the Americas, New York, NY 10020

Phone Number: (212) 906-1200          Fax Number: (212) 751-4864

E-Mail Address:  ben.harris@lw.com

# TABLE OF CONTENTS

**Page**

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ..................... i

TABLE OF AUTHORITIES .............................................................................. viii

STATEMENT OF JURISDICTION .................................................................. 1

ISSUE PRESENTED ...................................................................................... 3

STATEMENT OF THE CASE ......................................................................... 5

    A.    Statutory Background ................................................................... 5

    B.    Plaintiff's Claims ......................................................................... 7

    C.    The District Court's Order .......................................................... 8

STANDARD OF REVIEW .............................................................................. 9

SUMMARY OF ARGUMENT ........................................................................ 10

ARGUMENT ................................................................................................... 12

I.     THE BIPA AMENDMENT APPLIES RETROACTIVELY ............................ 12

    A.    Illinois Law Applies Procedural And Remedial Amendments Retroactively ........................................................................... 12

    B.    The BIPA Amendment Enacts Only A Remedial Change, And Therefore Applies Retroactively ........................................... 16

II.    THE DISTRICT COURT'S CONTRARY CONCLUSION IS INCORRECT ........................................................................... 19

    A.    The District Court's Reasoning Is Flawed ........................... 19

    B.    Other Decisions Holding That The BIPA Amendment Is Not Retroactive Are Unpersuasive As Well ............................... 23

CONCLUSION ................................................................................................ 26

ADDENDUM PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 28(f)

APPENDIX PURSUANT TO CIRCUIT RULE 30(a) and 30(b)

# TABLE OF AUTHORITIES

**Page(s)**

*Barnack v. E-Triple J, Inc.*,
2017 WL 326016 (W.D. Wis. Jan. 23, 2017) .......................................... 1

*Brandl v. Superior Air-Ground Ambulance Service, Inc.*,
2012 WL 7763427 (N.D. Ill. Dec. 7, 2012) ........................................... 13

*Caveney v. Bower*,
797 N.E.2d 596 (Ill. 2003) ................................................................. 15

*Commonwealth Edison Co. v. Will County Collector*,
749 N.E.2d 964 (Ill. 2001) ........................................................... 12, 14

*Cothron v. White Castle System, Inc.*,
216 N.E.3d 918 (Ill. 2023) ..........................................................*passim*

*Dardeen v. Heartland Manor, Inc.*,
710 N.E.2d 827 (Ill. 1999) ..........................................................*passim*

*Giles v. Sabert Corp.*,
2025 WL 274326 (N.D. Ill. Jan. 21, 2025) .......................................... 24

*Gonzaga University v. Doe*,
536 U.S. 273 (2002) .......................................................................... 16

*Gregg v. Central Transport LLC*,
2025 WL 907540 (N.D. Ill. Mar. 21, 2025) .......................................... 24

*Jones v. USP Chicago, Inc.*,
2025 WL 1547290 (N.D. Ill. May 29, 2025) .................................... 24, 25

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994) .......................................................................... 12

*People ex rel. Madigan v. J.T. Einoder, Inc.*,
28 N.E.3d 758 (Ill. 2015) ............................................. 10, 14, 15, 17, 22

*Moore v. Harper*,
600 U.S. 1 (2023) ............................................................................. 14

*Northbound Group, Inc. v. Norvax, Inc.*,
795 F.3d 647 (7th Cir. 2015) .............................................................. 9

*Orlicki v. McCarthy*,
122 N.E.2d 513 (Ill. 1954) ................................................................. 14

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) ........................................................................ 2

*People v. Atkins*,
838 N.E.2d 943 (Ill. 2005) ............................................................ 15, 17, 22

*People v. Easton*,
123 N.E.3d 1074 (Ill. 2018) ...................................................................... 14

*People v. Glisson*,
782 N.E.2d 251 (Ill. 2002) ................................................................*passim*

*Perry v. Department of Financial & Professional Regulation*,
106 N.E.3d 1016 (Ill. 2018) ....................................... 9, 12, 13, 14, 15

*Pogorzelska v. VanderCook College of Music*,
2024 WL 1578715 (N.D. Ill. Apr. 11, 2024) ...................................... 13

*Reiser v. Residential Funding Corp.*,
380 F.3d 1027 (7th Cir. 2004) .................................................................. 23

*Saint Anthony Hospital v. Whitehorn*,
132 F.4th 962 (7th Cir. 2025) .................................................................. 16

*Schutte v. Ciox Health, LLC*,
28 F.4th 850 (7th Cir. 2022) ...................................................................... 2

*Schwartz v. Supply Network, Inc.*,
2024 WL 4871408 (N.D. Ill. Nov. 22, 2024)...............................*passim*

*T.S. ex rel. T.M.S. v. Heart of CarDon, LLC*,
43 F.4th 737 (7th Cir. 2022)...................................................................... 16

*Thomas v. Guardsmark, LLC*,
487 F.3d 531 (7th Cir. 2007) ...........................................................*passim*

*Willis v. Universal Intermodal Services, Inc.*,
2025 WL 1455791 (N.D. Ill. Apr. 2, 2025) ......................................... 24

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ...................................................................................... 2, 3

28 U.S.C. § 1332(a) ...................................................................................... 1, 2

28 U.S.C. § 1332(a)(1) ..................................................................................... 1

## STATE CONSTITUTIONAL AND STATUTORY PROVISIONS

Ill. Const. art. IV, § 10 ................................................................................ 23

Illinois Public Act 103-0769 (2024) ..................................................... 3, 4, 6

5 ILCS 70/4 ............................................................................................... 13

225 ILCS 46/1 .......................................................................................... 23

740 ILCS 14/1 *et seq.* ................................................................................ 1

740 ILCS 14/10 ....................................................................... 6, 7, 11, 17, 20

740 ILCS 14/15 ................................................................................... 11, 20

740 ILCS 14/15(a) ...................................................................................... 6

740 ILCS 14/15(b) ......................................................... 3, 5, 6, 17, 20

740 ILCS 14/15(c) ...................................................................................... 6

740 ILCS 14/15(d) ........................................................................... 5, 6, 20

740 ILCS 14/15(e) ...................................................................................... 6

740 ILCS 14/20 .................................................................................... 3, 16

740 ILCS 14/20(a) ................................................................................. 3, 5

740 ILCS 14/20(b) ............................................................................*passim*

740 ILCS 14/20(c) ...................................................................................... 6

740 ILCS 14/25 .................................................................... 7, 11, 17, 20

## OTHER AUTHORITIES

*Black's Law Dictionary* (5th ed. 1979) ...................................................... 16

## STATEMENT OF JURISDICTION

Plaintiff-Appellee Reginald Clay filed this lawsuit in the Circuit Court of Cook County, Illinois, alleging that Defendant-Appellant Union Pacific Railroad Company violated Section 15(b) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act"). A19-25.[1]

Union Pacific removed the suit under the diversity jurisdiction. The parties are "citizens of different States," 28 U.S.C. § 1332(a)(1), as Union Pacific is a Delaware corporation with its principal place of business in Nebraska, and Plaintiff is a citizen of Illinois. A12-13 (¶¶ 5-7); A19 (¶¶ 2-3). Although residence and citizenship are not coextensive, because Plaintiff alleges that he resides in Illinois, and because the approximately 1,500 (see below) alleged BIPA violations took place while he was working in Illinois, the strongest inference is that Plaintiff is a citizen of Illinois. *See Barnack v. E-Triple J, Inc.*, 2017 WL 326016, *2 (W.D. Wis. Jan. 23, 2017).

The amount in "controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). Plaintiff alleges that he visited Union Pacific's facilities "[o]n numerous occasions between 2019 and 2024" and that Union Pacific violated BIPA on each occasion, entitling him up to $5,000 per violation. A19, 23-24 (¶¶ 5, 7, 34 & Prayer for Relief ¶ a). In an interrogatory response, Plaintiff states he visited Union Pacific's intermodal terminals approximately 1,500 times during the five-year limitations

---

[1]    Unless otherwise indicated, "Dkt." refers to documents filed in the District Court, No. 1:24-cv-4194 (N.D. Ill.), and "ECF" refers to documents filed in this appeal. Pagination used corresponds to the pagination of the Pacer header.

period.  *See* Pet. for Permission to Appeal 6, *Clay v. Union Pac. Railroad Co.*, No. 25-8011 (7th Cir. June 20, 2025), ECF No. 1.  Plaintiff also requests attorney's fees under 740 ILCS 14/20(a)(3), A24 (Prayer for Relief ¶ b), and fees preceding removal "count toward the jurisdictional amount."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006).  Because Plaintiff seeks up to $5,000 for each BIPA violation he alleges, along with reasonable attorney's fees, the amount in controversy exceeded $75,000 at the time of removal.  A13-14 (¶¶ 8-11); *see Schutte v. Ciox Health, LLC*, 28 F.4th 850, 856 (7th Cir. 2022) (amount in controversy need not be "establish[ed]," but only satisfied via a "good faith estimate" (citation omitted)).  Under Plaintiff's theory of the case, he alleges over $7.5 million in statutory damages, not including attorney's fees.  The district court therefore had diversity jurisdiction under 28 U.S.C. § 1332(a).

Union Pacific moved for partial summary judgment to limit the damages Plaintiff may recover, premised on an amendment to BIPA—which took effect on August 2, 2024—limiting plaintiffs to just "one recovery" where a defendant violates Section 15(b) by collecting the same biometric information in the same manner each time.  740 ILCS 14/20(b).  The district court denied Union Pacific's motion in an order entered April 10, 2025.  A1-2.  On June 10, 2025, the district court certified the order for interlocutory appeal under 28 U.S.C. § 1292(b).  Dkt. 65.  On June 20, 2025, Union Pacific timely filed a petition for permission to appeal in this Court.  *See Clay v. Union Pac. R.R. Co.*, No. 25-8011 (7th Cir. June 20, 2025), ECF No. 1.  This Court granted Union Pacific's petition on July 10, 2025.  *Id.*, ECF No. 8.  This Court therefore has appellate jurisdiction under 28 U.S.C. § 1292(b).

## ISSUE PRESENTED

Whether Illinois Public Act 103-0769, which amended the remedial provisions in Section 20 of BIPA, 740 ILCS 14/20, applies retroactively to cases pending at the time the amendment took effect on August 2, 2024.[2]

## INTRODUCTION

This appeal presents a pure question of Illinois law: Whether the 2024 amendment to BIPA—which limits the damages that plaintiffs may recover for substantive violations of the Act—applies retroactively to cases pending when the amendment took effect. The answer is yes: As Illinois caselaw and this Court's precedent teach, statutory amendments affecting only the remedies available to plaintiffs apply retroactively. The BIPA amendment does just that—it limits damages available to plaintiffs, and thereby applies to cases, like this one, pending at its enactment.

Section 15(b) of BIPA prohibits the collection of an individual's biometric information without consent. *See* 740 ILCS 14/15(b). The Act creates a private right of action, allowing plaintiffs to collect up to $5,000 in damages "for each violation" of the Act's substantive provisions. *Id*. 14/20(a). In 2023, the Illinois Supreme Court held that a plaintiff may recover for "every scan or transmission" of their biometric information. *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929 (Ill. 2023). The Court recognized that its holding created the possibility of astronomical damage

---

[2] For ease of reference, the Statutory Addendum reproduces Illinois Public Act 103-0769 and the post-amendment version of BIPA.

awards—potentially running into the billions of dollars. *Id*. at 928-29. But the Court explained that policy concerns over excessive damage awards were best addressed by the legislative branch, not the courts, and called on the Illinois General Assembly to act. *Id*.

The General Assembly answered the call. In 2024, it enacted—and the Governor signed into law—an amendment to address the astronomical damage awards made possible by *Cothron*. The amendment provides that when a defendant collects the same biometric information in the same way each time, the plaintiff is limited to just "one recovery" of damages. 740 ILCS 14/20(b). The amendment took effect on August 2, 2024. *See* Ill. Pub. Act 103-0769 (2024).

The BIPA amendment does not expressly say whether it applies retroactively to cases pending on its effective date. But Illinois caselaw is clear that when a statutory amendment is silent on that point, procedural or remedial amendments to a statute apply retroactively, while substantive amendments apply only prospectively. This Court's precedent is in accord, holding that Illinois statutory amendments that affect only what happens *inside* the courtroom apply retroactively, while amendments affecting conduct *outside* the courtroom do not. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 536-37 (7th Cir. 2007). By limiting the damages available to plaintiffs for multiple violations of the Act's substantive provisions, the BIPA amendment effects a remedial change to the Act, and therefore applies retroactively.

In reaching the contrary conclusion, the District Court did not correctly implement *Thomas* and settled Illinois law holding that remedial and procedural changes apply retroactively. This Court should reverse.

## STATEMENT OF THE CASE

### A.    Statutory Background

**1.**    BIPA provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information," unless it first receives informed written consent. 740 ILCS 14/15(b). A similar prohibition extends to the transmission and dissemination of biometric information. *Id.* 14/15(d). To enforce those substantive provisions, BIPA creates a private right of action authorizing individuals "aggrieved" by BIPA violations to "recover for each violation" either statutory damages of $1,000 for negligent or $5,000 for willful violations, or actual damages, whichever is greater. *Id.* 14/20(a).

In *Cothron*, the Illinois Supreme Court considered whether a Section 15(b) claim accrues each time a defendant scans a plaintiff's biometric identifier, "or only upon the first scan." 216 N.E.3d at 922. The Court held that "a separate claim accrues under the Act each time a private entity scans ... an individual's biometric identifier or information in violation of section 15(b)." *Id.* at 928.

The Court recognized that its ruling could subject private entities to "potentially excessive damage awards under the Act." *Id.* at 929. White Castle had explained that allowing recovery for every scan would trigger "'astronomical' damage awards that would constitute 'annihilative liability' not contemplated by the

5

legislature." *Id.* at 928. Indeed, White Castle itself faced classwide damages of more than $17 billion. *Id.* But the Illinois Supreme Court held that the "statutory language is clear," and it explained that "policy-based concerns" about excessive damages "are best addressed by the legislature." *Id.* at 928-29. The Court thus "suggest[ed] that the [General Assembly] review these policy concerns and make clear its intent regarding the assessment of damages under the Act." *Id.* at 929.

**2.** The General Assembly did just that, amending BIPA in precisely the manner suggested by the Illinois Supreme Court. *See* Ill. Pub. Act 103-0769. Specifically, the legislature amended Section 20—the remedial provision authorizing a private right of action—to limit a plaintiff to just one recovery when a defendant collects the plaintiff's same biometric identifier or information using the same method each time. The amendment reads:

> For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, *one recovery* under this Section.

740 ILCS 14/20(b) (emphasis added); *see also id.* 14/20(c) (similar for Section 15(d) violations).

The amendment does nothing to change the *conduct* BIPA prohibits. *See id.* 14/15(a)-(e). Nor does the amendment change how BIPA defines "[b]iometric identifiers" or "[b]iometric information," *see id.* 14/10, or which entities are subject to BIPA's requirements, *see id.* 14/10, 14/25. Instead, the amendment alters only the

"recovery" to which an "aggrieved person" is entitled under the Act. *Id.* 14/20(b). So, for example, if an employer collects an employee's fingerprint one thousand times using the same method of collection—conduct that would, under the pre-amendment version of the Act, potentially give rise to one thousand recoveries of statutory damages—the employee is instead entitled to only "one recovery." *Id.* The General Assembly thus responded directly to the concern expressed by the Illinois Supreme Court in *Cothron* regarding the potentially annihilative damages awards authorized by its reading of BIPA.

The BIPA amendment became effective on August 2, 2024. The General Assembly did not expressly state whether the amendment would apply retroactively to cases pending at its enactment.

### B.     Plaintiff's Claims

Plaintiff is a commercial truck driver who alleges that he visited Union Pacific's Illinois facilities between 2019 and 2024 to "pick up or deliver shipping containers." A19 (¶¶ 4-5). He alleges that "[o]n each occasion when he entered or exited the Union Pacific facilities, [he] was required to place his fingerprints into a reader, to be matched with the fingerprints on file." *Id.* (¶ 6). In an interrogatory response, he states that he visited Union Pacific's intermodal terminals approximately 1,500 times during the five-year limitations period. *See* Petition for Permission to Appeal 6, *Clay v. Union Pac. R.R. Co.*, No. 25-8011 (7th Cir. June 20, 2025), ECF No. 1.

Plaintiff claims that Union Pacific violated Section 15(b) of BIPA each time it allegedly collected his information. A23 (¶ 34). And he seeks "[s]tatutory damages

of $5,000 for each willful and/or reckless violation … or statutory damages of $1,000 for each negligent violation." A24 (Prayer for Relief ¶ a). Thus, although Plaintiff does not allege actual damages, under his theory of the case, he is entitled to upwards of $7.5 million in statutory damages.

## C. The District Court's Order

Union Pacific moved for partial summary judgment to limit Plaintiff's total damages or, in the alternative, to strike Plaintiff's damages request to the extent he seeks damages for every scan of his alleged biometric information. Dkt. 37. As Union Pacific explained, Illinois retroactivity principles provide that remedial and procedural statutory amendments apply retroactively, while substantive changes apply only prospectively. *Id.* at 9-10. And because the BIPA amendment addressed the recovery to which plaintiffs are entitled, Union Pacific explained that the amendment applies retroactively under Illinois law. *Id.* at 11-13.

The District Court denied Union Pacific's motion. A1. The court relied on its prior decision in *Schwartz v. Supply Network, Inc.*, 2024 WL 4871408 (N.D. Ill. Nov. 22, 2024), which held that the BIPA amendment does not apply retroactively. A1-2. *Schwartz* observed that the "decisive issue" in determining retroactivity under Illinois law "is whether the amendment is procedural or substantive." 2024 WL 4871408, at *4. A substantive change to the law, the court recognized, "establishes, creates, defines, or regulates rights," while "a procedural change in the law prescribes a method of enforcing rights or involves pleading, evidence and practice." *Id.* (citation omitted). The court reasoned that the BIPA amendment "does not merely change the remedy for a violation of the Act; it also redefines what constitutes a violation of the

Act in the first place." *Id.* And it concluded that "the basic question of whether [the plaintiff] ha[d] been injured just once or injured more than a thousand times strikes the Court as a matter of substance, not of procedure." *Id.* at *5.

In adhering to *Schwartz* and denying Union Pacific's motion, the District Court noted that Union Pacific had cited *Thomas* for the proposition that the BIPA amendment applies retroactively. A2. But the court did not acknowledge this Court's reasoning in *Thomas* that "[s]ubstantive rules … are concerned with directing behavior *outside* the courtroom"—that is, "[t]hey tell individuals, organizations and governments to do certain things or abstain from certain conduct on pain of some sanction." 487 F.3d at 537 (emphasis added). Nor did the court explain how the BIPA amendment—which limits the recovery to which a plaintiff is entitled—alters behavior "outside" of the courtroom. Instead, the court reasoned that the Illinois Supreme Court's decision in *Perry v. Department of Financial & Professional Regulation*, 106 N.E.3d 1016 (Ill. 2018)—and *Schwartz*'s reading of the BIPA amendment in light of *Perry*—warranted treating the BIPA amendment as a substantive rather than a remedial change to the Act.

## STANDARD OF REVIEW

This Court reviews *de novo* pure questions of law and the district court's denial of Union Pacific's summary judgment motion. *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015).

# SUMMARY OF ARGUMENT

Because it alters the remedies available for BIPA violations, the BIPA amendment applies retroactively under longstanding Illinois retroactivity principles. The District Court's contrary conclusion is wrong, and this Court should reverse.

**I.** To determine whether a statutory amendment applies retroactively, Illinois law asks whether it is (a) procedural or remedial, in which case it applies retroactively, or (b) substantive, in which case it applies only prospectively. "Substantive rules," this Court has explained, "direct[] behavior outside the courtroom," while procedural or remedial rules are concerned with what happens inside the courtroom. *Thomas*, 487 F.3d at 537.

The BIPA amendment effects a remedial change. It provides that where a defendant violates the Act's substantive provisions by collecting the same biometric identifier or information using the same method each time, the plaintiff is entitled to just "one recovery" under the Act. 740 ILCS 14/20(b). That amendment does not alter behavior outside the courtroom: The elements of what comprises a substantive violation of BIPA are the same as before the amendment's enactment. That the BIPA amendment alters only Section 20, BIPA's private right of action provision, confirms that it effects a remedial, not a substantive, change. And Illinois decisions addressing retroactivity show that where, as here, a statutory amendment alters only the damages available to a plaintiff for a substantive statutory violation, the change applies to cases pending as of the amendment's effective date. *See People ex rel. Madigan v. J.T. Einoder, Inc.*, 28 N.E.3d 758, 766 (Ill. 2015); *Dardeen v. Heartland Manor, Inc.*, 710 N.E.2d 827, 831 (Ill. 1999).

**II.** The District Court's contrary conclusion is incorrect. According to the District Court, because the BIPA amendment alters what qualifies as "a violation" under the Act, the amendment enacts a substantive change. But the amendment does not alter what qualifies as a violation of the Act. Indeed, the amendment leaves untouched Section 15 of BIPA, 740 ILCS 14/15, which sets forth what constitutes a substantive violation of the Act, and Sections 10 and 25, *see id*. 14/10, 14/25, which define "biometric information" and "biometric identifier" and set forth which entities are subject to the Act. The behavior prohibited by BIPA before the amendment is precisely the same as the behavior prohibited by BIPA after the amendment.

The only change effected by the amendment is to the remedies available for substantive violations of the Act—instead of being entitled to statutory damages for each such violation, a plaintiff may obtain only "one recovery" if a defendant collects "the same biometric identifier or biometric information from the same person using the same method of collection." 740 ILCS 14/20(b). The context in which the General Assembly passed the BIPA amendment only confirms the point: The Illinois Supreme Court called on the legislature to address concerns with the Act's damages provision caused by its decision in *Cothron*. *See* 216 N.E.3d at 929. That the General Assembly acted in response to the Illinois Supreme Court's suggestion confirms that the amendment addresses remedies available inside the courtroom, not percipient conduct outside the courtroom. The District Court's contrary decision and others like it fail to grapple with settled principles of Illinois retroactivity law and this Court's precedent addressing what constitutes a procedural and remedial change to the law.

**ARGUMENT**

## I.  THE BIPA AMENDMENT APPLIES RETROACTIVELY

### A.  Illinois Law Applies Procedural And Remedial Amendments Retroactively

**1.**  Illinois follows the retroactivity approach articulated in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  *See Commonwealth Edison Co. v. Will Cnty. Collector*, 749 N.E.2d 964, 972 (Ill. 2001) ("We have carefully considered the principles discuss in *Landgraf* and conclude that the approach to retroactivity described in that opinion provides the appropriate means of determining when new legislation should be applied to existing controversies.").  The *Landgraf* approach has two steps.  First, a court must determine if the legislature has "'expressly prescribed' the temporal reach of [an] amendment[]."  *Commonwealth*, 749 N.E.2d at 972 (quoting *Landgraf*, 511 U.S. at 280).  If the legislature has not done so, then a "court must determine whether applying the statute would have a retroactive impact."  *Id.* at 971.

Although the *Landgraf* approach has two steps, Illinois courts need not move past the first.  That is because when the General Assembly does not "expressly prescribe" the temporal reach of a statutory amendment in the amendment itself, Section 4 of the Illinois Statute on Statutes supplies a default rule.  *Perry*, 106 N.E.3d at 1026 (citation omitted).

Section 4 states: "No new law shall be construed to repeal a former law … as to any offense committed against the former law, or as to any act done, … save only that the proceedings thereafter shall conform, so far as practicable, to the laws in

force at the time of such proceeding." 5 ILCS 70/4. Pertinent here, and "[i]n accordance with [the Illinois Supreme Court's] interpretation of section 4, courts can apply retroactively statutory changes to *procedural or remedial* provisions, whether they are outright repeals or amendments." *People v. Glisson*, 782 N.E.2d 251, 257 (Ill. 2002) (emphasis added). As *Perry* puts it, "[i]f a statutory change is procedural, then the change will apply retroactively, *i.e.*, to pending cases in the absence of a constitutional impediment to such retroactive application." 106 N.E.3d at 1027. "Conversely, if a statutory change is substantive, then the change is not to be applied retroactively." *Id.* Thus, "[c]hanges to remedies are considered procedural under Illinois," *Pogorzelska v. VanderCook Coll. of Music*, 2024 WL 1578715, at *3 (N.D. Ill. Apr. 11, 2024), meaning that amendments "affect[ing] only the remedy available for a violation of the substantive provisions of the statute" apply retroactively, *Brandl v. Superior Air-Ground Ambulance Serv., Inc.*, 2012 WL 7763427, at *2 (N.D. Ill. Dec. 7, 2012).

*Dardeen v. Heartland Manor, Inc.*, 710 N.E.2d 827 (Ill. 1999), which considered "whether an amendment to section 3-602 of the Nursing Home Care (Act) … should be given retroactive effect," *id.* at 828 (citation omitted), illustrates the point. The amendment at issue "repealed [a] treble damages provision" in the Act, which "limit[ed] recovery for violations of the Act to actual damages, costs, and attorney fees." *Id.* at 828-29. The Court held "that because the amendment … affects only the procedures and remedies used to enforce a plaintiff's rights," it applied retroactively to cases pending at the time it became effective. *Id.* at 831. Put differently, because

the "grounds for recovery … remained unchanged" after the amendment, meaning that the "plaintiff's substantive rights … remained unaffected," the amendment applied retroactively. *Id.* at 832.

True enough, *Dardeen* applied a so-called "vested rights" framework to analyze retroactivity, and Illinois courts "no longer utilize a vested rights analysis to determine temporal reach." *Perry*, 106 N.E.3d at 1032; *see also Commonwealth*, 749 N.E.2d at 969-70 (jettisoning the vested rights approach and adopting the *Landgraf* approach). But *Dardeen*'s bottom-line conclusion that statutory amendments affecting only remedies apply retroactively does not depend on applying a vested rights approach. Indeed, since adopting the *Landgraf* approach, the Illinois Supreme Court has continued to recognize that "courts can apply retroactively statutory changes to … remedial provisions," *Glisson*, 782 N.E.2d at 257, and that the "legislature intend[s] for" amendments that are "remedial … to be applied retroactively." *J.T. Einoder, Inc.*, 28 N.E.3d at 766.

**2.** Although the Illinois retroactivity test is simple to articulate, "distinguishing between procedural and substantive changes can sometimes be unclear." *Perry*, 106 N.E.3d at 1033; *see also Orlicki v. McCarthy*, 122 N.E.2d 513, 516 (Ill. 1954) ("[N]o simple formula can be evolved as to when an amendment relates to a procedural, or to a substantive right."); *Moore v. Harper*, 600 U.S. 1, 31 (2023) ("The line between procedural and substantive law is hazy." (citation omitted)).

Still, Illinois law provides some sturdy handholds. "[S]ubstantive rules *establish the rights* that may be redressed under a particular procedure." *People v.*

*Easton*, 123 N.E.3d 1074, 1080 (Ill. 2018) (emphasis added); *see also Perry*, 106 N.E.3d at 1034 (substantive rules "define[] the specific rights or duties" of those regulated by the law (citation omitted)). So, for instance, in criminal statutes, "[s]ubstantive amendments include those that alter the scope of the elements of a crime." *People v. Atkins*, 838 N.E.2d 943, 947 (Ill. 2005); *see also Glisson*, 782 N.E.2d at 256 (similar). Amendments are likewise substantive when they "create[] an entirely new type of liability" that was "not available under the prior statute." *J.T. Einoder, Inc.*, 28 N.E.3d at 766-67; *see also Caveney v. Bower*, 797 N.E.2d 596, 604 (Ill. 2003) (finding statutory amendment to be "a substantive change in the law" because "it establishes an income tax credit … that previously did not exist"). This Court's decision in *Thomas*, which addressed retroactivity principles under Illinois law, puts it this way: "Substantive rules … are concerned with directing behavior outside of the courtroom." 487 F.3d at 537.

Procedural rules, by contrast, concern "the steps for having a right or duty judicially enforced." *Perry*, 106 N.E.3d at 1034 (citation omitted). Rules that "affect[] only remedies" are a good example—they are "procedural in nature," *J.T. Einoder, Inc.*, 28 N.E.3d at 766, because they concern only "enforcing rights or obtaining redress for their invasion," *Atkins*, 838 N.E.2d at 947 (citation omitted). Put in this Court's terminology, procedural and remedial amendments concern what happens *inside* the courtroom rather than conduct occurring *outside* the courtroom. *Thomas*, 487 F.3d at 537.

**B.** **The BIPA Amendment Enacts Only A Remedial Change, And Therefore Applies Retroactively**

The BIPA amendment affects only the damages available to a BIPA plaintiff and does not alter any of the Act's substantive provisions. The amendment is therefore a remedial change that applies retroactively under Illinois law.

The amendment's text shows its remedial focus. It provides that where a defendant collects the same information in the same manner each time "in violation of subsection (b) of Section 15," the plaintiff "is entitled to, at most, one recovery under this Section." 740 ILCS 14/20(b). That is, plaintiffs are limited to just "one recovery" under the Act in certain circumstances—a statutory change focusing solely on the available remedy inside the courtroom for violations of the Act's substantive provisions committed outside the courtroom.

Statutory structure confirms the point. The BIPA amendment affects only the Act's "right of action" in Section 20. 740 ILCS 14/20. A "right of action" refers to a plaintiff's ability to "bring suit" and "pertains to remedy and relief through judicial procedure." *Black's Law Dictionary* 1190 (5th ed. 1979). "[A] private right of action," in other words, "is an enforcement mechanism." *T.S. ex rel. T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 744 (7th Cir. 2022). It "is not itself a source of substantive rights," and instead "'merely provides a mechanism for enforcing … rights' found 'elsewhere.'" *Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 968 (7th Cir. 2025) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)). That the amendment affects only BIPA's "right of action," 740 ILCS 14/20(b), means that it affects only the mechanism by which an individual can "enforce[e] rights or obtain[]

redress for their invasion"—precisely what the Illinois Supreme Court has said is procedural or remedial, and not substantive, in nature. *Atkins*, 838 N.E.2d at 947 (citation omitted).

Indeed, in passing the BIPA amendment, the General Assembly left BIPA's substantive provisions entirely untouched. Section 15, which sets forth the conduct that violates BIPA, is the same before and after the BIPA amendment. *See* 740 ILCS 14/15(b) (providing that no private entity can collect biometric information without prior written consent). Nor does the amendment alter the kind of data covered by the Act, *see id.* 14/10 (definitions of "biometric information" and "biometric identifier"), or the entities regulated by BIPA, *see id.* 14/10, 14/25. The amendment does not create any "new type of liability," *J.T. Einoder, Inc.*, 28 N.E.3d at 766, nor does it alter the "elements" or the "scope" of what conduct constitutes a violation of the Act, *Dardeen*, 710 N.E.2d at 832; *Glisson*, 782 N.E.2d at 256.

Were there any doubt, the context in which the General Assembly enacted the BIPA amendment confirms that it effects only a remedial—not a substantive— change. The Illinois Supreme Court in *Cothron* expressly called on the General Assembly to "review the[] policy concerns" raised by "excessive damage awards under the Act" and to "make clear its intent regarding the assessment of damages." 216 N.E.3d at 929. In enacting the amendment, the General Assembly followed the Court's "respectful[] suggest[ion]" that it amend the Act to address the damages regime created by the pre-amendment version of BIPA as interpreted by *Cothron*. *Id.* And the General Assembly did so by directly amending Section 20, the Act's remedial

provision.  It would be counterintuitive to allow Plaintiff to recover up to $7.5 million in statutory damages despite not alleging any actual harm given that the legislature amended BIPA at the Illinois Supreme Court's suggestion to avoid "excessive damage awards."[3]

This Court's precedent confirms that the BIPA amendment effects only a procedural change.  In *Thomas*, this Court assessed whether a particular Illinois statutory amendment was substantive or procedural for retroactivity purposes.  The Court explained that substantive changes "are concerned with directing behavior outside of the courtroom" by "tell[ing] individuals, organizations and governments to do certain things or abstain from certain conduct on pain of some sanction."  487 F.3d at 537.  The BIPA amendment does not say anything about what may or may not be done outside the courtroom because it does not alter Section 15's substantive prohibitions, Section 10's definition of "biometric identifier" and "biometric information," or Section 10's and Section 25's limiting of which entities are subject to the Act's substantive provisions.  Instead, the amendment affects only what happens inside the courtroom—how many violations a defendant (in court) will be deemed to

_____

[3]    In a pending BIPA putative class action filed against Union Pacific, the plaintiffs seek statutory damages of up to approximately $22 billion for an estimated 22,402 putative class members, which included Plaintiff until he opted to file this individual suit rather than continue as a putative class member in that case.  A20 (¶ 9); *see Fleury v. Union Pac. R.R. Co.*, No. 20-cv-390 (N.D. Ill. Mar. 13, 2025), Dkt. 329-7 at 49-61 (Pls.' Second Am. Rule 26(a)(1) Disclosures).  That is an average of approximately $982,000 per putative class member in a case, like this one, alleging no actual damages.  Similarly, in a Rule 23(f) appeal pending before this Court, plaintiffs seek an average of $60,000 in statutory damages each for an estimated 160,000 class members, for a total of $9.6 billion.  *See* Petition 2-3, *In re Amazon.com Inc.*, No. 25-8001 (7th Cir. Jan. 16, 2025), ECF No. 1; Rule 23(f) Order, *id.*, ECF No. 7.

have committed if it "obtain[ed] the same biometric identifier or biometric information from the same person using the same method of collection," and thus (in court) how many "recover[ies] under this Section [20, not 15]" that person may recover. 740 ILCS 14/20(b). The BIPA amendment does not target behavior beyond the courtroom walls.

In short, the BIPA amendment affects only the remedies available to a plaintiff for violations of the Act's substantive provisions. The amendment thus applies retroactively under Illinois law.

## II. THE DISTRICT COURT'S CONTRARY CONCLUSION IS INCORRECT

The District Court wrongly held that the BIPA amendment is substantive by incorrectly applying Illinois precedent, misinterpreting this Court's decision in *Thomas*, and adopting a strained reading of the statutory text. And although the District Court cited Illinois trial court decisions finding the BIPA amendment non-retroactive, those decisions are not controlling under the *Erie* doctrine and are unpersuasive on the merits.

### A. The District Court's Reasoning Is Flawed

The District Court incorrectly concluded that the BIPA amendment alters what constitutes "a violation" under the Act, citing the amendment's language providing that when a defendant obtains the same biometric information from the same person in the same manner "in violation of subsection (b) of Section 15," it "has committed a single violation of subsection (b) for which the aggrieved person is entitled to, at most, one recovery under this Section." 740 ILCS 14/20(b); *see Schwartz*, 2024 WL 4871408, at *5. In the District Court's view, whether a plaintiff

"has been injured just once or injured more than" once "strikes the Court as a matter of substance, not of procedure." *Schwartz*, 2024 WL 4871408, at *5.

That analysis is flawed. In altering only BIPA's "right of action" in Section 20, the BIPA amendment does not change what constitutes a substantive violation of the Act. Indeed, it leaves untouched the operative provisions that prohibit certain conduct by private entities. *See* 740 ILCS 14/15 (setting forth BIPA's prohibitions). Both before and after the amendment, the Act prohibits private entities from collecting or obtaining biometric identifiers or biometric information without written consent. *Id.* 14/15(b). Both before and after the BIPA amendment, defendants may not disseminate such data without such consent. *Id.* 14/15(d). And the amendment does not alter the Act's definition of "biometric identifier" or "biometric information," *id.* 14/10, and does not expand or contract the entities subject to its substantive prohibitions, *id.* 14/10, 14/25.

Nor does the amendment say that defendants do not violate BIPA when they repeatedly collect a person's biometric information without obtaining consent. Indeed, the amendment assumes that a defendant might repeatedly collect biometric information "using the same method of collection *in violation of subsection (b) of Section 15*." 740 ILCS 14/20(b) (emphasis added). If, for example, a defendant collects a person's fingerprints, and the next day repeats that same collection in the same manner, nothing in Section 20 provides that the second collection does not violate BIPA's substantive provisions. In other words, the amendment does not change what

private entities are allowed to do out in the world—their conduct "outside the courtroom." *Thomas*, 487 F.3d at 537.

Instead, Section 20 alters only how many violations a defendant is *deemed* to have committed for the purpose of calculating *damages*. So, even if a defendant collects biometric information "in violation of subsection (b) of Section 15" one thousand times—thereby violating that substantive provision one thousand times— Section 20(b) provides for remedial purposes that the defendant is deemed to have "committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery," 740 ILCS 14/20(b). The district court's observation that the amendment changes how many times a plaintiff is "injured" gets it backward. *Schwartz*, 2024 WL 4871408, at *5. The BIPA amendment recognizes that the plaintiff's rights have been violated each time a defendant runs afoul of Section 15, but it treats the defendant for remedial purposes as if it has committed just one violation, entitling the plaintiff to just a "one recovery." 740 ILCS 14/20(b).

The District Court invoked the rule against superfluity, reasoning that the BIPA amendment says both that a private entity that repeatedly collects biometric information is deemed to have "committed a single violation" and also that the "aggrieved person is entitled to, at most, one recovery." *Schwartz*, 2024 WL 4871408, at *5 (emphasis omitted) (quoting 740 ILCS 14/20(b)). As the court put it, "[i]t would be superfluous to read this provision redefining a violation for purposes of the Act as merely a limitation on the plaintiff's recovery, where the amendment already

expressly limits plaintiffs to 'one recovery.'" *Id.* And the court thought that supposed superfluidity justified finding that the amendment effected a substantive change.

The District Court's understanding of the amendment's text does not change its remedial nature. The phrase providing that a defendant has committed just a "single violation" of the Act's substantive provisions for remedial purposes comes from *Cothron*, which stated that "the plain language of section 15(b) and 15(d) demonstrates that *such violations* occur with every scan or transmission." 216 N.E.3d at 926 (emphasis added). *Cothron* then called on the General Assembly to "address[]" the "policy-based concerns about potentially excessive damage awards under the Act." *Id.* at 929. That the General Assembly did so by using the language *Cothron* used ("violations") to adopt an interpretation of Section 15(b) that had the downstream effect of authorizing astronomical damage awards under Section 20 is hardly surprising. It does not suggest, much less show, that the legislature enacted a substantive, rather than a remedial, change to the Act.

More fundamentally, the BIPA amendment's phrasing does nothing to change the "scope" of conduct in which defendants are permitted to engage beyond the courthouse walls. Illinois precedent teaches that substantive changes regulate conduct out in the world—by "create[ing] an entirely new type of liability," *J.T. Einoder, Inc.*, 28 N.E.3d at 766, or "alter[ing] the scope of the elements" of a statute, *Atkins*, 838 N.E.2d at 947; *see also Glisson*, 782 N.E.2d at 256. By deeming defendants to have committed just one violation for damages purposes, the

amendment does not "concern[]" itself "with directing behavior outside of the courtroom," and thus is remedial, not substantive. *Thomas*, 487 F.3d at 537.

## B. Other Decisions Holding That The BIPA Amendment Is Not Retroactive Are Unpersuasive As Well

**1.** The District Court pointed to three Illinois state trial court decisions holding that the BIPA amendment applies only prospectively. *Schwartz*, 2024 WL 4871408, at *5 n.2 (citing *Wallace v. Vee Pak, LLC*, No. 24 L 4560 (Cook Cnty. Cir. Ct. Oct. 10, 2024); *Gagen v. Mandell Menkes, LLC*, No. 2023 L 008294 (Cook Cnty. Cir. Ct. Oct. 21, 2024); *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Cook Cnty. Cir. Ct. Oct. 30, 2024)). These decisions do not bind this Court. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (only Illinois Supreme Court decisions interpreting Illinois law bind federal courts under the *Erie* doctrine). And all three decisions are wrong on the merits.

*Wallace* and *Rojo* reasoned that the BIPA amendment applies "prospectively only" because it "provides its temporal reach—it is effective on August 2, 2024." A36-37; A46-47. But the Illinois Constitution instructs the General Assembly to provide effective dates for *all* laws. *See* Ill. Const. art. IV, § 10. So, if *Wallace* and *Rojo* were right, then no law could *ever* be retroactive, which of course is incorrect. Indeed, in *Dardeen*, the Illinois Supreme Court held that a statutory amendment to the Nursing Home Care Act applied retroactively to "pending claims arising *prior to the effective date of the amendment.*" 710 N.E.2d at 829 (emphasis added); *see also* 225 ILCS 46/1 (noting that Public Act 89-197 had effective date of July 21, 1995).

*Wallace* and *Rojo* also incorrectly reasoned that the BIPA amendment "is a substantive change since it defines rights, i.e., the amendment seeks to limit liability where no limit previously existed." A38; A48. As explained above, the BIPA amendment merely caps the damages a plaintiff may "recover[]" for multiple violations of the same provision. 740 ILCS 14/20(b). Under Illinois law, such changes to "remedies," which leave "the elements of a violation" of a statute untouched, apply retroactively. *Dardeen*, 710 N.E.2d at 831-32; *see Glisson*, 782 N.E.2d at 257.

As for *Menkes*, that case incorrectly concluded that the BIPA amendment effects a substantive change because it addresses the "number of causes of actions [sic] a plaintiff can assert under BIPA." A29-30. What the *Menkes* court plainly meant is that the amendment changed the number of *recoveries* a plaintiff can obtain under the Act—which is a remedial, not a substantive, change.

In short, the state trial court decisions cited by the District Court do not support the conclusion that the BIPA amendment effects a substantive change to the Act.

**2.** Nor are like-minded district court decisions persuasive. Many courts have simply followed *Schwartz* without adding meaningful analysis. *See Gregg v. Cent. Transp. LLC*, 2025 WL 907540, at *2 (N.D. Ill. Mar. 21, 2025); *Giles v. Sabert Corp.*, 2025 WL 274326, at *4 (N.D. Ill. Jan. 21, 2025); *Willis v. Universal Intermodal Servs., Inc.*, 2025 WL 1455791, at *2 (N.D. Ill. Apr. 2, 2025).

One case, *Jones v. USP Chicago, Inc.*, 2025 WL 1547290, at *5 (N.D. Ill. May 29, 2025), offers more extended discussion. Like *Schwartz*, *Jones* reasoned that

because the BIPA amendment "defines a 'violation' and modifies (by limiting) the scope of liability a private entity faces," the amendment effects "more than a change to recovery but rather, a substantive change to the law." *Id*. As shown above, that is wrong. *See supra* at 19-23. To the extent the amendment refers to a "'single violation,'" it "treat[s]" a defendant as having committed one violation "for which an individual is entitled to one recovery" only in the Act's damages provision, Section 20. *Jones*, 2025 WL 1547290, at *5. The amendment does not alter what constitutes a substantive violation in the first place. *Jones* adopted the same analysis as the *Schwartz* decision, and did not account for the fact that the BIPA amendment does not regulate conduct outside of the courtroom any differently—indeed, *Jones* does not even cite this Court's discussion in *Thomas* of Illinois retroactivity principles. Nor does *Jones* grapple with the Illinois Supreme Court's decision in *Dardeen*, which recognized that where, as here, an amendment affects only the remedy to which a plaintiff is entitled, it applies retroactively. *See supra* at 13-14. Just as *Schwartz* analyzed the issue incorrectly, so did *Jones*.

## CONCLUSION

This Court should hold that Illinois Public Act 103-0769 applies retroactively to this case and accordingly reverse the District Court's denial of Union Pacific's motion for partial summary judgment.

Dated: August 25, 2025

Respectfully submitted,

Michael Rubin
Latham & Watkins LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

/s/ Gary Feinerman
Gary Feinerman
Sean Berkowitz
Johanna Spellman
Kathryn Running
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

Ben Harris
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendant-Appellant Union Pacific Railroad Company*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) and Seventh Circuit Rule 32(c) because it contains 6,543 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced 12-point font.

Dated: August 25, 2025
                                   _/s/ *Gary Feinerman*_
                                   Gary Feinerman

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025, I caused the foregoing Opening Brief and Appendix for Defendant-Appellant Union Pacific Railroad Company to be served by electronic means through the Court's CM/ECF system on counsel for all parties who are registered CM/ECF users.

  /s/ *Gary Feinerman*    
Gary Feinerman

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Seventh Circuit Rule 30(d), counsel for Defendant-Appellant Union Pacific Railroad Company states that the attached Appendix contains all materials required by Seventh Circuit Rules 30(a) and 30(b).

Dated: August 25, 2025

_/s/ Gary Feinerman_
Gary Feinerman

# ADDENDUM

## Pursuant to Federal Rule of Appellate Procedure 28(f)

**TABLE OF CONTENTS**

Page

Ill. Pub. Act 103-0769 (2024) ..............................................................................ADD-1

740 ILCS 14/ ..........................................................................................................ADD-5

AN ACT concerning civil law.

**Be it enacted by the People of the State of Illinois, represented in the General Assembly:**

Section 5. The Biometric Information Privacy Act is amended by changing Sections 10 and 20 as follows:

(740 ILCS 14/10)

Sec. 10. Definitions. In this Act:

"Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care

treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

"Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

"Confidential and sensitive information" means personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

"Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

"Private entity" means any individual, partnership,

corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

"Written release" means informed written consent, electronic signature, or, in the context of employment, a release executed by an employee as a condition of employment. (Source: P.A. 95-994, eff. 10-3-08.)

(740 ILCS 14/20)

Sec. 20. Right of action.

(a) Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the

State or federal court may deem appropriate.

(b) For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section.

(c) For purposes of subsection (d) of Section 15, a private entity that, in more than one instance, discloses, rediscloses, or otherwise disseminates the same biometric identifier or biometric information from the same person to the same recipient using the same method of collection in violation of subsection (d) of Section 15 has committed a single violation of subsection (d) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section regardless of the number of times the private entity disclosed, redisclosed, or otherwise disseminated the same biometric identifier or biometric information of the same person to the same recipient.
(Source: P.A. 95-994, eff. 10-3-08.)

Section 99. Effective date. This Act takes effect upon becoming law.

## CIVIL LIABILITIES (740 ILCS 14/) Biometric Information Privacy Act.

(740 ILCS 14/1)
    Sec. 1. Short title. This Act may be cited as the Biometric Information Privacy Act.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/5)
    Sec. 5. Legislative findings; intent. The General Assembly finds all of the following:
    (a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.
    (b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.
    (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.
    (d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.
    (e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.
    (f) The full ramifications of biometric technology are not fully known.
    (g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/10)
    Sec. 10. Definitions. In this Act:
    "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

"Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

"Confidential and sensitive information" means personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

"Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

"Private entity" means any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

"Written release" means informed written consent, electronic signature, or, in the context of employment, a release executed by an employee as a condition of employment.
(Source: P.A. 103-769, eff. 8-2-24.)

(740 ILCS 14/15)
Sec. 15. Retention; collection; disclosure; destruction.
(a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

(c) No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

(d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

    (1) the subject of the biometric identifier or
biometric information or the subject's legally authorized representative
consents to the disclosure or redisclosure;
    (2) the disclosure or redisclosure completes a
financial transaction requested or authorized by the subject of the
biometric identifier or the biometric information or the subject's legally
authorized representative;
    (3) the disclosure or redisclosure is required by
State or federal law or municipal ordinance; or
    (4) the disclosure is required pursuant to a valid
warrant or subpoena issued by a court of competent jurisdiction.
(e) A private entity in possession of a biometric identifier or biometric
information shall:
    (1) store, transmit, and protect from disclosure all
biometric identifiers and biometric information using the reasonable
standard of care within the private entity's industry; and
    (2) store, transmit, and protect from disclosure all
biometric identifiers and biometric information in a manner that is the
same as or more protective than the manner in which the private entity
stores, transmits, and protects other confidential and sensitive
information.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/20)
    Sec. 20. Right of action.
    (a) Any person aggrieved by a violation of this Act shall have a right of
action in a State circuit court or as a supplemental claim in federal district
court against an offending party. A prevailing party may recover for each
violation:
    (1) against a private entity that negligently
violates a provision of this Act, liquidated damages of $1,000 or actual
damages, whichever is greater;
    (2) against a private entity that intentionally or
recklessly violates a provision of this Act, liquidated damages of $5,000
or actual damages, whichever is greater;
    (3) reasonable attorneys' fees and costs, including
expert witness fees and other litigation expenses; and
    (4) other relief, including an injunction, as the
State or federal court may deem appropriate.
    (b) For purposes of subsection (b) of Section 15, a private entity that, in
more than one instance, collects, captures, purchases, receives through trade,
or otherwise obtains the same biometric identifier or biometric information
from the same person using the same method of collection in violation of
subsection (b) of Section 15 has committed a single violation of subsection (b)
of Section 15 for which the aggrieved person is entitled to, at most, one
recovery under this Section.
    (c) For purposes of subsection (d) of Section 15, a private entity that, in
more than one instance, discloses, rediscloses, or otherwise disseminates the
same biometric identifier or biometric information from the same person to the
same recipient using the same method of collection in violation of subsection
(d) of Section 15 has committed a single violation of subsection (d) of Section
15 for which the aggrieved person is entitled to, at most, one recovery under
this Section regardless of the number of times the private entity disclosed,
rediscloses, or otherwise disseminated the same biometric identifier or

biometric information of the same person to the same recipient. (Source: P.A. 103-769, eff. 8-2-24.)

(740 ILCS 14/25)
Sec. 25. Construction.
(a) Nothing in this Act shall be construed to impact the admission or discovery of biometric identifiers and biometric information in any action of any kind in any court, or before any tribunal, board, agency, or person.
(b) Nothing in this Act shall be construed to conflict with the X-Ray Retention Act, the federal Health Insurance Portability and Accountability Act of 1996 and the rules promulgated under either Act.
(c) Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder.
(d) Nothing in this Act shall be construed to conflict with the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 and the rules promulgated thereunder.
(e) Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.
(Source: P.A. 95-994, eff. 10-3-08.)

(740 ILCS 14/30)
Sec. 30. (Repealed).
(Source: P.A. 95-994, eff. 10-3-08. Repealed internally, eff. 1-1-09.)

(740 ILCS 14/99)
Sec. 99. Effective date. This Act takes effect upon becoming law.
(Source: P.A. 95-994, eff. 10-3-08.)

---

### Information maintained by the Legislative Reference Bureau

Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

**APPENDIX**

**Pursuant to Circuit Rule 30(a) and 30(b)**

# TABLE OF CONTENTS

**CIRCUIT RULE 30(d) STATEMENT:** Defendant-Appellant's Appendix includes all the materials required by Circuit Rule 30(a) and (b).

## I. Required Short Appendix—Pursuant to 7th Cir. R. 30(a) (A1-2)

| Page | Docket No. | Description |
|------|-----------|-------------|
| A1 | 55 | Order (April 10, 2025) |

## II. Materials from N.D. Ill. District Court, Case No. 1:23-cv-02921—Pursuant to 7th Cir. R. 30(b) (A3-49)

| Page | Docket No. | Description |
|------|-----------|-------------|
| A3 | -- | Civil Docket for Case No. 1:24-cv-4914 (N.D. Ill.) |
| A11 | 1 | Notice of Removal of Union Pacific Railroad Company (May 21 2024) |
| A17 | 1-1 | Exhibits for Notice of Removal of Union Pacific Railroad (excerpts)<br><br>Exhibit 1: Complaint in *Reginald Clay v. Union Pacific Railroad Company*, Circuit Court of Cook County Case No. 2024L004147 |
| -- | 42 | Plaintiff's Response to Union Pacific's Motion for Summary Judgment (Dec. 2, 2024) |
| A26 | 42-1 | Appendix B: Order, *Gagen v. Mandell Menkes, LLC*, No. 2023 L 008294 (Cook Cnty. Cir. Ct. Oct. 21, 2024) |
| A31 | 42-1 | Appendix C: *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Cook Cnty. Cir. Ct. Oct. 30, 2024) |
| A41 | 42-1 | Appendix D: *Wallace v. Vee Pak, LLC*, No. 24 L 4560 (Cook Cnty. Cir. Ct. Oct. 10, 2024) |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REGINALD CLAY,

        Plaintiff,

    v.

UNION PACIFIC RAILROAD COMPANY,

        Defendant.

No. 24 CV 4194

Judge Georgia N. Alexakis

**ORDER**

Reginald Clay brought this suit against Union Pacific Railroad Company ("Union Pacific), alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Union Pacific moves for partial summary judgment, arguing that in light of a recent amendment to BIPA—signed into law as Public Act 103-0769 on August 2, 2024—Clay is entitled to recover for a single BIPA violation at most. [37] at 4–8; *see* 740 ILCS 14/20 (amended August 2, 2024).

For the reasons set forth below, the amendment is not retroactive and Union Pacific's motion for partial summary judgment [37] is therefore denied.

**STATEMENT**

Clay's claims against Union Pacific rely on a "per scan" theory of BIPA violation. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004 ¶ 24. Under this theory, each scan of his biometric information was a separate and independent BIPA violation. The amendment did away with this kind of "per scan" violation, so if Clay filed suit today, he would only be entitled to a single recovery. But the parties disagree over whether the amendment applies to pending cases. [37] at 5–8; [42] at 2–7.

For the reasons explained in *Schwartz v. Supply Network, Inc.*, in which the Court considered that question in the context of a motion to dismiss for lack of subject jurisdiction, the amendment is not retroactive. *Schwartz v. Supply Network, Inc.*, No. 23 CV 14319, 2024 WL 4871408 (N.D. Ill. Nov. 22, 2024).[1] As a result, the *Cothron* "per scan" theory still applies to this case, and Clay can thus potentially recover for multiple violations of BIPA.

---

[1] The Court recognizes that its *Schwartz* decision issued after Union Pacific filed its motion.

**A1**

In its reply, Union Pacific "respectfully asks this Court to reach a different result here" than in *Schwartz*. [44] at 1. But while Union Pacific is correct that the *Schwartz* decision is not binding, *see id.* (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), the Court sees no reason to depart from its earlier ruling on the issue of retroactivity. Other courts in the Northern District of Illinois have since agreed with *Schwartz*. *See Gregg v. Cent. Transp. LLC*, No. 24 C 1925, 2025 WL 907540, at *2 (N.D. Ill. Mar. 21, 2025) ("While the line between substance and procedure can sometimes be unclear, I agree with the *Schwartz* court's view"); *see also Giles v. Sabert Corp.*, 24 C 2996, 2025 WL 274326, at *4 (N.D. Ill. Jan. 21, 2025) ("This Court agrees with *Schwartz* and the reasoning contained therein, and so adopts its analysis here."). And Clay identifies a number Illinois state courts that have since conclude the amendment is not retroactive. *See* [42] at 6 (listing cases); [42-1]. While these cases are also not binding on the Court, Union Pacific has identified none that reach a different result.

Union Pacific instead relies on *Thomas v. Guardsmark, LLC*, 487 F.3d 531 (7th Cir. 2007), to argue that under Illinois law the amendment is not substantive and should therefore be applied retroactively. [44] at 5–6. But *Schwartz*—and Clay—rely instead on the Illinois Supreme Court's more recent *Perry v. Dep't of Fin. & Prof'l Regulation*, 2018 IL 122349, which sought to streamline the "convoluted and muddled evolution" of Illinois law on retroactivity. *Id.* ¶ 38; [42] at 2–7. And Union Pacific does not provide a convincing explanation of why the Court's application of *Perry* in *Schwartz* bears revisiting.

In the alternative, Union Pacific moves to strike Clay's request for damages for "each … violation of BIPA" under Federal Rule of Civil Procedure 12(f). [37] at 9. But this argument also relies on the retroactivity of the amendment. Since the amendment is not retroactive, the Court cannot conclude that Clay's "demand for more than one recovery under BIPA fails as a matter of law," *id.*, and thus also denies the motion to strike.

Date:   4/10/25

_____

Georgia N. Alexakis
U.S. District Judge

**A2**

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3) (Chicago)
## CIVIL DOCKET FOR CASE #: 1:24–cv–04194

Clay v. Union Pacific Railroad Company
Assigned to: Honorable Georgia N. Alexakis
Case in other court: Circuit Court of Cook County, Illinois,
    Law Divisi, 2024–L–004147
Cause: 28:1332 Diversity–Petition for Removal

Date Filed: 05/21/2024
Jury Demand: None
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Reginald Clay**      represented by   **Daniel A. Edelman**
Edelman, Combs, Latturner & Goodwin,
LLC
20 S. Clark Street
Suite 1800
Chicago, IL 60603
312–739–4200
Fax: 312–419–0379
Email: courtecl@edcombs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexandra Rose Huzyk**
Edelman, Combs, Latturner & Goodwin
20 S. Clark St, Suite 1800
Chicago, IL 60603
312–917–4535
Email: ahuzyk@edcombs.com
*ATTORNEY TO BE NOTICED*

**Dulijaza Clark**
Edelman, Combs, Latturner & Goodwin
20 S Clark St
Suite 1800
Suite 1800
Chicago, IL 60603
312–917–4506
Email: jclark@edcombs.com
*ATTORNEY TO BE NOTICED*

**Lucas Coughlin**
Almeida Law Group, LLC
849 W. Webster Ave.
Chicago, IL 60614
708–529–5418
Email: lcoughlin@edcombs.com
*TERMINATED: 10/24/2024*

V.

**Defendant**

**Union Pacific Railroad Company**    represented by   **Gary Feinerman**
Latham & Watkins LLP
330 N Wabash Ave
Suite 2800
Chicago, IL 60611
312–876–7700
Fax: Active
Email: gary.feinerman@lw.com
*ATTORNEY TO BE NOTICED*

**A3**

**Johanna Margaret Spellman**
Latham & Watkins LLP
330 N. Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876–7700
Fax: Not a member
Email: johanna.spellman@lw.com
*ATTORNEY TO BE NOTICED*

**Kathryn Running**
Latham & Watkins Llp
330 N. Wabash Ave
Suite 2800
Chicago, IL 60611
(312) 876–7700
Fax: Not a member
Email: Kathryn.Running@lw.com
*ATTORNEY TO BE NOTICED*

**Sean M. Berkowitz**
Latham & Watkins LLP
330 N. Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876–7700
Fax: Active
Email: sean.berkowitz@lw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/21/2024 | 1 | NOTICE of Removal from Circuit Court of Cook County, Illinois, case number (2024 L 004147) filed by Union Pacific Railroad Company Filing fee $ 405, receipt number AILNDC–21991547. *Complaint, Copy of the Summons, Service of Process, Pleadings, and Orders Served upon Union Pacific, Docket in Reginald Clay v. Union Pacific Railroad Company, Circuit Court of Cook County Case No. 2024 L 004147* (Attachments: # 1 Exhibit Index– Exhibits 1–3)(Spellman, Johanna) (Entered: 05/21/2024) |
| 05/21/2024 | 2 | CIVIL Cover Sheet (Spellman, Johanna) (Entered: 05/21/2024) |
| 05/21/2024 | 3 | ATTORNEY Appearance for Defendant Union Pacific Railroad Company by Sean M. Berkowitz (Berkowitz, Sean) (Entered: 05/21/2024) |
| 05/21/2024 | 4 | ATTORNEY Appearance for Defendant Union Pacific Railroad Company by Johanna Margaret Spellman (Spellman, Johanna) (Entered: 05/21/2024) |
| 05/21/2024 | 5 | ATTORNEY Appearance for Defendant Union Pacific Railroad Company by Kathryn Running (Running, Kathryn) (Entered: 05/21/2024) |
| 05/21/2024 | 6 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Union Pacific Railroad Company *and Rule 7.1 Disclosure Statement* (Spellman, Johanna) (Entered: 05/21/2024) |
| 05/22/2024 | | CASE ASSIGNED to the Honorable John Robert Blakey. Designated as Magistrate Judge the Honorable Jeffrey Cole. Case assignment: Random assignment. (Civil Category 2). (khg, ) (Entered: 05/22/2024) |
| 05/22/2024 | 7 | MAILED Notice of Removal letter to counsel of record. (daj, ) (Entered: 05/22/2024) |
| 05/22/2024 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post–trial |

| | | |
|---|---|---|
| | | proceedings, all parties must sign their names on the attached <u>Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (daj, ) (Entered: 05/22/2024)</u> |
| 05/24/2024 | 8 | ATTORNEY Appearance for Plaintiff Reginald Clay by Daniel A. Edelman (Edelman, Daniel) (Entered: 05/24/2024) |
| 05/24/2024 | 9 | ATTORNEY Appearance for Plaintiff Reginald Clay by Dulijaza Clark (Clark, Dulijaza) (Entered: 05/24/2024) |
| 05/24/2024 | 10 | ATTORNEY Appearance for Defendant Union Pacific Railroad Company by Gary Feinerman (Feinerman, Gary) (Entered: 05/24/2024) |
| 05/24/2024 | 11 | MOTION by Defendant Union Pacific Railroad Company for extension of time to file answer *or otherwise respond to the complaint (Unopposed)*<br><br>(Spellman, Johanna) (Entered: 05/24/2024) |
| 05/24/2024 | 12 | NOTICE of Motion by Johanna Margaret Spellman for presentment of motion for extension of time to file answer 11 before Honorable John Robert Blakey on 6/5/2024 at 11:00 AM. (Spellman, Johanna) (Entered: 05/24/2024) |
| 05/28/2024 | 13 | MINUTE entry before the Honorable John Robert Blakey: Defendant's unopposed motion for extension of time to file answer 11 is granted and any answer shall be filed on or before 6/27/2024. Motion hearing set for 6/5/2024 is stricken. Mailed notice (gel, ) (Entered: 05/28/2024) |
| 06/25/2024 | 14 | MOTION by Defendant Union Pacific Railroad Company for extension of time to file answer *or otherwise respond to the complaint (Unopposed) (Second)*<br><br>(Spellman, Johanna) (Entered: 06/25/2024) |
| 06/25/2024 | 15 | NOTICE of Motion by Johanna Margaret Spellman for presentment of motion for extension of time to file answer 14 before Honorable John Robert Blakey on 7/10/2024 at 11:00 AM. (Spellman, Johanna) (Entered: 06/25/2024) |
| 06/28/2024 | 16 | MINUTE entry before the Honorable John Robert Blakey: Defendant's second unopposed motion for extension of time to file answer 14 is granted and any answer shall be filed on or before 7/25/2024. Motion hearing set for 7/10/2024 is stricken. Mailed notice (gel, ) (Entered: 06/28/2024) |
| 07/01/2024 | 17 | ATTORNEY Appearance for Plaintiff Reginald Clay by Lucas Coughlin (Coughlin, Lucas) (Entered: 07/01/2024) |
| 07/15/2024 | 18 | MOTION by Defendant Union Pacific Railroad Company for extension of time to file *a Rule 26(f) Report and Serve Initial Disclosures (Joint)*<br><br>(Spellman, Johanna) (Entered: 07/15/2024) |
| 07/15/2024 | 19 | NOTICE of Motion by Johanna Margaret Spellman for presentment of motion for extension of time to file 18 before Honorable John Robert Blakey on 7/24/2024 at 11:00 AM. (Spellman, Johanna) (Entered: 07/15/2024) |
| 07/17/2024 | 20 | MINUTE entry before the Honorable John Robert Blakey: Defendant's joint motion for extension of time to file 18 is granted and any Rule 26(f) Report and service of initial disclosures shall be completed on or before 8/14/2024. Motion hearing set for 7/24/2024 is stricken. Mailed notice (gel, ) (Entered: 07/17/2024) |
| 07/23/2024 | 21 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Union Pacific Railroad Company *and Corporate Disclosure Statement (Supplemental)* (Spellman, Johanna) (Entered: 07/23/2024) |
| 07/23/2024 | 22 | MOTION by Defendant Union Pacific Railroad Company to stay *Proceedings (Joint)*<br><br>(Spellman, Johanna) (Entered: 07/23/2024) |

| 07/23/2024 | 23 | NOTICE of Motion by Johanna Margaret Spellman for presentment of motion to stay 22 before Honorable John Robert Blakey on 7/31/2024 at 11:00 AM. (Spellman, Johanna) (Entered: 07/23/2024) |
|---|---|---|
| 07/25/2024 | 24 | MINUTE entry before the Honorable John Robert Blakey: The Court grants the parties' joint motion to stay proceedings 22 , strikes the 7/31/24 Notice of Motion date, and hereby stays all set dates and deadlines until further order. The parties shall file an updated status report by 9/6/24, indicating whether the case will settle or return to a litigation posture. If at any time the parties agree that a settlement conference with the assigned Magistrate Judge could be helpful, they should call chambers to so advise. Mailed notice (gel, ) (Entered: 07/25/2024) |
| 08/23/2024 | 25 | NOTICE by Lucas Coughlin of Change of Address (Coughlin, Lucas) (Entered: 08/23/2024) |
| 08/23/2024 | 26 | NOTICE by Daniel A. Edelman of Change of Address (Edelman, Daniel) (Entered: 08/23/2024) |
| 08/23/2024 | 27 | EXECUTIVE COMMITTEE ORDER: GENERAL ORDER 24–0024: IT APPEARING THAT, the civil cases on the attached list have been selected for reassignment to form the initial calendar of the Honorable Georgia N. Alexakis; therefore IT IS HEREBY ORDERED that the attached list of 293 cases be reassigned to the Honorable Georgia N. Alexakis; and IT IS FURTHER ORDERED that all parties affected by this Order must review the Honorable Georgia N. Alexakis' webpage on the Court's website for the purpose of reviewing instructions regarding scheduling and case management procedures; andIT IS FURTHER ORDERED that any civil case that has been reassigned pursuant to this Order will not be randomly reassigned to create the initial calendar of a new district judge for twelve months from the date of this Order; and IT IS FURTHER ORDERED that the Clerk of Court is directed to add the Honorable Georgia N. Alexakis to the Court's civil case assignment system during the next business day, so that she shall receive a full share of such cases; and IT IS FURTHER ORDERED that the Clerk of Court is directed to add the Honorable Georgia N. Alexakis to the Court's criminal case assignment system twelve (12) months from the date of this order so that Judge Alexakis shall thereafter receive a full share of such cases.. Case reassigned to the Honorable Georgia N Alexakis for all further proceedings. Honorable John Robert Blakey no longer assigned to the case. Signed by Honorable Virginia M. Kendall on 8/23/2024.(tg, ) (Entered: 08/23/2024) |
| 08/23/2024 | 28 | NOTICE by Dulijaza Clark of Change of Address (Clark, Dulijaza) (Entered: 08/23/2024) |
| 09/06/2024 | 29 | STATUS Report *(Joint)* by Union Pacific Railroad Company (Spellman, Johanna) (Entered: 09/06/2024) |
| 09/10/2024 | 30 | MINUTE entry before the Honorable Georgia N Alexakis: The Court has reviewed the parties' joint status report 29 . Based on the information presented, the Court grants the parties' joint request for the following deadlines: (1) Union Pacific's deadline to answer or otherwise respond to plaintiff's complaint is 9/27/24; (2) the parties' deadline to file a Rule 26(f) report is 10/4/24; and (3) the parties' deadline to serve Rule 26(a)(1) initial disclosures is 10/11/24. (ca, ) (Entered: 09/10/2024) |
| 09/27/2024 | 31 | *Defendant's* ANSWER to Complaint *and Affirmative Defenses* by Union Pacific Railroad Company(Spellman, Johanna) (Entered: 09/27/2024) |
| 10/04/2024 | 32 | REPORT of Rule 26(f) Planning Meeting by Union Pacific Railroad Company (Spellman, Johanna) (Entered: 10/04/2024) |
| 10/07/2024 | 33 | MINUTE entry before the Honorable Georgia N Alexakis: The Court has reviewed the parties' Rule 26(f) joint status report 32 . Based on the information presented, and consistent with this Court's 9/10/24 order, the Court grants the parties' request for the following deadlines: (1) Rule 26(a)(1) disclosures shall be served on or before 10/11/24; (2) the parties shall issue written discovery on or before 11/8/24; (3) all non–expert fact discovery shall be commenced in time to be completed on or before 6/6/25; 4) reports from retained experts under Rule 26(a)(2) are due from plaintiff on or before 6/27/25; from defendant on or before 8/22/25; and from the parties' rebuttal experts on or before 10/3/25; and (5) expert discovery shall close on or before 11/21/25. All potentially dispositive motions shall be filed on or before 1/23/26, along |

| | | |
|---|---|---|
| | | with a proposed briefing schedule from the parties. A joint status report reflecting discovery progress is due on or before 2/7/25. If at any point the parties are interested in engaging the services of the assigned Magistrate Judge for settlement discussions, they are encouraged to contact the Courtroom Deputy so that a referral can be made. (ca, ) (Entered: 10/07/2024) |
| 10/23/2024 | 34 | MOTION by Attorney Lucas M. Coughlin to withdraw as attorney for Reginald Clay. No party information provided<br><br>(Edelman, Daniel) (Entered: 10/23/2024) |
| 10/23/2024 | 35 | NOTICE of Motion by Daniel A. Edelman for presentment of motion to withdraw as attorney 34 before Honorable Georgia N Alexakis on 10/30/2024 at 09:30 AM. (Edelman, Daniel) (Entered: 10/23/2024) |
| 10/24/2024 | 36 | MINUTE entry before the Honorable Georgia N Alexakis: Motion to withdraw Lucas Coughlin as attorney 34 is granted. No appearance is required on 10/30/24. (ca, ) (Entered: 10/24/2024) |
| 11/04/2024 | 37 | MOTION by Defendant Union Pacific Railroad Company for partial summary judgment *or, in the alternative, to strike (opposed)*<br><br>(Spellman, Johanna) (Entered: 11/04/2024) |
| 11/04/2024 | 38 | NOTICE of Motion by Johanna Margaret Spellman for presentment of motion for partial summary judgment 37 before Honorable Georgia N Alexakis on 11/7/2024 at 09:30 AM. (Spellman, Johanna) (Entered: 11/04/2024) |
| 11/04/2024 | 39 | RULE 56 Statement by Union Pacific Railroad Company regarding motion for partial summary judgment 37 – *Local Rule 56.1 Statement of Undisputed Material Facts* (Attachments: # 1 Table of Contents, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(Spellman, Johanna) (Entered: 11/04/2024) |
| 11/05/2024 | 40 | MINUTE entry before the Honorable Georgia N Alexakis: Plaintiff's opposition to the motion for partial summary judgment is due by December 2, 2024; Union Pacific's reply due December 16, 2024. No appearance is required on 11/7/24. (ca, ) (Entered: 11/05/2024) |
| 11/25/2024 | 41 | ATTORNEY Appearance for Plaintiff Reginald Clay by Alexandra Rose Huzyk (Huzyk, Alexandra) (Entered: 11/25/2024) |
| 12/02/2024 | 42 | RESPONSE by Reginald Clay to MOTION by Defendant Union Pacific Railroad Company for partial summary judgment *or, in the alternative, to strike (opposed)*<br><br>37 *(Plaintiff's Response to Union Pacific's Motion for Summary Judgement)* (Attachments: # 1 Appendix)(Edelman, Daniel) (Entered: 12/02/2024) |
| 12/02/2024 | 43 | RESPONSE by Plaintiff Reginald Clay to Rule 56 statement, 39 *(Plaintiff's Response to Union Pacific's Statement of Material Facts)* (Edelman, Daniel) (Entered: 12/02/2024) |
| 12/16/2024 | 44 | REPLY by Union Pacific Railroad Company to MOTION by Defendant Union Pacific Railroad Company for partial summary judgment *or, in the alternative, to strike (opposed)*<br><br>37 (Spellman, Johanna) (Entered: 12/16/2024) |
| 12/27/2024 | 45 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional |

| | | |
|---|---|---|
| | | affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/27/2024: Mailed notice. (tg, ) (Entered: 12/30/2024) |
| 02/07/2025 | 46 | STATUS Report *(Plaintiff's Status Report)* by Reginald Clay<br><br>(Clark, Dulijaza) (Entered: 02/07/2025) |
| 02/07/2025 | 47 | STATUS Report *from Union Pacific Railroad Company* by Union Pacific Railroad Company<br><br>(Attachments: # 1 Exhibit A)(Spellman, Johanna) (Entered: 02/07/2025) |
| 02/10/2025 | 48 | MINUTE entry before the Honorable Georgia N Alexakis: The Court has reviewed the parties' status reports 46 , 47 . The parties are directed to file a joint status report in 4/10/25 reflecting their progress on discovery. Defendant's motion for partial summary judgment 37 remains under advisement; the Court expects to rule via CM/ECF. (ca, ) (Entered: 02/10/2025) |
| 03/12/2025 | 49 | MOTION by Plaintiff Reginald Clay for protective order *(Agreed Motion to Enter Confidentiality Order)*<br><br>(Huzyk, Alexandra) (Entered: 03/12/2025) |
| 03/12/2025 | 50 | NOTICE of Motion by Alexandra Rose Huzyk for presentment of motion for protective order 49 before Honorable Georgia N Alexakis on 3/20/2025 at 10:00 AM. (Huzyk, Alexandra) (Entered: 03/12/2025) |
| 03/12/2025 | 51 | *Amended* NOTICE of Motion by Alexandra Rose Huzyk for presentment of motion for protective order 49 before Honorable Georgia N Alexakis on 3/20/2025 at 09:30 AM. (Huzyk, Alexandra) (Entered: 03/12/2025) |
| 03/13/2025 | 52 | MINUTE entry before the Honorable Georgia N Alexakis: The Court grants the parties' agreed motion for entry of a confidentiality order 49 . Enter Order. No appearance required on 3/20/25. (ca, ) (Entered: 03/13/2025) |
| 03/13/2025 | 53 | AGREED Confidentiality Order Signed by the Honorable Georgia N Alexakis on 3/13/25.(ca, ) (Entered: 03/13/2025) |
| 04/10/2025 | 54 | MINUTE entry before the Honorable Georgia N Alexakis: For the reasons set forth in the accompanying order, defendant's motion for partial summary judgment 37 is denied. (ca, ) (Entered: 04/10/2025) |
| 04/10/2025 | 55 | ORDER Signed by the Honorable Georgia N Alexakis on 4/10/25.(ca, ) (Entered: 04/10/2025) |
| 04/10/2025 | 56 | STATUS Report *(Joint Status Report)* by Reginald Clay<br><br>(Huzyk, Alexandra) (Entered: 04/10/2025) |
| 04/11/2025 | 57 | MINUTE entry before the Honorable Georgia N Alexakis: The Court has reviewed the parties' joint status report 56 and directs the parties to submit another status report on or before 5/10/25 reflecting their progress toward meeting the 6/6/25 deadline for completion of all non–expert fact discovery 33 . If there are any discovery disputes that the parties need the Court's assistance to resolve, they may file the appropriate motion and notice it up for presentment. If at any point the parties are interested in engaging the services of the assigned Magistrate Judge for settlement discussions, they are encouraged to contact the Courtroom Deputy so that a referral can be made. (ca, ) (Entered: 04/11/2025) |
| 05/08/2025 | 58 | MOTION by Defendant Union Pacific Railroad Company for certificate of appealability – *Opposed Motion to Certify the Court's April 10, 2025 Order for Interlocutory Appeal*<br><br>(Spellman, Johanna) (Entered: 05/08/2025) |
| 05/08/2025 | 59 | NOTICE of Motion by Johanna Margaret Spellman for presentment of motion for certificate of appealability 58 before Honorable Georgia N Alexakis on 5/15/2025 at |

| | | |
|---|---|---|
| | | 09:30 AM. (Spellman, Johanna) (Entered: 05/08/2025) |
| 05/09/2025 | 60 | MINUTE entry before the Honorable Georgia N Alexakis: Consistent with the parties' proposed briefing schedule, plaintiff's opposition to defendant's motion for a certificate of appealability is due 5/22/25, and defendant's reply is due 5/29/25. The Court re–sets the hearing on defendant's motion for a certificate of appealability 58 to 6/26/25 at 9:30 a.m. Mailed notice. (ym) (Entered: 05/09/2025) |
| 05/09/2025 | 61 | STATUS Report – *Joint Status Report* by Union Pacific Railroad Company (Spellman, Johanna) (Entered: 05/09/2025) |
| 05/12/2025 | 62 | MINUTE entry before the Honorable Georgia N Alexakis: The Court has reviewed the parties' joint status report 61 , which sets forth competing positions on the case schedule in light of defendant's pending motion seeking certification of the Court's April 10, 2025 order for an interlocutory appeal. The Court grants plaintiff's request that the current fact discovery deadline be extended until 9/4/25. The Court stays all oral discovery (i.e., depositions) pending resolution of defendant's motion seeking certification for an interlocutory appeal. Written discovery, however, may proceed. The Court will revisit the issue of a discovery stay upon resolution of the aforementioned motion. (ca, ) (Entered: 05/12/2025) |
| 05/22/2025 | 63 | RESPONSE by Reginald Clayin Opposition to MOTION by Defendant Union Pacific Railroad Company for certificate of appealability – *Opposed Motion to Certify the Court's April 10, 2025 Order for Interlocutory Appeal* 58 *(Plaintiff's Response in Opposition to Defendant's Motion to Certify the Court's April 10, 2025 Order for Interlocutory Appeal)* (Edelman, Daniel) (Entered: 05/22/2025) |
| 05/29/2025 | 64 | REPLY by Union Pacific Railroad Company to MOTION by Defendant Union Pacific Railroad Company for certificate of appealability – *Opposed Motion to Certify the Court's April 10, 2025 Order for Interlocutory Appeal* 58 (Spellman, Johanna) (Entered: 05/29/2025) |
| 06/10/2025 | 65 | MINUTE entry before the Honorable Georgia N Alexakis: For the reasons stated in the accompanying memorandum opinion and order, the Court grants Union Pacific's motion for certification of the April 10, 2025 order for interlocutory appeal. 58 . Union Pacific has 10 days from the entry of these findings to request the Seventh Circuit's interlocutory review of the certified question. If granted, the Court will stay the case pending interlocutory review. Until the Seventh Circuit resolves any request for interlocutory review, however, the parties must continue their progress on written discovery. 62 . The Court vacates the 6/26/25 hearing on Union Pacific's motion. (ca, ) (Entered: 06/10/2025) |
| 06/10/2025 | 66 | MEMORANDUM Opinion and Order Signed by the Honorable Georgia N Alexakis on 6/10/25.(ca, ) (Entered: 06/10/2025) |
| 07/11/2025 | 67 | CERTIFIED copy of order dated 7/10/2025 from the 7th Circuit notice of appeal; Appellate case no.: 25–8011; 1. PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b), filed on June 20, 2025, by counsel for the petitioner. 2. ANSWER TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b), filed on July 8, 2025, by counsel for the respondent. 3. MOTION FOR LEAVE TO AMEND ANSWER TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b), filed on July 9, 2025, by counsel for the petitioner. IT IS ORDERED that the motion to correct the response is GRANTED. IT IS FURTHER ORDERED that the petition for permission to appeal is GRANTED. The petitioner shall pay the required docket fees to the clerk of the district court within fourteen days from the entry of this order pursuant to Federal Rule of Appellate Procedure 5(d)(1). Once the district court notifies this court that the fees have been paid, the appeal will be entered on this court's general docket. The parties may move for certification of the question to the Illinois Supreme Court in their briefs. See Cir. R. 52(a). (ph, ) (Entered: 07/11/2025) |

| 07/14/2025 | 68 | PAYMENT by Union Pacific Railroad Company of Filing fee $ 605, receipt number AILNDC−23747117. (Feinerman, Gary) (Entered: 07/14/2025) |
|---|---|---|
| 07/15/2025 | 69 | ACKNOWLEDGMENT of receipt of short record on appeal regarding notice of appeal filed in District Court on 07/10/2025; USCA Case No. 25−2185. (jh, ) (Entered: 07/15/2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REGINALD CLAY, | |
| Plaintiff, | Case No. 1:24-cv-4194 |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY, | |
| Defendant. | |

**NOTICE OF REMOVAL OF UNION PACIFIC RAILROAD COMPANY**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Union Pacific Railroad Company ("Union Pacific"), by and through its undersigned counsel, hereby removes this action—with reservation of all defenses and rights—from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois. For the sole and limited purpose of establishing the basis of this Court's jurisdiction, Union Pacific assumes the truth of Plaintiff Reginald Clay's allegations. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy for Plaintiff's claims exceeds the sum or value of $75,000.

## I.     FACTUAL BACKGROUND

1.      On April 16, 2024, Plaintiff filed a Complaint in the Circuit Court of Cook County, Illinois, captioned *Reginald Clay v. Union Pacific Railroad Company*, Case No. 2024L004147. A copy of the Complaint is attached hereto as **Exhibit 1**.

2.      Plaintiff purported to effectuate service of the Complaint on Union Pacific on April 22, 2024, and a copy of the summons and all process, pleadings, and orders served upon Union Pacific are attached hereto as **Exhibit 2**.

**A11**

3.      The Complaint asserts that Union Pacific violated Plaintiff's rights under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), by allegedly collecting Plaintiff's biometric identifiers or biometric information without providing notice or obtaining his written consent, in violation of 740 ILCS 14/15(b). *See* Ex. 1 ("Compl.") ¶¶ 17, 33-34.

## II.     THIS COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A)

4.      A federal court has diversity jurisdiction over an action if two requirements are met: (1) there is complete diversity of citizenship between the plaintiff and the defendant, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). As shown below, each of these requirements is met here.

### A.     Complete Diversity Exists Between Plaintiff And Union Pacific

5.      Plaintiff alleges that he is an "individual who resides in Elgin, Illinois," and that he "visited Illinois facilities of Union Pacific Railroad Company" on "numerous occasions between 2019 and 2024." Compl. ¶¶ 2, 5. Although residence and citizenship are not coextensive, because Plaintiff alleges that he resides in Illinois and because the alleged violations took place while he was present in Illinois, the strongest inference from the Complaint is that Plaintiff is a citizen of the State of Illinois for purposes of diversity jurisdiction.

6.      At the time this lawsuit was filed and to the present, Union Pacific was and remains a Delaware corporation with its principal place of business in Nebraska. Compl. ¶ 3. Accordingly, Union Pacific is a citizen of the States of Delaware and Nebraska for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it

has its principal place of business."); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (determining that a corporation's "principal place of business" "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities"); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 575 (2004) (holding that citizenship for purposes of diversity jurisdiction is assessed at the time of the filing of the complaint).

7.      Because Plaintiff is a citizen of Illinois, while Union Pacific is a citizen of Delaware and Nebraska, there is complete diversity of citizenship.  *See* 28 U.S.C. § 1332(a)(1).

### B.    The Amount in Controversy Exceeds $75,000

8.      Union Pacific denies any and all liability, contends that the Complaint's allegations are entirely without merit, and submits that neither statutory damages nor any other form of relief is warranted.  For purposes of this Notice of Removal, however, taking the Complaint's factual and legal allegations as true, the amount in controversy for Plaintiff's claims exceeds $75,000, exclusive of interest and costs, and thus satisfies the amount-in-controversy requirement for diversity jurisdiction.

9.      The Complaint alleges that Plaintiff visited Union Pacific's Illinois facilities "[o]n numerous occasions between 2019 and 2024" and that Union Pacific violated Section 15(b) of BIPA by "failing to obtain informed written consent and releases before obtaining Plaintiff's fingerprints."  Compl. ¶¶ 5-8, 33-34.  The Complaint alleges that Plaintiff is entitled to statutory damages of $5,000 for "each willful and/or reckless violation of BIPA."  *Id*., Prayer for Relief ¶ a. The Complaint also includes a request for "[r]easonable attorneys' fees" pursuant to 740 ILCS 14/20(3).  *Id.*, Prayer for Relief ¶ c.

10.     "[A]ttorneys' fees up to the time of removal … count toward the jurisdictional amount."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006).  Because Plaintiff seeks up to $5,000 for each of the "numerous" BIPA violations alleged in the Complaint and reasonable

attorney's fees, the amount in controversy exceeds $75,000, not including post-removal attorney's fees or any other relief sought. *See id.*; *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769-70 (N.D. Ill. 2019) (using the total number of allegedly collected fingerprint scans to calculate the amount in controversy for purposes of diversity jurisdiction).

11.     Accordingly, the amount-in-controversy requirement is satisfied and removal is proper under 28 U.S.C. §§ 1332(a).

### III.    COMPLIANCE WITH REMOVAL STATUTE

12.     The Notice of Removal was properly filed in this District because the Circuit Court of Cook County, Illinois, is located in this District. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 93(a)(1).

13.     The Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11. *See* 28 U.S.C. § 1446(a).

14.     Pursuant to 28 U.S.C. § 1446(a), attached hereto and marked as **Exhibits 1 and 2** are true and correct copies of the Complaint (Exhibit 1) and all process, pleadings, and orders served upon Union Pacific (Exhibit 2). A copy of the Circuit Court of Cook County, Illinois docket sheet is attached as **Exhibit 3**. Union Pacific has not filed an answer or other response to the Complaint in state court. Union Pacific is not aware of any pending motions filed under Illinois procedural rules in state court.

15.     The Notice of Removal is filed within 30 days of service of the Complaint on Union Pacific, and therefore this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1).

16.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff, and a copy, along with a Notice of Filing of the Notice of Removal, is today being filed with the Clerk of the Circuit Court of Cook County, Illinois.

17.     Union Pacific reserves the right to amend or supplement this Notice of Removal. Union Pacific further reserves all rights and defenses, including those available under the Federal Rules of Civil Procedure and any other applicable rules, statutes, or case law.

### IV.   CONCLUSION

Union Pacific respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Circuit Court of Cook County, Illinois.  Union Pacific further requests such other relief as the Court deems appropriate.


Dated:  May 21, 2024                         Respectfully submitted,

                                             _/s/ Johanna Spellman_____
                                             Johanna Spellman, One of the Attorneys for
                                             Defendant Union Pacific Railroad Company

                                             Sean M. Berkowitz (Illinois Bar No. 6209701)
                                                sean.berkowitz@lw.com
                                             Johanna Spellman (Illinois Bar No. 6293851)
                                                johanna.spellman@lw.com
                                             Kathryn A. Running (Illinois Bar No. 6330369)
                                                kathryn.running@lw.com
                                             LATHAM & WATKINS LLP
                                             330 North Wabash Avenue, Suite 2800
                                             Chicago, Illinois  60611
                                             Telephone:  (312) 876-7700
                                             Facsimile:  (312) 993-9767

## <u>CERTIFICATE OF SERVICE</u>

I, Johanna Spellman, hereby certify that I caused a copy of the foregoing to be served on

the parties listed below, by email on May 21, 2024, and by prepaid, First Class United States mail,

on May 22, 2024.

Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Atty. No. 41106 (Cook)

/s/ *Johanna Spellman*
Johanna Spellman, One of the Attorneys for
Defendant Union Pacific Railroad Company

Johanna Spellman (Illinois Bar No. 6293851)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: johanna.spellman@lw.com

**A16**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

REGINALD CLAY,

      Plaintiff,

vs.

UNION PACIFIC RAILROAD COMPANY,

      Defendant.

Case No. 1:24-cv-4194

**INDEX OF EXHIBITS FOR NOTICE OF REMOVAL**
**OF UNION PACIFIC RAILROAD COMPANY**

| Exhibit No. | Description |
|---|---|
| Exhibit 1 | Complaint in *Reginald Clay v. Union Pacific Railroad Company*, Circuit Court of Cook County Case No. 2024L004147 |
| Exhibit 2 | Copy of the Summons and All Process, Pleadings, and Orders Served Upon Union Pacific |
| Exhibit 3 | Docket in *Reginald Clay v. Union Pacific Railroad Company*, Circuit Court of Cook County Case No. 2024L004147 |

**A17**

# EXHIBIT 1

Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 7/25/2024 9:30 AM

Atty. No. 41106

**FILED**
4/16/2024 4:09 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L004147
Calendar, U
27286719

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

REGINALD CLAY,                          )
                                        )
      Plaintiff,                   )
                                        )
    v.                               )          **2024L004147**
                                        )
UNION PACIFIC RAILROAD                  )
COMPANY,                                )
                                        )
      Defendant.                   )

FILED DATE: 4/16/2024 4:09 PM   2024L004147

### COMPLAINT

1.    Plaintiff Reginald Clay brings this action against Defendant Union Pacific Railroad Company to secure redress for Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data.

### PARTIES

2.    Plaintiff Reginald Clay is an individual who resides in Elgin, Illinois.

3.    Defendant Union Pacific Railroad Company is a Delaware corporation with its principal place of business in Nebraska. It does business in Illinois. Its registered agent and office is C T Corporation System, 208 S. La Salle St., Suite 814, Chicago, IL 60604-1101.

### FACTS

4.    Plaintiff is a commercial truck driver.

5.    On numerous occasions between 2019 and 2024, Plaintiff visited Illinois facilities of Union Pacific Railroad Company to pick up or deliver shipping containers. Plaintiff would arrive in a tractor-trailer, pick up a chassis and container, leave the facility, and deliver the container to its destination. He also would return empty containers/ chassis to the Union Pacific facility.

6.    Plaintiff was required to register his fingerprint information upon first visiting a Union Pacific facility. Union Pacific used an "Auto-Gate" system for that purpose.

7.    On each occasion when he entered or exited the Union Pacific facilities, Plaintiff was required to place his fingerprints into a reader, to be matched with the fingerprints on file.

-1-

FILED DATE: 4/16/2024 4:09 PM   2024L004147

8.      No disclosure were provided to Plaintiff about what was done with the information or how or where it was stored or how long it would be retained.

9.      Plaintiff was a class member in *Fleury v. Union Pacific Railroad Company,* 20cv390 (N.D.Ill.). Statutes of limitation have been tolled during its pendency.

10.     Biometrics are not relegated to esoteric corners of commerce.  Many businesses – such as Defendant's  –  and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

11.     Unlike ID badges or time cards  – which can be changed or replaced if stolen or compromised  – biometric identifiers such as fingerprints are permanent.

12.     This exposes persons such as Plaintiff to serious and irreversible privacy risks.

13.     For example, if a database containing biometric data is hacked, breached, or otherwise exposed, the subjects have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

14.     A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. See Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018).

15.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"), to regulate companies that collect and store biometric data of Illinois citizens.

16.     Notwithstanding the clear and unequivocal requirements of the law, Defendant Union Pacific Railroad Company disregarded the  statutorily protected privacy rights of persons entering and exiting its facilities and unlawfully collected, stored, disseminated, and used their biometric data in violation of BIPA.

-2-

**A20**

FILED DATE: 4/16/2024 4:09 PM   2024L004147

17.     Specifically, Defendant Union Pacific Railroad Company has violated and continues to violate BIPA because it did not:

    a.    Properly inform Plaintiff in writing of the specific purpose and length of time for which all types of biometric data was being collected, stored, disseminated, and used, as required by BIPA;

    b.    Receive a written release from Plaintiff to collect, store, disseminate or otherwise use all types of biometric data, as required by BIPA; and

    c.    Obtain consent from Plaintiff to disclose, redisclose, or otherwise disseminate all types of biometric data to a third party as required by BIPA.

### BIOMETRIC INFORMATION PRIVACY ACT

18.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c).

19.     In late 2007, a biometric company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. As a result, there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold through the bankruptcy proceedings without adequate protections for Illinois citizens.

20.     The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

21.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. See *Illinois House*

-3-

**A21**

FILED DATE: 4/16/2024 4:09 PM   2024L004147

*Transcript*, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

22.     To ensure compliance, BIPA provides that, for each violation, the prevailing party

may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or

actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

23.     BIPA is an informed consent statute which achieves its goal by making it unlawful

for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise

obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

      a.    Informs the subject in writing that a biometric identifier or biometric
           information is being collected, stored and used;

      b.    Informs the subject in writing of the specific purpose and length of term for
           which a biometric identifier or biometric information is being collected,
           stored, and used; and

      c.    Receives a written release executed by the subject of the biometric identifier
           or biometric information. 740 ILCS 14/15(b).

24.     Biometric identifiers include retina and iris scans, voiceprints, fingerprints, and

scans of hand and face geometry. 740 ILCS 14/10. Biometric information is separately defined to

include any information based on an individual's biometric identifier that is used to identify an

individual. Id.

25.     BIPA also establishes standards for how companies must handle Illinois citizens'

biometric identifiers and biometric information. See, e.g., 740 ILCS 14/15(c)-(d). For example,

BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

biometric information without first obtaining consent for such disclosure. 740 ILCS 14/15(d)(l).

26.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a

person's biometric identifiers or biometric information (740 ILCS 4/15(c)) and requires companies

to develop and comply with a written policy – made available to the public – establishing a retention

schedule and guidelines for permanently destroying biometric identifiers and biometric information

-4-

**A22**

when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

27.　　The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

28.　　BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.

29.　　Unlike other statutes that only create a right of action if there is a data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

30.　　As set forth above, Defendant Union Pacific Railroad Company disregarded Plaintiff's legal rights in violation of BIPA.

31.　　Plaintiff was repeatedly exposed to the risks and harmful conditions created by Defendant Union Pacific Railroad Company's violations of BIPA alleged herein.

32.　　Plaintiff is entitled to bring suit to redress the violation of his rights under BIPA. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 129 N.E.3d 1197.

## COUNT I

33.　　Plaintiff incorporates paragraphs 1-32.

34.　　Defendant Union Pacific Railroad Company violated 740 ILCS 14/15(b) by failing to obtain informed written consent and releases before obtaining Plaintiff's fingerprints.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant Union Pacific Railroad Company for:

-5-

FILED DATE: 4/16/2024 4:09 PM   2024L004147

**A23**

FILED DATE: 4/16/2024 4:09 PM   2024L004147

a.  Statutory damages of $5,000 for each willful and/or reckless violation of
    BIPA (740 ILCS 14/20(2)) or statutory damages of $1,000 for each negligent
    violation of BIPA (740 ILCS 14/20(1));

b.  Reasonable attorneys' fees and costs and other litigation expenses pursuant to
    740 ILCS 14/20(3);

c.  Such other or further relief as is appropriate.


                                          /s/ Daniel A. Edelman
                                          Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Atty. No. 41106 (Cook)


                                    -6-


                                  **A24**

FILED DATE: 4/16/2024 4:09 PM   2024L004147

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

_/s/ Daniel A. Edelman_
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

-7-

**A25**

# **APPENDIX B**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| NANCY GAGEN, | ) | No. 2023 L 008294 |
| Plaintiff, | ) | |
| v. | ) | Judge Daniel J. Kubasiak |
| MANDELL MENKES, LLC | ) | Commercial Calendar T |
| Defendant. | ) | |

### OPINION

This cause is before the court on Defendant Mandell Menkes, LLC's Motion to Transfer.

The court reviewed the pleading and the arguments made by the parties. Upon doing so, the court denies Mandell Menkes' Motion to Transfer.

### BACKGROUND

The following facts are contained in the Record. Plaintiff Nancy Gagen filed suit on August 30, 2023 alleging violations of Sections 15(a), (b), and (d) of the Illinois Biometric Information Privacy Act ("BIPA").

### STANDARD OF LAW

A plaintiff is not required to plead and prove that its venue selection for the filing of its action was proper. *Amer. Country Ins. Co. v. Mahoney*, 203 Ill. App. 3d 453, 460 (1st Dist. 1990). Where the defendant is the movant, the burden is on it to prove that the plaintiff's selection of venue was improper. *See Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987). In doing so, the defendant must set out specific facts, not conclusions, and show a clear right to the relief asked for. *Id.* Any doubts arising from the inadequacy of the record will be resolved against the defendant. *Id.* No weight can be ascribed to a plaintiff's omission to plead venue facts, since no law requires it. *Hines v. Dresser Indus., Inc.*, 137 Ill. App. 3d 7, 12 (5th Dist. 1985).

### DISCUSSION

Mandell Menkes seeks for the Court to transfer venue of this matter to the Municipal Division. Mandell Menkes argues that the *Cothron* opinion provides that the Illinois Supreme Court suggested that the Illinois Legislature review the policy concerns raised in its opinion and for the Legislature to make clear its intent regarding the assessment of damages under BIPA. Mandell Menkes asserts that in August 2024 the General Assembly enacted PA 103-0769 (the "Revised Legislation") which was intended to clarify the language surrounding damages awarded under BIPA. Mandell Menkes asserts that the Revised Legislation states that a violation occurs, and a right of action exists, only

Page 1 of 4

**A27**

once, not multiple times when a piece of the same biometric information is scanned multiple times.

Mandell Menkes argues that this clarification means that a successful plaintiff would be entitled to $1,000 or $5,000, at most, in damages. Mandell Menkes argues that the Revised Legislation also provides that no matter how many times the same biometric information is collected from the same person without informed consent, there is only a single violation under Section 15(b) of BIPA. Mandell Menkes argues that given the Revised Legislation the Court must exercise its discretion to determine whether this matter needs to be transferred to the Municipal Division for further litigation. Mandell Menkes argues that the Court must consider all relevant factors without emphasizing any one factor in connection with the totality of the circumstances. Mandell Menkes argues that if the Court were to transfer this matter to the Municipal Division it would be subject to mandatory non-binding arbitration which would prevent an unnecessary drain on judicial resources.

Gagen maintains that the Clarification Legislation is intended to undo *Cothron*, not clarify it. Gagen maintains that the principle of the Revised Legislation is to override the precedent established in *Cothron* by precluding individuals from asserting claims based upon multiple distinct violations as separate causes of action. Gagen maintains that although the Revised Legislation's sponsors frame it as clarifying *Cothron* in interviews, it does nothing to change the standard for assessing damages under BIPA.

Gagen maintains that the Revised Legislation demonstrates the General Assembly's disagreement with the central holding in *Cothron* by seeking to terminate a party's right to multiple claims. Gagen maintains that the Revised Legislation does not replace any of BIPA's existing relevant text and instead simply reclassifies the previous 740 ILCS 14/20 as subsection (a) and introduces a new subsection (b). Gagen maintains that the Revised Legislation's language expressly abrogates each of the *Cothron* court's separate conclusions. However, Gagen maintains that the Revised Legislation leaves wholly untouched the discretionary award of damages language for each violation that the *Cothron* court invited the Legislature to clarify.

Additionally, Gagen maintains that retroactive application of the Revised Legislation would have a substantive impact on vested rights established by *Cothron*. Gagen maintains that the general rule is that statutory changes are presumed to be prospective only, but the presumption can be rebutted by showing the amendment merely affects procedural matters and not substantive rights.

Gagen maintains that a procedural change generally prescribes the method of enforcing rights and embraces pleading, evidence, and legal practice rules which direct the means to bring parties to court or the manner in which the court process shall proceed. Gagen maintains that a substantive change establishes, creates, defines, or regulates rights and thus could actually make one a party to a lawsuit. Gagen maintains that vested rights are protected from legislative interference by way of the Due Process Clause. Gagen maintains that for the Court to determine whether legislation is retroactive, the Court must first consider whether the legislation stated an explicit intent about retroactivity.

Gagen maintains that if the Legislature's intent is unclear the Court determines whether the amendment is procedural or substantive in nature.

Lastly, Gagen maintains that the Revised Legislation does not modify BIPA's liquidated damages remedies at all, leaving those provisions entirely untouched. Gagen maintains that the Revised Legislation repeals and redefines what constitutes a violation. Gagen maintains that the Revised Legislation effectively divests Gagen of her multiple fully formed and vested claims thus resulting in a prohibitive retroactive impact. Gagen also maintains that the Legislature in making the Revised Legislation was not attempting to resolve conflicting appellate opinions that would require retroactive application. Lastly, Gagen requests that the Court input Rule 304(a) language so that Gagen can immediately appeal the Court's ruling.

Whether a change in law should apply retroactively depends on legislative intent. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶39. Traditionally, an amendment to a statute is not applied retroactively unless the legislature expressly states that intention. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-38 (2001) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1995). The Supreme Court explained that prospective application is the default rule and that requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. *Landgraf* at 272-73.

The Court finds that the Revised Legislation does address what the Illinois Supreme Court called for within the *Cothron* opinion, which was to address policy-based concerns surrounding potentially excessive damage awards under BIPA. Upon review of the Revised Legislation the Court finds that the new portions of the Revised Legislation solely affect the number of BIPA violations a plaintiff can recover. The language simply states that no matter how many times a plaintiff may, for example scan her fingerprint, it is one single cause of action. The Revised Legislation does not affect a plaintiff's ability to file suit nor does it affect what actions constitute a violation of BIPA. Further, the Court finds that the Revised Legislation does not explicitly limit the amount of damages a plaintiff can recover for BIPA violations.

Additionally, the Court finds that there is nothing in the Revised Legislation that suggests that this language was to be applied retroactively. The Court must then look at Section 4 of the Statute of Statutes, 5 ILCS 70/4, to determine whether the Revised Legislation was a procedural change or a substantive change. The Appellate Court outlined its analysis of the Statute of Statutes in *People v. Carter*, 2022 IL App (1st) 210261 which cites *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994). The Appellate Court determined that the procedure for assessing retroactive application of a statute turns on an interplay of *Landgraf* and Section 4 of the Statute of Statutes. The Appellate Court in *Caveney* found that a court will rarely go past the first part of the *Landgraf* analysis because an amendatory act which does not contain a clear indication of legislative intent will be presumed to be applied prospectively and not retroactively. *Caveney v. Bower*, 207 Ill. 2d 82, 94 (2003).

23 CL 8294

The Court finds that the Revised Legislation's language was meant to address the confusing topic of number of causes of actions a plaintiff can assert under BIPA, which constitutes a substantive change to the legislation. The Court has reviewed the legislative intent section of the Revised Legislation and finds that the Legislature does not provide language regarding an intent to simply clarify BIPA's language. The Revised Legislation prohibits Gagen from claiming a separate cause of action for each time her biometric information was collected, which significantly affects the amount of damages she is entitled to recover if the Revised Legislation was to be applied to this matter. The Court finds that applying the Revised Legislation to this matter would severely and negatively impact Gagen's recovery as it would preclude her from recovering her full damages under BIPA at the time that she filed her complaint.

However, the Court finds that any damage award under BIPA are discretionary and can be limited based upon the total circumstances presented by the Parties. *See* 740 ILCS 14/20. The Court does not agree with Mandell Menkes that this matter should be transferred to the Municipal Division based upon the Revised Legislation. As such, the Court denies Mandell Menke's Motion to Transfer.

## ORDER

It is ordered:

(1) Mandell Menkes' Motion to Transfer is denied;
(2) The October 23, 2024 at 9:00 a.m. status date shall stand.

5008
4335

**Judge Daniel J. Kubasiak**

OCT 21 2024

*Circuit Court - 2072*

ENTERED,

Judge Daniel J. Kubasiak, No. 2072

Page **4** of 4

**A30**

# **APPENDIX C**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ALEJANDRO ROJO, | ) | No. 23 L 8588 |
| *Plaintiff,* | ) | |
| | ) | Honorable Mary Colleen Roberts |
| vs. | ) | |
| | ) | Calendar "N" |
| HOMER TREE CARE, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

## ORDER

This matter coming to be heard on the motion of defendant Homer Tree Care, Inc.

("defendant") to transfer the complaint of plaintiff Alejandro Rojo ("plaintiff") to First Municipal

District.

## FACTS

Plaintiff's claims arise from alleged violations of the Biometric Information Privacy Act

("BIPA"). Plaintiff alleges he was employed by defendant from October 2018 through August

2022. At his initial hiring, plaintiff was required to enroll in a biometric time clock system using

a scan of his fingerprint or hand to clock in and out of work. Plaintiff alleges his fingerprint or

handprint was scanned no less than 1,500 times during the relevant time period. Plaintiff alleges

defendant disclosed, redisclosed, or otherwise disseminated plaintiff's biometric identifiers to a

third-party without informing plaintiff of the collection, storage, and dissemination of his

information. Plaintiff filed a three-count amended complaint alleging different violations of the

Act including: Count I: Violation of §15(a): failure to institute, maintain, and adhere to publicly

available retention schedule; Count II: Violation of §15(b): failure to obtain informed written

consent and release before obtaining biometric identifiers or information; and Count III:

Violation of §15(d): Disclosure of biometric identifiers and information without obtaining consent.

### **Court's Analysis**

Defendant moves to transfer the instant matter to First Municipal District arguing the amount in controversy is below the threshold for damages for cases in the Law Division. Under the BIPA as it existed until August 2, 2024, a prevailing party in a BIPA action, in the trial court's discretion, could be awarded as much as $1,000 for each negligent violation of the BIPA or $5,000 for each intentional violation of the BIPA. On August 2, 2024, the law changed. Defendant argues that the current law (i.e. after the August 2, 2024 amendment), even assuming the higher amount for an intentional or reckless violation, defendant can only be potentially liable in liquidated damages for each of plaintiff's three-counts complaint in the sum of $5,000 per count. Thus, defendant claims the amount of damages are well under the threshold amount for cases assigned to the Law Division.

Conversely, plaintiff contends that every unauthorized capture of his biometric data constitutes a separate violation of the statute. Under plaintiff's calculation, assuming intentional violations for illustrative purposes, BIPA would provide a recovery of $5,000 for each incident of capturing, storing, and disseminating of data for each signing in and signing out on the time clock. The complaint does not specify the numbers of claimed incidents. Plaintiff does assert the relevant time-period is from April 25, 2019 through August of 2022. Using basic math, $1,000 multiplied by even a month of signing in and out on the time clock has the potential to result in amounts above the $30,000 threshold amount for cases assigned to the Law Division.

The Illinois General Assembly adopted the BIPA in 2008 in response to increased concerns relating to commercial use of biometric data. Section 15(a) of the Act requires that

2

**A33**

private entities establish a retention schedule and guidelines for permanently destroying biometric data when the purpose for collecting it is satisfied, or within three years of the individual's last interaction with the private entity. Section 15(b) requires the entity, prior to obtaining a person's biometric identifier or biometric information, to notify the person and receive a written release. Section 15(d) requires the entity, prior to disseminating a person's biometric identifier or biometric information, to acquire consent of the subject of the biometric identifier or biometric information.

When first enacted, §20 addressed the recoverable damages under the BIPA as follows:

Right of action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $ 1,000 or actual damages, whichever is greater;
(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $ 5,000 or actual damages, whichever is greater;
(3) reasonable attorneys' fees and costs, including expert witness fees and othis litigation expenses; and
(4) othis relief, including an injunction, as the State or federal court may deem appropriate.

See 740 ILCS 14/20.

On April 11, 2024, the Illinois Senate voted to enact Senate Bill 2979. The Illinois House passed SB 2979 on May 16, 2024 and Governor J.B. Pritzker signed SB 2979 into law effective August 2, 2024.

The amendment to §20 left subsection (a) unchanged and added the following language (the "August 2 Amendment"):

(b) For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for

3

**A34**

which the aggrieved person is entitled to, at most, one recovery under this
Section.
(c) For purposes of subsection (d) of Section 15, a private entity that, in more than
one instance, discloses, rediscloses, or othiswise disseminates the same biometric
identifier or biometric information from the same person to the same recipient
using the same method of collection in violation of subsection (d) of Section 15
has committed a single violation of subsection (d) of Section 15 for which the
aggrieved person is entitled to, at most, one recovery under this Section regardless
of the number of times the private entity disclosed, redisclosed, or othiswise
disseminated the same biometric identifier or biometric information of the same
person to the same recipient.

The amendment is clear that aggrieved persons whose biometric data was obtained,

stored, and disseminated without authorization and consent are limited to one recovery,

regardless of how many times the employer violated the BIPA.

The effective date of the law is August 2, 2024 – the statute says as much. Plaintiff filed

the instant action on April 25, 2024. The issue before the Court, therefore, is whether the August

2 Amendment should be applied retroactively.

Whether a change in law should apply retroactively depends on legislative intent. *Perry*

*v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 39, 423 Ill. Dec. 848,

106 N.E.3d 1016. Traditionally, an amendment to a statute is not applied retroactively unless the

legislature expressly states that intention. *Commonwealth Edison Co. v. Will County Collector*,

196 Ill. 2d 27, 37-38 (2001) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994).

The Supreme Court explained that prospective application is the default rule and that

"[r]equiring clear intent assures that Congress itself has affirmatively considered the potential

unfairness of retroactive application and determined that it is an acceptable price to pay for the

countervailing benefits." *Landgraf*, 511 U.S. at 272-73.

If the legislature states that a statute applies retroactively, "then that expression of

legislative intent must be given effect, absent a constitutional prohibition." *Id.* If not, the court

4

**A35**

looks to Section 4 of the Statute of Statutes, 5 ILCS 70/4. Section 4 provides that procedural

changes to statutes will be applied retroactively, while substantive changes are prospective only.

The Appellate Court recently summarized the analysis of retroactivity in *People v.*

*Carter*, 2022 IL App (1st) 210261, ¶¶ 143-146. The Court acknowledged the procedure set forth

in *Landgraf*, along with the interplay with section 4 of our legislature's Statute on Statutes (5

ILCS 70/4 (2020)) (the "general savings clause"). *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003);

see also *People v. Hunter*, 2017 IL 121306, ¶ 36 ("[O]ur retroactivity jurisprudence, though

flowing from *Landgraf*, was tempered by our construction of section 4 of the Statute on Statutes

***."). Under *Landgraf*, the Court looks to the statute to determine if the legislature "expressly

prescribed" the statute's temporal reach. 511 U.S. at 280. If the legislature has included such

language, the legislature's intent will be given effect. *People ex rel. Alvarez v. Howard*, 2016 IL

120729, ¶ 19. The Court in *Caveney* held that courts will rarely, if ever, need to go beyond step

one of the *Landgraf* analysis because an amendatory act which does not, itself, contain a clear

indication of legislative intent regarding its temporal reach, will be presumed to have been

framed in view of the provisions of section 4 of our Statute on Statutes (5 ILCS 70/4 (West

2000)). *Caveney*, 207 Ill. 2d at 94. Section 4 provides as follows:

> "§ 4. No new law shall be construed to repeal a former law, whethis such former
> law is expressly repealed or not, as to any offense committed against the former
> law, or as to any act done, any penalty, forfeiture or punishment incurred, or any
> right accrued, or claim arising under the former law, or in any way whatever to
> affect any such offense or act so committed or done, or any penalty, forfeiture or
> punishment so incurred, or any right accrued, or claim arising before the new law
> takes effect, save only that the proceedings thiseafter shall conform, so far as
> practicable, to the laws in force at the time of such proceeding."
> 5 ILCS 70/4.

The August 2 Amendment provides its temporal reach – it is effective on August 2, 2024.

The Court need not even get to the second step. The August 2 Amendment should be applied

prospectively only. However, even if the Court is incorrect as to the temporal reach, the courts *presume* the legislature intended the enactment or amendment to operate prospectively, and not retroactively. *Schantz v. Hodge-VonDeBur,* 113 Ill. App. 3d 950, 952-53 (1983).

Additionally, the Court in *Watson v. Legacy Healthcare Fin.Servs., LLC,* 2021 IL App (1st) 210279 ¶¶48-49, noted that the legislative purpose of BIPA is easy to discern because the drafters provided a section entitled "Legislative Findings/Intent" 740 ILCS 14/5. The Court found the goal of the regulation, as stated in that section, was not simply to regulate the collection but also the storage and use of the data. *Id.* The Court considered the stated legislative intent coupled with the statute's plain language and held the Act applied to each subsequent use of the data. *Id.* The Illinois Supreme Court in *Cothron v White Castle Sys.,* affirmed the holding in *Watson* and found the plain language of the statute supported its holding that the Act applies to each subsequent "use" of the biometric data and not just the one-time initial collection.

A review of every amendment to the Act since its enactment reveals the inclusion of the Legislative Findings/Intent section. Save for inconsequential grammatical changes, the language in the Legislative Findings/Intent section remained exactly the same. The Legislature could have easily amended that section to state its intent that the August 2 Amendment was to "correct" or "clarify" the previous Act – it did not. The Legislature could also have included language indicating its intent for the amendment to apply retroactively - it did not. The Legislature chose not to insert any such language. As the Court in *Cothron* stated "[w]e cannot rewrite a statute to create new elements or limitations not included by the legislature." *Cothron,* 2023 IL 128004, ¶39 citing *Zahn v. North American Power & Gas, LLC,* 2016 IL 120526, ¶15.

The amendment provides no language indicating it is retroactive and affirmatively provides it is effective August 2, 2024, a date after plaintiff filed the complaint and after each of the alleged violations occurred.

Even if the Court were to conduct the Section 4 of the Statute on Statutes analysis, the Court would conclude that the August 2, 2024 amendments do not apply retroactively. Section 4 "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." (Internal quotation marks omitted.); *Thomas v. Weathisguard Const. Co.*, 2015 IL App (1st) 142785 (quoting *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003); and citing 5 ILCS 70/4).

A procedural change in law prescribes a mechanism for enforcing rights or involves pleading, evidence, and practice. *Deicke Center-Marklund Children's Home v. Illinois Health Facilities Planning Board*, 389 Ill. App. 3d 300, 303 (2009). By contrast, a substantive amendment "establihes, creates or defines rights." *White v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago*, 2014 IL App (1st) 132315, ¶ 32. In the instant case, application of the amendment retroactively is a substantive change since it defines rights, i.e. the amendment seeks to limit liability where no limit previously existed. As such, it cannot be applied retroactively.

Defendant urges the Court to find that *Dardeen v Heartland v. Heartland Manor, Inc.*, 186 Ill. 2d 291 (1999) controls. In *Dardeen*, the Court found that an amendment striking treble damages brought under the Illinois Nursing Home Act, 210 ILCS 45/3-602, could be applied retroactively to cases where the facts occurred prior to the enactment but the pleadings to recover said damages were filed subsequent to the enactment of the Act. The Court held the amendment

7

**A38**

striking of treble damages only altered the procedures and remedies used to enforce plaintiff's rights and did not interfere with plaintiff's substantive right, thus, the provisions could be applied retroactively.

In *Dardeen*, the amendment to section pertained only to the remedies available to plaintiff once plaintiff has proved his cause of action. Under the amended version of the statute, plaintiff could still recover actual damages and attorney fees upon proof of defendant's negligent violations of the Act, and could also recover common law punitive damages upon proof of willful and wanton misconduct on the part of defendant. *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d at 300. Hence, the only change caused by the amendment to 3-602 of the Nursing Home Act was the procedure by which a plaintiff could recover three types (actual damages, attorney fees and punitive damages) of available damages

Here, the August 2 Amendment leaves unchanged the remedies, $1,000 for a negligent violation and $5,000 for a willful violation. But, the amendment did add substantive provisions that completely altered what actions constitute a violation. To wit, the legislature changed the law from: (a) each dissemination of a biometric scan is violation, to: (b) each and every dissemination of a biometric scan is a single violation. The Court finds that the amendment is a substantive change in the law rather than procedural and thus, cannot be retroactively applied.

To be clear, the BIPA, as amended, unambiguously establishes that violations under the Act constitute a singular recoverable violation upon initial capture, and cases going forward have a clear directive. The Court recognizes its finding that the current law is prospective only may provide a potential claim to recover amounts in excess of $30,000. The Court notes, however, that damages under all versions of BIPA are been discretionary and not mandatory. "A prevailing party *may* recover for each violation: []" 740 ILCS 14/20 (emphasis added by the

8

**A39**

Court). The *Cothron* Court reiterated that the General Assembly chose to make the damages discretionary rather than mandatory and held the Court possesses the discretion to fashion a damage award that fairly compensates an aggrieved person, sufficient to deter future violations, without destroying defendant's business. *Cothron*, 2023 IL 128004, ¶ 42; see also *Bayeg v. Admiral at the Lakem*, 2024 IL App (1st) 231141, ¶43. It will be in the Court's purview to exercise its discretion in awarding damages after the resolution of the case on the merits. Therefore, because the potential recovery may exceed the threshold damages for the Law Division. The motion to transfer is denied.

IT IS HEREBY ORDERED THAT:

1.   Defendant's motion to transfer to 1st Municipal Division is denied. 5008

ENTERED:

> ENTERED
> Judge Mary Colleen Roberts-1937
> OCT 3 0 2024
> IRIS Y. MARTINEZ
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL

*Judge Mary Colleen Roberts*
*1937*

_____

Honorable Mary Colleen Roberts
Judge Presiding

9

A40

# **<u>APPENDIX D</u>**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

YEHUDITH WALLACE,     )
            )  No. 24 L 4560
 *Plaintiff,*      )
            )  Honorable Patrick J. Sherlock
vs.           )
            )  Calendar "Q"
VEE PAK, LLC d/b/a VOYANT BEAUTY,)
            )
 *Defendant.*      )

## ORDER

This matter coming to be heard on the motion of defendant Vee Pak, LLC d/b/a Voyant

Beauty ("defendant") to transfer the complaint of plaintiff Yehudith Wallace ("plaintiff") to First

Municipal District.

## FACTS

Plaintiff's claims arise from alleged violations of the Biometric Information Privacy Act

("BIPA"). Plaintiff alleges she was employed by defendant from October 2018 through August

2022. At her initial hiring, plaintiff was required to enroll in a biometric time clock system using

a scan of her fingerprint or hand to clock in and out of work. Plaintiff alleges her fingerprint or

handprint was scanned no less than 1,500 times during the relevant time period. Plaintiff alleges

defendant disclosed, redisclosed, or otherwise disseminated plaintiff's biometric identifiers to a

third-party without informing plaintiff of the collection, storage, and dissemination of her

information. Plaintiff filed a three-count complaint alleging different violations of the Act

including: Count I: Violation of §15(a): failure to institute, maintain, and adhere to publicly

available retention schedule; Count II: Violation of §15(b): failure to obtain informed written

consent and release before obtaining biometric identifiers or information; and Count III:

**A42**

Violation of §15(d): Disclosure of biometric identifiers and information without obtaining consent.

## Court's Analysis

Defendant moves to transfer the instant matter to First Municipal District arguing the amount in controversy is below the threshold for damages for cases in the Law Division. Under the BIPA as it existed until August 2, 2024, a prevailing party in a BIPA action, in the trial court's discretion, could be awarded as much as $1,000 for each negligent violation of the BIPA or $5,000 for each intentional violation of the BIPA. On August 2, 2024, the law changed. Defendant argues that the current law (i.e. after the August 2, 2024 amendment), even assuming the higher amount for an intentional or reckless violation, defendant can only be potentially liable in liquidated damages for each of plaintiff's three-counts complaint in the sum of $5,000 per count. Thus, defendant claims the amount of damages are well under the threshold amount for cases assigned to the Law Division.

Conversely, plaintiff contends that every unauthorized capture of her biometric data constitutes a separate violation of the statute. Under plaintiff's calculation, assuming intentional violations for illustrative purposes, BIPA would provide a recovery of $5,000 for each incident of capturing, storing, and disseminating of data for each signing in and signing out on the time clock. The complaint does not specify the numbers of claimed incidents. Plaintiff does assert the relevant time-period is from April 25, 2019 through August of 2022. Using basic math, $1,000 multiplied by even a month of signing in and out on the timeclock has the potential to result in amounts above the $30,000 threshold amount for cases assigned to the Law Division.

The Illinois General Assembly adopted the BIPA in 2008 in response to increased concerns relating to commercial use of biometric data. Section 15(a) of the Act requires that

2

**A43**

private entities establish a retention schedule and guidelines for permanently destroying

biometric data when the purpose for collecting it is satisfied, or within three years of the

individual's last interaction with the private entity. Section 15(b) requires the entity, prior to

obtaining a person's biometric identifier or biometric information, to notify the person and

receive a written release. Section 15(d) requires the entity, prior to disseminating a person's

biometric identifier or biometric information, to acquire consent of the subject of the biometric

identifier or biometric information.

When first enacted, §20 addressed the recoverable damages under the BIPA as follows:

Right of action. Any person aggrieved by a violation of this Act shall have a right
of action in a State circuit court or as a supplemental claim in federal district court
against an offending party. A prevailing party may recover for each violation:

(1) against a private entity that negligently violates a provision of this Act,
liquidated damages of $ 1,000 or actual damages, whichever is greater;
(2) against a private entity that intentionally or recklessly violates a provision of
this Act, liquidated damages of $ 5,000 or actual damages, whichever is greater;
(3) reasonable attorneys' fees and costs, including expert witness fees and other
litigation expenses; and
(4) other relief, including an injunction, as the State or federal court may deem
appropriate.

See 740 ILCS 14/20.

On April 11, 2024, the Illinois Senate voted to enact Senate Bill 2979. The Illinois

House passed SB 2979 on May 16, 2024 and Governor J.B. Pritzker signed SB 2979 into law

effective August 2, 2024.

The amendment to §20 left subsection (a) unchanged and added the following language

(the "August 2 Amendment"):

(b) For purposes of subsection (b) of Section 15, a private entity that, in more than
one instance, collects, captures, purchases, receives through trade, or otherwise
obtains the same biometric identifier or biometric information from the same
person using the same method of collection in violation of subsection (b) of
Section 15 has committed a single violation of subsection (b) of Section 15 for

3

**A44**

which the aggrieved person is entitled to, at most, one recovery under this
Section.
(c) For purposes of subsection (d) of Section 15, a private entity that, in more than
one instance, discloses, rediscloses, or otherwise disseminates the same biometric
identifier or biometric information from the same person to the same recipient
using the same method of collection in violation of subsection (d) of Section 15
has committed a single violation of subsection (d) of Section 15 for which the
aggrieved person is entitled to, at most, one recovery under this Section regardless
of the number of times the private entity disclosed, rediscloses, or otherwise
disseminated the same biometric identifier or biometric information of the same
person to the same recipient.

The amendment is clear that aggrieved persons whose biometric data was obtained,

stored, and disseminated without authorization and consent are limited to one recovery,

regardless of how many times the employer violated the BIPA.

The effective date of the law is August 2, 2024 – the statute says as much. Plaintiff filed

the instant action on April 25, 2024. The issue before the Court, therefore, is whether the August

2 Amendment should be applied retroactively.

Whether a change in law should apply retroactively depends on legislative intent. *Perry*

*v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 39, 423 Ill. Dec. 848,

106 N.E.3d 1016. Traditionally, an amendment to a statute is not applied retroactively unless the

legislature expressly states that intention. *Commonwealth Edison Co. v. Will County Collector*,

196 Ill. 2d 27, 37-38 (2001) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994).

The Supreme Court explained that prospective application is the default rule and that

"[r]equiring clear intent assures that Congress itself has affirmatively considered the potential

unfairness of retroactive application and determined that it is an acceptable price to pay for the

countervailing benefits." *Landgraf*, 511 U.S. at 272-73.

If the legislature states that a statute applies retroactively, "then that expression of

legislative intent must be given effect, absent a constitutional prohibition." *Id.* If not, the court

4

**A45**

looks to Section 4 of the Statute of Statutes, 5 ILCS 70/4. Section 4 provides that procedural

changes to statutes will be applied retroactively, while substantive changes are prospective only.

The Appellate Court recently summarized the analysis of retroactivity in *People v.*

*Carter*, 2022 IL App (1st) 210261, ¶¶ 143-146. The Court acknowledged the procedure set forth

in *Landgraf*, along with the interplay with section 4 of our legislature's Statute on Statutes (5

ILCS 70/4 (2020)) (the "general savings clause"). *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003);

see also *People v. Hunter*, 2017 IL 121306, ¶ 36 ("[O]ur retroactivity jurisprudence, though

flowing from *Landgraf*, was tempered by our construction of section 4 of the Statute on Statutes

***."). Under *Landgraf*, the Court looks to the statute to determine if the legislature "expressly

prescribed" the statute's temporal reach. 511 U.S. at 280. If the legislature has included such

language, the legislature's intent will be given effect. *People ex rel. Alvarez v. Howard*, 2016 IL

120729, ¶ 19. The Court in *Caveney* held that courts will rarely, if ever, need to go beyond step

one of the *Landgraf* analysis because an amendatory act which does not, itself, contain a clear

indication of legislative intent regarding its temporal reach, will be presumed to have been

framed in view of the provisions of section 4 of our Statute on Statutes (5 ILCS 70/4 (West

2000)). *Caveney*, 207 Ill. 2d at 94. Section 4 provides as follows:

> "§ 4. No new law shall be construed to repeal a former law, whether such former
> law is expressly repealed or not, as to any offense committed against the former
> law, or as to any act done, any penalty, forfeiture or punishment incurred, or any
> right accrued, or claim arising under the former law, or in any way whatever to
> affect any such offense or act so committed or done, or any penalty, forfeiture or
> punishment so incurred, or any right accrued, or claim arising before the new law
> takes effect, save only that the proceedings thereafter shall conform, so far as
> practicable, to the laws in force at the time of such proceeding."
> 5 ILCS 70/4.

The August 2 Amendment provides its temporal reach – it is effective on August 2, 2024.

The Court need not even get to the second step. The August 2 Amendment should be applied

5

**A46**

prospectively only. However, even if the Court is incorrect as to the temporal reach, the courts *presume* the legislature intended the enactment or amendment to operate prospectively, and not retroactively. *Schantz v. Hodge-VonDeBur*, 113 Ill. App. 3d 950, 952-53 (1983).

Additionally, the Court in *Watson v. Legacy Healthcare Fin.Servs., LLC*, 2021 IL App (1st) 210279 ¶¶48-49, noted that the legislative purpose of BIPA is easy to discern because the drafters provided a section entitled "Legislative Findings/Intent" 740 ILCS 14/5. The Court found the goal of the regulation, as stated in that section, was not simply to regulate the collection but also the storage and use of the data. *Id.* The Court considered the stated legislative intent coupled with the statute's plain language and held the Act applied to <u>each</u> subsequent use of the data. *Id.* The Illinois Supreme Court in *Cothron v White Castle Sys.*, affirmed the holding in *Watson* and found the plain language of the statute supported its holding that the Act applies to each subsequent "use" of the biometric data and not just the one-time initial collection.

A review of every amendment to the Act since its enactment reveals the inclusion of the Legislative Findings/Intent section. Save for inconsequential grammatical changes, the language in the Legislative Findings/Intent section remained exactly the same. The Legislature could have easily amended that section to state its intent that the August 2 Amendment was to "correct" or "clarify" the previous Act – it did not. The Legislature could also have included language indicating its intent for the amendment to apply retroactively - it did not. The Legislature chose not to insert any such language. As the Court in *Cothron* stated "[w]e cannot rewrite a statute to create new elements or limitations not included by the legislature." *Cothron*, 2023 IL 128004, ¶39 citing *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶15.

6

**A47**

The amendment provides no language indicating it is retroactive and affirmatively provides it is effective August 2, 2024, a date after plaintiff filed the complaint and after each of the alleged violations occurred.

Even if the Court were to conduct the Section 4 of the Statute on Statutes analysis, the Court would conclude that the August 2, 2024 amendments do not apply retroactively. Section 4 "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." (Internal quotation marks omitted.); *Thomas v. Weatherguard Const. Co.*, 2015 IL App (1st) 142785 (quoting *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003); and citing 5 ILCS 70/4).

A procedural change in law prescribes a mechanism for enforcing rights or involves pleading, evidence, and practice. *Deicke Center-Marklund Children's Home v. Illinois Health Facilities Planning Board*, 389 Ill. App. 3d 300, 303 (2009). By contrast, a substantive amendment "establishes, creates or defines rights." *White v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago*, 2014 IL App (1st) 132315, ¶ 32. In the instant case, application of the amendment retroactively is a substantive change since it defines rights, i.e. the amendment seeks to limit liability where no limit previously existed. As such, it cannot be applied retroactively.

Defendant urges the Court to find that *Dardeen v Heartland v. Heartland Manor, Inc.*, 186 Ill. 2d 291 (1999) controls. In *Dardeen*, the Court found that an amendment striking treble damages brought under the Illinois Nursing Home Act, 210 ILCS 45/3-602, could be applied retroactively to cases where the facts occurred prior to the enactment but the pleadings to recover said damages were filed subsequent to the enactment of the Act. The Court held the amendment

7

**A48**

striking of treble damages only altered the procedures and remedies used to enforce plaintiff's rights and did not interfere with plaintiff's substantive right, thus, the provisions could be applied retroactively.

In *Dardeen*, the amendment to section pertained only to the remedies available to plaintiff once plaintiff has proved her cause of action. Under the amended version of the statute, plaintiff could still recover actual damages and attorney fees upon proof of defendant's negligent violations of the Act, and could also recover common law punitive damages upon proof of willful and wanton misconduct on the part of defendant. *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d at 300. Hence, the only change caused by the amendment to 3-602 of the Nursing Home Act was the procedure by which a plaintiff could recover three types (actual damages, attorney fees and punitive damages) of available damages

Here, the August 2 Amendment leaves unchanged the remedies, $1,000 for a negligent violation and $5,000 for a willful violation. But, the amendment did add substantive provisions that completely altered what actions constitute a violation. To wit, the legislature changed the law from: (a) each dissemination of a biometric scan is violation, to: (b) each and every dissemination of a biometric scan is a single violation. The Court finds that the amendment is a substantive change in the law rather than procedural and thus, cannot be retroactively applied.

To be clear, the BIPA, as amended, unambiguously establishes that violations under the Act constitute a singular recoverable violation upon initial capture, and cases going forward have a clear directive. The Court recognizes its finding that the current law is prospective only may provide a potential claim to recover amounts in excess of $30,000. The Court notes, however, that damages under all versions of BIPA are been discretionary and not mandatory. "A prevailing party *may* recover for each violation: []" 740 ILCS 14/20 (emphasis added by the

8

**A49**