# United States Court of Appeals
# for the Seventh Circuit

REGINALD CLAY,
*Plaintiff-Appellee,*

v.

UNION PACIFIC RAILROAD COMPANY,
*Defendant-Appellant.*

BRANDON WILLIS,
*Plaintiff-Appellee,*

v.

UNIVERSAL INTERMODAL SERVICES, INC., ET AL.,
*Defendants-Appellants.*

JOHN GREGG,
*Plaintiff-Appellee,*

v.

CENTRAL TRANSPORT LLC,
*Defendant-Appellant.*

On Appeals from the United States District Court
for the Northern District of Illinois
Nos. 1:24-cv-4194 (Hon. Georgia N. Alexakis),
1:21-cv-1716 (Hon. Elaine E. Bucklo), and 1:24-cv-1925 (Hon. Elaine E. Bucklo)

## CONSOLIDATED REPLY BRIEF FOR DEFENDANTS-APPELLANTS

Michael Rubin
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1743

Gary Feinerman
Sean M. Berkowitz
Johanna M. Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

December 10, 2025

*Counsel for Defendants-Appellants Union Pacific Railroad Company*
*(additional counsel on inside cover)*

Harry J. Secaras
Jennifer H. Kay
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
Suite 4300
155 N. Wacker Drive
Chicago, IL 60606
(312) 558-1220
harry.secaras@ogletree.com

Melissa M. Pesce
[COR NTC Retained]
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
Suite 650
7700 Bonhomme Avenue
St. Louis, MO 63105
(314) 898-4079

*Counsel for Defendants-Appellants
Universal Intermodal Services, Inc.,
Universal Logistics Holdings, Inc.,
HR-1 LLC, Universal Management
Services, Inc., and Data System
Services LLC*

Jason A. Selvey
JACKSON LEWIS P.C.
Suite 2500
150 N. Michigan Avenue
Chicago, IL 60601
(312) 787-4949
jason.selvey@jacksonlewis.com

*Counsel for Defendant-Appellant
Central Transport LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ........................................................................................ 1

ARGUMENT ................................................................................................ 4

I.    THE BIPA AMENDMENT APPLIES RETROACTIVELY UNDER
SECTION 4 OF THE ILLINOIS STATUTE ON STATUTES .......................... 4

    A.    The General Assembly Did Not Expressly State The BIPA
Amendment's Temporal Reach ................................................. 5

    B.    Because It Effects Only A Remedial Change, The BIPA
Amendment Applies Retroactively .......................................... 7

    C.    Plaintiffs' Accrual Argument Is Wrong ................................... 13

    D.    Plaintiffs' Unanimity Argument Is Wrong ............................. 19

II.    ALTERNATIVELY, THE BIPA AMENDMENT ONLY CLARIFIED
BIPA AND THEREFORE APPLIES RETROACTIVELY ON THAT
GROUND ...................................................................................... 20

III.    PLAINTIFFS' CONSTITUTIONAL ARGUMENTS ARE MERITLESS ........ 24

CONCLUSION ........................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegis Realty Investors v. Novak*,
860 N.E.2d 246 (Ill. 2006) ............................................................ 6, 7

*Barron v. Ford Motor Co. of Canada Ltd.*,
965 F.2d 195 (7th Cir. 1992) ............................................................ 13

*Caveney v. Bower*,
797 N.E.2d 596 (Ill. 2003) ................................................ 7, 11, 16, 17

*Commonwealth Edison Co. v. Will County Collector*,
749 N.E.2d 964 (Ill. 2001) ............................................ 11, 16, 17, 25

*Cothron v. White Castle System, Inc.*,
216 N.E.3d 918 (Ill. 2023) ......................................................*passim*

*Dardeen v. Heartland Manor, Inc.*,
710 N.E.2d 827 (Ill. 1999) ......................................................*passim*

*Fields v. City of Chicago*,
981 F.3d 534 (7th Cir. 2020) ............................................................ 19

*Foster Wheeler Energy Corp. v. LSP Equipment, LLC*,
805 N.E.2d 688 (Ill. App. 2004) ........................................................ 7

*Frank v. Walker*,
819 F.3d 384 (7th Cir. 2016) ............................................................ 19

*Hannemann v. Southern Door County School District*,
673 F.3d 746 (7th Cir. 2012) ............................................................ 18

*Harraz v. Snyder*,
669 N.E.2d 911 (Ill. App. 1996) ........................................................ 16

*K. Miller Construction Co. v. McGinnis*,
938 N.E.2d 471 (Ill. 2010) .......................................... 3, 21, 23, 24

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994) ................................................................ 17, 18

*Middleton v. City of Chicago*,
578 F.3d 655 (7th Cir. 2009) ............................................................ 21

*Milligan v. Board of Trustees of Southern Illinois University*,
    686 F.3d 378 (7th Cir. 2012) ................................................................... 18

*Morel v. Coronet Insurance Co.*,
    509 N.E.2d 996 (Ill. 1987) ...................................................................... 6

*People v. Glisson*,
    782 N.E.2d 251 (Ill. 2002) ............................................................*passim*

*People ex rel. Madigan v. J.T. Einoder, Inc.*,
    28 N.E.3d 758 (Ill. 2015) ..............................................................*passim*

*Perry v. Department of Finance & Professional Regulation*,
    106 N.E.3d 1016 (Ill. 2018) ................................................. 6, 7, 16, 26

*Thomas v. Guardsmark, LLC*,
    487 F.3d 531 (7th Cir. 2007) .................................................... 1, 12, 13

## STATUTES

5 ILCS 70/4 ............................................................................................. 2, 15

210 ILCS 45/3-602 (West 1994) .......................................................... 10

740 ILCS 14/15(b) .............................................................................. 9, 13

740 ILCS 14/20(a) ...................................................................................... 14

740 ILCS 14/20(b) ...........................................................................*passim*

740 ILCS 14/20(c) ...................................................................................... 9

Ill. Pub. Act 103-0769 (2024) ............................................................... 5

Ill. Pub. Act 89-197 (eff. July 21, 1995) ............................................ 10

**INTRODUCTION**

Plaintiffs do not dispute that the BIPA amendment has no express provision addressing retroactivity. Nor do Plaintiffs dispute that the amendment alters only BIPA's "[r]ight of action," addressing the "recovery" that an "aggrieved person is entitled to" under the Act. 740 ILCS 14/20(b). And Plaintiffs do not dispute that the amendment leaves unchanged what conduct outside the courtroom violates BIPA's substantive provisions. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 536-37 (7th Cir. 2007). These inevitable concessions resolve this appeal. By affecting only the damages available to plaintiffs for multiple violations of the Act's substantive provisions, the BIPA amendment effected a remedial change. Under settled principles of Illinois law, such changes apply retroactively.

Plaintiffs' arguments in response do not persuade otherwise. Citing a few isolated remarks during floor debates over the BIPA amendment, Plaintiffs assert that the General Assembly "clearly" provided that the amendment does not apply retroactively. Consolidated Brief of Plaintiffs-Appellees ("RB") 19. That assertion is mistaken. Floor remarks cannot provide an *express* indication of temporal reach under Illinois law. Instead, when an amendment does not solely clarify a prior enactment and has no express provision governing retroactivity, settled precedent holds that the Illinois Statute on Statutes provides the answer—substantive changes apply only prospectively, while procedural or remedial changes apply retroactively.

Turning to the Statute on Statutes, Plaintiffs fail to show that the BIPA amendment effected a substantive, rather than a procedural or remedial, change. Plaintiffs admit that procedural provisions concern the "rules that prescribe the steps

1

for having a right or duty judicially enforced," RB 24 (citation omitted), yet they ignore that the amendment changed only BIPA's "right of action" by limiting aggrieved persons to one "recovery" for multiple substantive violations of the Act, 740 ILCS 14/20(b). Plaintiffs do contend that the amendment effected a substantive change because it "disappear[s]" violations of the Act after the first. RB 26. That is incorrect. The amendment did not change the conduct in which a private entity may or may not engage out in the world, and Plaintiffs do not contend otherwise. Instead, the amendment changed only how many violations a defendant—inside the courtroom—will be deemed to have committed, solely for the purpose of assessing damages, if certain conditions are met. That is a remedial and procedural change, not a substantive one.

Nor can Plaintiffs prevail under their theory that they have "accrued claims" under BIPA. RB 22-23. The BIPA amendment does not eliminate any claims, and instead treats multiple violations of the Act as a single violation only for purposes of assessing damages. In any event, even assuming Plaintiffs have "accrued" claims under BIPA, Section 4 of the Illinois Statute on Statutes expressly provides that "proceedings" following a statutory amendment shall "conform … to the laws in force at the time of such proceeding." 5 ILCS 70/4. In other words, procedural and remedial changes apply retroactively to cases pending at the time of statutory changes, whether or not Plaintiffs have any accrued claims. Plaintiffs, in any event, failed to present this accrual argument before the district courts in the *Clay* and

*Gregg* cases, and have thereby forfeited the argument as to Defendants Union Pacific and Central Transport.

A second and independent reason justifies reversal of the district courts' decisions: Even if not a procedural or remedial change for purposes of Section 4 of the Statute on Statutes, the BIPA amendment only clarifies the meaning of the Act and therefore applies to cases pending as of the time of its enactment. *See K. Miller Constr. Co. v. McGinnis*, 938 N.E.2d 471, 481 (Ill. 2010). Plaintiffs cannot dispute that the General Assembly amended BIPA only after the Illinois Supreme Court expressly called on the legislature to "*make clear* its intent regarding the assessment of damages under the Act." *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929 (Ill. 2023) (emphasis added). The General Assembly did just that—"make clear," or clarify, "its intent regarding the assessment of damages"—in passing the BIPA amendment.

Plaintiffs wrongly suggest that separation-of-powers concerns or the constitutional avoidance canon precludes a finding of retroactivity. But it does not offend the separation of powers under Illinois law to recognize that the General Assembly has altered the remedies for BIPA violations and that such changes apply retroactively to pending cases. The contrary conclusion—that the Illinois Supreme Court's retroactivity jurisprudence, which holds that procedural or remedial changes apply retroactively to pending cases, violates the separation of powers—would no doubt come as a surprise to that Court. As for constitutional avoidance, Plaintiffs rely on the outdated "vested rights" theory of retroactivity to assert that eliminating

their right to recovery would offend constitutional principles.  Illinois jurisprudence has squarely rejected that theory, and Plaintiffs cite no case precluding retroactive application on constitutional grounds where, as here, the General Assembly has effected only a remedial change or clarification to an existing statute.

This Court should hold that the BIPA amendment applies retroactively— whether under ordinary retroactivity principles established by Section 4 of the Statute on Statutes, or because the amendment was a clarification of BIPA as originally enacted—and reverse the district court's decisions.

## ARGUMENT

### I.  THE BIPA AMENDMENT APPLIES RETROACTIVELY UNDER SECTION 4 OF THE ILLINOIS STATUTE ON STATUTES

Plaintiffs argue that the BIPA amendment does not apply retroactively for "three independent reasons."  RB 17-18.  All lack merit.

First, Plaintiffs assert that the "legislature expressly declined to make the amendment retroactive."  RB 18; *see also* RB 18-22.  That argument wrongly assumes that the *absence* of an express temporality provision renders an amendment prospective only.  Instead, as settled Illinois precedent teaches, when an amendment has no express temporality provision, retroactivity turns on whether the amendment effects a remedial or procedural change, on the one hand, or a substantive change, on the other.

Second, Plaintiffs argue that the amendment is substantive because it affects whether a private entity has committed a "violation" of BIPA.  RB 25-28.  That is wrong: The amendment does not alter BIPA's substantive provisions.  It instead

affects only the remedy to which a plaintiff is entitled for underlying violations of the Act's substantive provisions. Under this Court's cases and Illinois precedent, such changes are remedial and apply retroactively.

Third, Plaintiffs wrongly contend that they have "accrued claims" under BIPA that cannot be eliminated. RB 28-34. That argument echoes the "vested rights" approach abandoned by the Illinois Supreme Court, and it misunderstands the nature of the amendment.

## A. The General Assembly Did Not Expressly State The BIPA Amendment's Temporal Reach

As Plaintiffs do not dispute, the BIPA amendment's text makes no mention of the amendment's temporal reach. *See* Ill. Pub. Act 103-0769 (2024). Under settled Illinois law, when a statutory amendment has "no express provision regarding its temporal reach," the retroactivity question is governed by Section 4 of the Illinois Statute on Statutes. *People ex rel. Madigan v. J.T. Einoder, Inc.*, 28 N.E.3d 758, 765 (Ill. 2015).

Challenging this straightforward conclusion, Plaintiffs point to floor statements by legislators concerning the amendment's temporal reach. RB 20-22. According to Plaintiffs, those floor statements show that "the legislature clearly indicated the temporal reach of Amended BIPA by not including express language that it is to be applied retroactively, as confirmed in its legislative history." RB 19. Among other isolated floor remarks, Plaintiffs highlight one stating "[w]e are not including a retroactivity provision." RB 20 (citation omitted).

These floor statements do not provide, as Plaintiffs suggest, "a clear statement of legislative intent." RB 21-22. For starters, none of the statements is or could be an "express *provision*" concerning the temporal reach of the BIPA amendment. *J.T. Einoder*, 28 N.E.3d at 765 (emphasis added); *see also Allegis Realty Invs. v. Novak*, 860 N.E.2d 246, 253 (Ill. 2006) ("[I]f the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect … ."). Plaintiffs fail to cite a single Illinois case holding the General Assembly's intent to have been clearly expressed where, as here, the statute lacked any provision regarding its temporal reach. That is for good reason: The Illinois Supreme Court looks to "the text of the amended provision, itself" to see whether it "clearly expresses the legislature's intent that the amendment be given either prospective or retrospective application." *J.T. Einoder*, 28 N.E.3d at 766.

Even if no express provision were required to establish an amendment's temporal reach, Plaintiffs provide no support for the notion that isolated remarks from a few legislators are enough to find that the "*legislature* has … *expressly indicated its intent* as to [the] temporal reach" of a statutory amendment. *Perry v. Dep't of Fin. & Pro. Regul.*, 106 N.E.3d 1016, 1026 (Ill. 2018) (emphasis added). "'Legislative intent' speaks to the will of the legislature as a collective body, rather than the will of individual legislators." *Morel v. Coronet Ins. Co.*, 509 N.E.2d 996, 999 (Ill. 1987). In any event, the legislative history as to retroactivity is ambiguous at best. Individual legislators correctly recognized that the General Assembly was "not including a retroactivity provision" in the BIPA amendment, which explains why

Representative Williams and Senator Cunningham said as much. RB 20 (citation omitted). But all that means is that Section 4 of the Statute on Statutes governs the retroactivity question—and not, as Plaintiffs seem to think, that the amendment applies prospectively only.

Plaintiffs correctly observe that "[s]tatutes that merely provide that they are to 'take[] effect upon becoming law[]' … do not contain a clear expression of legislative intent that they are to be applied retroactively." *Foster Wheeler Energy Corp. v. LSP Equip., LLC*, 805 N.E.2d 688, 694 (Ill. App. 2004) (first alteration in original) (citation omitted). But, again, that does not mean that such statutes apply prospectively only. If Plaintiffs were right that the *absence* of an express provision implies that a statutory change apply only prospectively, it would negate Section 4 of the Statute on Statutes. That is not Illinois law, as case after case makes clear. *See Perry*, 106 N.E.3d at 1026; *J.T. Einoder*, 28 N.E.3d at 765; *Allegis*, 860 N.E.2d at 253.

In sum, because the BIPA amendment "does *not* contain a clear indication of legislative intent, then '[i]t is to be assumed the amendatory act was framed in view of the provisions of … section 4'" of the Illinois Statute on Statutes. *Caveney v. Bower*, 797 N.E.2d 596, 603 (Ill. 2003) (first alteration in original) (citation omitted).

## B. Because It Effects Only A Remedial Change, The BIPA Amendment Applies Retroactively

Under Section 4 of the Illinois Statute on Statutes, substantive changes to statutes apply prospectively, while "amendments affecting remedies are procedural" and apply retroactively. *J.T. Einoder*, 28 N.E.3d at 766; *Perry*, 106 N.E.3d at 1027; *see also People v. Glisson*, 782 N.E.2d 251, 257 (Ill. 2002). The BIPA amendment

effects a remedial change: It alters only the degree to which an "aggrieved person" can "recover[]" under Section 20, 740 ILCS 14/20(b), the Act's remedy provision. Because the amendment leaves unchanged the "elements" of what constitutes a substantive "violation" of BIPA, and because it "limit[ed] recovery for violations of the Act" in a manner that affects only the "remedies used to enforce a plaintiff's rights," it applies retroactively. *Dardeen v. Heartland Manor, Inc.*, 710 N.E.2d 827, 829, 831-32 (Ill. 1999).

Plaintiffs argue that the BIPA amendment is substantive because it "redefines what constitutes a violation." RB 31. As Plaintiffs see it, "[a]mended BIPA removes liability for repeated scans that were unquestionably actionable when they occurred by collapsing multiple violations into a single claim." RB 27. They reason that because "repeated violations after the first" do not give rise to any "right to sue," the amendment must be substantive. RB 26.

This argument ignores the key distinction between substantive changes, on the one hand, and procedural and remedial changes, on the other, and glosses over the BIPA amendment's practical import. A violation of BIPA occurs when, for example, private entities "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" without first (1) "inform[ing] the subject … that a biometric identifier or biometric information is being collected or stored"; (2) "inform[ing] the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used"; and (3) "receiv[ing] a written release executed

by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b). That is conduct BIPA prohibits—meaning it is conduct that the Act regulates outside the courtroom, in the world.

The BIPA amendment changes nothing about that. Section 15, which sets forth the Act's substantive prohibitions, is exactly the same after the amendment as before. As a result, what a private entity could not do outside the courtroom before the amendment, the private entity cannot do today. As the Illinois Supreme Court has expressed the point, the amendment does not affect the "scope" of the prohibited conduct, *Glisson*, 782 N.E.2d at 256, but instead leaves the "elements" of a "violation" untouched, *Dardeen*, 710 N.E.2d at 832. What the amendment *does* change is what an "aggrieved person" may "recover[]" under Section 20 for violations of Section 15's substantive provisions. 740 ILCS 14/20(b). Specifically, the amendment changed BIPA's "[r]ight of action" to provide that where a private entity "obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15," that person "is entitled to, at most, one recovery under this Section." *Id.*[1]

The amendment's context shows that the General Assembly's use of the word "violation" in Section 20(b) does not undermine the notion that the amendment effected only a remedial change. In *Cothron*, the Illinois Supreme Court concluded that the text of "[S]ections 15(b) and 15(d) demonstrates that such violations occur

---

[1] The amendment likewise limits an aggrieved person's recovery for substantive violations of Section 15(d), and does not change anything about what conduct constitutes a substantive violation of that Section. *See* 740 ILCS 14/20(c).

with every scan or transmission." 216 N.E.3d at 926. Given its concern over the astronomical damages awards potentially made possible by that substantive regime, the Court "respectfully suggest[ed] that the legislature review these policy concerns and make clear its intent regarding *the assessment of damages* under the Act." *Id.* at 929 (emphasis added). That the General Assembly heeded that call and amended Section 20's damages regime—using the same language ("violation") as the Illinois Supreme Court used in *Cothron*—confirms that the statutory change was remedial, not substantive. The General Assembly fixed the very problem of potentially "'astronomical'" damages, *id.* at 928, that *Cothron* had urged it to fix.

*Dardeen* illustrates the point. In that case, the administrator of a nursing home resident's estate filed a claim against the home for negligently causing the resident's death. 710 N.E.2d at 829. As of the date the resident died, the Illinois Nursing Home Care Act "allowed awards of treble damages for a nursing home's negligent failure to provide adequate medical care." *Id.*; *see* 210 ILCS 45/3-602 (West 1994). The General Assembly then enacted Public Act 89-197 (eff. July 21, 1995), which "repealed the treble damages provision" but included no "provisions addressing whether the amendment's application was to be prospective or retroactive." *Dardeen*, 710 N.E.2d at 828-29. The Illinois Supreme Court held that the amendment, which it described as "limiting recovery for violations of the Act," applied retroactively. *Id.* In the Court's view, "the amendment to section 3-602 of the Act repealing the treble damages provision is related solely to a remedy." *Id.* at 832. And because the amendment was "procedural in nature," it "properly applied to an existing

controversy." *Id.* In other words, by altering only "the remedies available for plaintiff's cause of action," the amendment applied retroactively. *Id.*

Plaintiffs contend that *Dardeen* "pre-date[d] recent Illinois Supreme Court cases that have moved away from the 'vested rights' approach" to assessing retroactivity. RB 31. True enough, in assessing the retroactivity question there, *Dardeen* analyzed and rejected the argument that the plaintiff had a "vested right to a particular method of procedure or remedy such as the treble damages authorized under the former section 3-602 of the Act." 710 N.E.2d at 832. And the Illinois Supreme Court later jettisoned the "vested rights" approach to assessing retroactivity in *Commonwealth Edison Co. v. Will County Collector*, 749 N.E.2d 964, 969-70 (Ill. 2001). But as post-*Commonwealth Edison* decisions make clear, *Dardeen*'s bottom line holding—that statutory amendments altering remedies apply retroactively— remains good law. *See Glisson*, 782 N.E.2d at 256-57 (holding that "courts can apply retroactively statutory changes to procedural or remedial provisions"). And "amendments affecting remedies are procedural," so long as they do not create "an entirely new type of liability." *J.T. Einoder*, 28 N.E.3d at 766; *cf. Caveny*, 797 N.E.2d at 604 ("Clearly, the … amendment … is a substantive change in the law, as it establishes an income tax credit for S corporation shareholders that previously did not exist.").

Nor does the BIPA amendment's reference to "violation[s]" make *Dardeen* "fundamentally different," as Plaintiffs contend. RB 31. As Plaintiffs see it, by supposedly "redefin[ing] what constitutes a violation," the BIPA amendment not only

impacted remedies but also effected a substantive change. *Id.* That is wrong. As shown above, the BIPA amendment did not alter the "elements of a violation under the Act." *Dardeen*, 710 N.E.2d at 832. It changed only Section 20, the Act's "[r]ight of action," to provide that a plaintiff "is entitled to, at most, one recovery under this Section" when a defendant collects "the same biometric identifier or biometric information from the same person using the same method of collection." 740 ILCS 14/20(b). That formulation does not make it any less a violation of BIPA to offend Section 15(b), the substantive provision of the Act that prohibits private entities from collecting biometric information. It merely does not permit a plaintiff to recover damages for more than one of those violations. *Dardeen*'s holding—that statutory amendments "limiting recovery for violations of" of an Act apply retroactively, 710 N.E.2d at 828-29—squarely applies to the BIPA amendment. *See also J.T. Einoder*, 28 N.E.3d at 766 ("amendments affecting remedies are procedural" and thus apply retroactively); *Glisson*, 782 N.E.2d at 256-57 (substantive changes affect the "scope" of the prohibited "conduct" and apply prospectively only).

Plaintiffs also fail to grapple with this Court's decision in *Thomas v. Guardsmark*, 487 F.3d 531 (7th Cir. 2007). They cite that decision once, and only for the proposition that "substantive changes cannot reach prior conduct because Section 4 itself bars it." RB 30. Plaintiffs ignore the key insight of *Thomas*—statutory changes affecting behavior "*outside* of the courtroom" are substantive, while changes affecting only what happens *inside* the courtroom are procedural and apply retroactively under Illinois law. 487 F.3d at 537 (emphasis added); *see* Opening Br.

of Defendant-Appellant Union Pacific Railroad Company ("UP OB") 10-11, 15-16, 18, 20, 23, 25 (No. 25-2185). As *Thomas* put it, "[s]ubstantive rules ... are concerned with directing behavior outside of the courtroom" and "tell individuals, organizations and governments to do certain things or abstain from certain conduct on pain of some sanction." 487 F.3d at 537; *see also Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 199 (7th Cir. 1992) ("[A] substantive rule is concerned with the channeling of behavior outside the courtroom ... .").

The BIPA amendment does no such thing. It leaves entirely untouched BIPA's substantive provisions, set forth in Section 15, which direct private entities "to do certain things or abstain from certain conduct." *Thomas*, 487 F.3d at 537; *see* 740 ILCS 14/15(b). Under settled precedent, that makes the amendment a remedial change that applies retroactively to pending cases.[2]

## C.  Plaintiffs' Accrual Argument Is Wrong

Plaintiffs repeatedly contend that they have "accrued claims" that the BIPA amendment cannot extinguish. RB 28-29, 32-34. As Plaintiffs see it, before the amendment, each violation of Section 15 gave rise to a new claim, and "[t]hose claims existed the moment each violation occurred." RB 29. The amendment, according to Plaintiffs, "collapses all repeated violations into a single claim, extinguishing the

---

[2] Plaintiffs argue that the "Illinois Supreme Court would rule against retroactive application" of the BIPA amendment. RB 47-48 (capitalization normalized). Because precedent from that Court consistently holds that remedial statutory changes apply retroactively, *supra* at 4-8, that argument is incorrect.

accrued causes of action that previously arose for every additional unlawful scan or transmission after the first." *Id.*

That account is wrong. The BIPA amendment does not "extinguish[]" any causes of action. The amended "right of action" section of BIPA (Section 20) still provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action." 740 ILCS 14/20(a). For the purpose of assessing the amount of damages, however, and under certain defined conditions, the Act allows plaintiffs to recover for only the first of multiple violations.

Here, for example, is the full text of Section 20(b), the remedy provision for violations of Section 15(b):

> For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section.

740 ILCS 14/20(b). Thus, as was the case before the amendment, *each* collection of the same information from the same person in the same manner still constitutes a "violation of subsection (b) of Section 15." *Id.* Were it otherwise, the collection of "the same biometric identifier or biometric information from the same person using the same method of collection" would not be "in violation of subsection (b) of Section 15." *Id.* What the remedy provision does is limit the plaintiff "to, at most, one recovery" for those multiple violations. *Id.* In other words, when a private entity's collection of biometric information meets certain criteria, the amendment still provides that every

instance of that conduct "violat[es]" the Act.  It is only for purposes of calculating damages—that is, for assessing a remedy—that the amendment limits an aggrieved person's right to recover.[3]

Even if the amendment somehow eliminated accrued causes of action, that would have no impact on the retroactivity analysis.  Section 4 of the Statute on Statutes provides that "[n]o new law shall be construed to repeal a former law … as to … any right accrued, or claim arising under the former law … *save only that the proceedings thereafter shall conform … to the laws in force at the time of such proceeding*."  5 ILCS 70/4 (emphasis added).  Plaintiffs describe the first portion of this passage as "categorical" insofar as a "new law cannot repeal a former law in a way 'to affect … any right accrued' or a 'claim arising under the former law.'"  RB 22 (alteration in original) (citation omitted).

That truncated reading of the passage's first portion does not account for the savings clause that follows, which specifically allows procedural and remedial changes to apply to pending cases.  As the Illinois Supreme Court has explained, "[t]he italicized portion, beginning with 'save only,' allows proceedings to conform to the present law; this allows retroactive application of procedural changes to statutes." *Glisson*, 782 N.E.2d at 256.  That is why the Illinois Supreme Court has read Section 4, including its savings clause, to "represent[] a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in

---

[3]  As noted above, *supra* at 9 n.1, the same holds for Section 20(c), which addresses the damages available for multiple violations of Section 15(d).

nature may be applied retroactively, while those that are substantive may not."
*Caveney*, 797 N.E.2d at 602.

Because Illinois law determines retroactivity by looking to whether the statutory amendment is procedural or remedial, on the one hand, or substantive, on the other, Plaintiffs' argument that they have "accrued claims" is beside the point. Under the regime that pre-dated Illinois' modern retroactivity analysis, courts asked whether parties had a "vested right" in an "accrued cause of action." *See, e.g., Harraz v. Snyder*, 669 N.E.2d 911, 917 (Ill. App. 1996) (holding that a "plaintiff's accrued cause of action became a vested right"). But the Illinois Supreme Court abandoned that lens, *see Commonwealth Edison*, 749 N.E.2d at 972, opting instead for a retroactivity framework that turns on whether an amendment is procedural or remedial, on the one hand, or substantive, on the other. *See Perry*, 106 N.E.3d at 1026-27; *Glisson*, 782 N.E.2d at 257. Section 4 of the Illinois Statue on Statutes renders statutory changes affecting procedure and remedies retroactive even if a plaintiff has accrued claims. Plaintiffs cite no case suggesting otherwise, and in pressing their position, they disregard what the Illinois Supreme Court has explained that Illinois law means.

Plaintiffs' invocation of *J.T. Einoder* does not help their cause. RB 27. The Illinois Supreme Court there held that a statutory change at issue was not "simply procedural" because it "create[d] an entirely new type of liability—a mandatory injunction—which was not available under the prior statute." 28 N.E.3d at 766-67. As a result, "[a]pplying [that amendment] retroactively here would impose a *new*

*liability* on defendants' past conduct." *Id.* at 767 (emphasis added). That is not the case here because the BIPA amendment *eliminates* a plaintiff's ability to recover damages for repeated violations of BIPA that occur in the same manner as an initial violation. It does not impose any new obligations for conduct that has already occurred.

Plaintiffs protest that "[w]hether a statute adds new liability or eliminates existing liability, the effect is the same" because the amendment "changes the legal consequences of past conduct." RB 27. This argument appears to invoke a framework for assessing retroactivity that does not apply under Illinois law. In *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the Supreme Court articulated a two-part test for assessing retroactivity. The first part considers whether the legislature has "expressly prescribed the … proper reach" of a new statute or statutory change. *Id.* If not, at step two a court considers whether the change "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* The Illinois Supreme Court has adopted *Landgraf*. *See Commonwealth Edison*, 749 N.E.2d at 970-71. But, as explained in Union Pacific's opening brief, *see* UP OB 12-13, because of Section 4 of the Statute on Statutes, courts in Illinois never need to address *Landgraf*'s step two—assessing whether rights would be "impair[ed]" or liability "increase[d] for past conduct," 511 U.S. at 280—because Section 4 clearly expresses the General Assembly's command that procedural and remedial changes apply retroactively, while substantive changes do not, *see Caveney*, 797 N.E.2d at 601-02. As a result,

Plaintiffs' emphasis on eliminating liability for past conduct appears to invoke a retroactivity analysis that does not apply under Illinois law.

*Landgraf* does not help Plaintiffs anyway.  Even if step two of *Landgraf* were the right way to think about retroactivity, that case holds that a statutory change applies prospectively when a change would "*increase* a party's liability for past conduct." 511 U.S. at 280 (emphasis added).  The Court did not conclude, as Plaintiffs now argue, that *any* change in liability must apply prospectively only.  If anything, *Landgraf* conveys that statutory changes *decreasing* liability for past conduct may apply to cases pending at the time of their enactment.  Illinois law, in any event, already holds as much.  In *Dardeen*, the Illinois Supreme Court applied to pending cases statutory changes that eliminated treble damages for completed conduct.  *See supra* at 10-11.  Plaintiffs' position cannot be squared with Illinois precedent.

Finally, Plaintiffs' accrual argument is forfeited as to Union Pacific and Central Transport.  Plaintiffs Clay and Gregg nowhere argued in their district court briefing that they have "accrued claims" that cannot be extinguished by the BIPA amendment.  And this Circuit's caselaw is clear that "the forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument"—here, that because Plaintiffs have "accrued" multiple "claims" under the pre-amendment version of BIPA, they are entitled to recover damages for each of those claims even after the BIPA amendment's effective date.  *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *see also Hannemann v. S. Door Cnty. Sch. Dist.*,

673 F.3d 746, 754 (7th Cir. 2012) (holding that "a party 'waive[s] the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms.'" (alteration in original) (citation omitted)); *Frank v. Walker*, 819 F.3d 384, 387 (7th Cir. 2016) (explaining that "an appellee may defend the judgment with any properly preserved argument"); *Fields v. City of Chicago*, 981 F.3d 534, 557 n.4 (7th Cir. 2020) ("We have held that we can affirm a district court even on grounds not raised at all by the appellee, as long as the argument was presented to the district court and the appellant had an opportunity to respond to the argument such that the appellee did not waive it in that court.").

### D.    Plaintiffs' Unanimity Argument Is Wrong

Plaintiffs assert that "[s]ince the [BIPA] amendment was enacted, every court to consider the issue has held that Amended BIPA does not apply retroactively to conduct predating its effective date."  RB 40.

Plaintiffs are incorrect, as at least one Illinois state court decision has held that the BIPA amendment effected a procedural change and therefore applies retroactively.  In *Sellers v. DNJ Intermodal Servs., LLC*, Case No. 2024LA00092 (Will Cnty. Cir. Ct.) ("*Sellers*"), the plaintiffs sought damages for each scan in violation of BIPA's substantive provisions, advancing a "per scan" damages theory.  *See Sellers* Def. DNJ Int'l Servs., LLC's Mot. to Strike Pls.' Damages Request at 2 (Sept. 11, 2024) (Addendum ("Add") 2) (citing the plaintiffs' complaint).  The defendant moved to strike those damages allegations, arguing that the BIPA amendment is "a procedural

amendment implicating only the monetary remedy available" and therefore "is retroactive under controlling Illinois precedent." Add6.

The court held that the amendment is retroactive. *See Sellers* Order (Oct. 31, 2024) (Add15). Acknowledging to the plaintiffs that it is "never pleasant when someone cuts the throat of the golden goose," the court ruled that "the revision to the statute is procedural in nature" and granted the defendant's motion to strike damages insofar as they were sought on a per-scan basis. *Sellers* Tr. of Proceedings 3-4 (Oct. 31, 2024) (Add18-19). The plaintiffs moved for reconsideration, and a successor judge denied that motion. *See Sellers* Order (Feb. 18, 2025) (Add22).

In light of *Sellers*, Plaintiffs' contention that "[c]ourts across Illinois" have "uniformly rejected defendants' arguments" is wrong. RB 40. Plaintiffs should have known as much: The plaintiffs in *Sellers* were represented by the same firm that represents Plaintiff Gregg in this appeal.

\*　　\*　　\*

By targeting BIPA's "right of action" to limit the amount an aggrieved person can "recover" for violations of BIPA, 740 ILCS 14/20(b), the BIPA amendment effects only a procedural and remedial change. It therefore applies retroactively to pending cases at the time of its enactment. The legislature did not clearly say otherwise, and Plaintiffs have no "accrued" right to recover for each scan at issue in these cases.

## II.  ALTERNATIVELY, THE BIPA AMENDMENT ONLY CLARIFIED BIPA AND THEREFORE APPLIES RETROACTIVELY ON THAT GROUND

Alternatively, if this Court does not find the BIPA amendment is a remedial or procedural change for purposes of Section 4 of the Statute on Statutes, it should

conclude that the BIPA amendment applies retroactively because it "is merely a clarification rather than a substantive change in the law." *K. Miller Constr. Co. v. McGinnis*, 938 N.E.2d 471, 481 (Ill. 2010). All parties agree that when "the circumstances surrounding" a statutory amendment suggest that "the legislature intended merely to interpret or clarify the original act," statutory changes are clarifications that apply to pending cases. *Id.* (citation omitted); *see* RB 34-35. Illinois law holds that clarifications "must be accepted as a legislative declaration of the meaning of the original Act." *K. Miller*, 938 N.E.2d at 482. And as Plaintiffs agree (RB 34), the Illinois courts look to "[a] number of factors," none independently dispositive, to determine whether an amendment qualifies as a clarification: whether (1) the legislature "'declared that it was clarifying any prior enactment,'" (2) "'a conflict or ambiguity existed prior to the amendment,'" and (3) "'the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history.'" 938 N.E.2d at 481 (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009)). All three factors are present here.

First, the General Assembly indicated that the BIPA amendment amounted to a clarification. As the Illinois Supreme Court recognized in *Cothron*, BIPA as originally enacted had "no language … suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." 216 N.E.3d at 929. So the Court expressly called on the General Assembly to "review these policy concerns and *make clear*"—that is, clarify—"its intent regarding the assessment of damages under the Act." *Id.* (emphasis added). The General Assembly

did just that in passing the BIPA amendment. Indeed, legislators recognized they were amending BIPA to "respon[d] to the [Illinois Supreme] [C]ourt's invitation to address liability" and to "clarify the intent that we have regarding damages for each violation." Joint Suppl. Appendix ("JSA") 3, ECF 34.

Plaintiffs protest that the General Assembly did not include a "declaration" that the BIPA amendment itself was a clarification and argue that "[n]o sponsor" of the amendment "stated that the amendment was merely a clarification of existing law." RB 35. Yet Plaintiffs cannot and do not dispute that the General Assembly enacted the amendment in direct response to the Illinois Supreme Court's plea to "make clear" the Act's meaning. *Cothron*, 216 N.E.3d at 929.

Plaintiffs' argument further fails to account for express statements that the amendment was designed to "clarify" the General Assembly's intent regarding damages. *See* Opening Brief for Defendants-Appellants Universal Intermodal Services, Inc. 18-19 (No. 25-2761) (citing statements by Representative Williams, Senator Cunningham, and Representative Rashid). Representative Rashid stated that the amendment "adds much needed clarity that helps small businesses operate in a more predictable regulatory environment." JSA11. And Representative Williams explained that the amendment "addresses the invitation by the court to address damages, and that's exactly what we're doing here." *Id.* When asked whether the amendment "clarif[ies] [the] intention [of the General Assembly] that the availability of discretionary liquidated damages serves to deter future violations without destroying a defendant's business," Representative Williams simply

answered "[y]es." JSA9. These statements confirm the General Assembly's intent that the amendment clarify BIPA's damages regime.

The second and third *K. Miller* factors are satisfied as well: It was ambiguous prior to the amendment whether BIPA authorizes the "per-scan" damages theory that Plaintiffs pursue here, and the amendment is consistent with a reasonable interpretation of pre-amendment BIPA. Again, the Illinois Supreme Court did not think BIPA was *un*ambiguous, else it would not have asked the General Assembly to "make clear" its intent regarding damages under the Act. *Cothron*, 216 N.E.3d at 929. And the fact that the Illinois Supreme Court thought the text of BIPA was not "clear" shows that there existed "'conflict or ambiguity'" prior to the BIPA amendment. *K. Miller*, 938 N.E.2d at 481-82 (citation omitted).

Plaintiffs assert that "[t]he Illinois Supreme Court has already held that pre-amendment BIPA was not ambiguous, including how claims accrue thereunder." RB 36. That assertion misses the point. All agree that *Cothron* held a claim accrues with each scan. *See* 216 N.E.3d at 929. This does not mean, however, that *Cothron* held that *damages* were available for every substantive violation of BIPA. *Cothron* did not hold as much. Instead, the Court stated that there was "no language" in BIPA "suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Id.* For the same reason, Plaintiffs are wrong to argue that "the amendment is not consistent with any reasonable interpretation of pre-amendment BIPA." RB 38 (capitalization normalized). The better explanation of *Cothron* is that the Illinois Supreme Court thought the legislature could reasonably

"make clear" that it never intended for BIPA to authorize such damages awards. 216 N.E.3d at 929.

In short, because the Illinois Supreme Court specifically asked the General Assembly to clarify which damages were available under BIPA, and because the General Assembly did so by enacting the BIPA amendment, the amendment is a clarification, and thus applies retroactively to pending cases. *See K. Miller*, 938 N.E.2d at 481. Each factor identified by the Illinois Supreme Court is satisfied: the statutory history show that the legislature meant the amendment to clarify BIPA, BIPA was ambiguous as to the availability of "per scan" damages before the amendment, and the amendment is consistent with the original version of BIPA. As a result, even setting aside analysis under Section 4 of the Statute on Statutes, the amendment is a mere clarification of BIPA that applies to cases pending as of the time of the amendment's enactment.

## III. PLAINTIFFS' CONSTITUTIONAL ARGUMENTS ARE MERITLESS

Plaintiffs separately assert that Illinois separation-of-powers principles "independently forbid retroactive legislative revision" of BIPA, RB 42 (capitalization normalized), and that "constitutional avoidance" also "independently forecloses Defendants' retroactivity theory," RB 44. Neither contention is correct.

As to the separation of powers, Plaintiffs argue that because "the Illinois Supreme Court has finally interpreted" BIPA, "the legislature cannot retroactively change that construction by relabeling a substantive amendment as a 'clarification.'" RB 42. This argument rests on the premise that the Illinois Supreme Court held in *Cothron* that pre-amendment BIPA unambiguously provided for a "per scan"

damages regime. As explained above, *supra* at 21-22, that premise is wrong: In *Cothron*, the Court expressly asked the legislature to "make clear its intent" regarding damages under the Act, conveying the Court's view that the statutory text was unclear. 216 N.E.3d at 929. That the legislature responded by clarifying its intent does not offend the separation of powers; to the contrary, it respects them. In any event, even if the amendment effected a change in BIPA's damages regime rather than a clarification, the change is remedial and thus applies retroactively under Section 4 of the Statute on Statutes.

Plaintiffs' constitutional avoidance argument fares no better. According to Plaintiffs, even though the Illinois Supreme Court has explicitly abandoned a "vested rights" theory of retroactivity, RB 45, Plaintiffs nevertheless can avoid retroactive application of the BIPA amendment because they have a "vested right" in the damages regime that attached to claims accruing before the amendment's effective date, RB 44-45. This argument is nonsensical. As Plaintiffs acknowledge, Illinois law no longer recognizes a "vested rights" approach in assessing retroactivity. *Commonwealth Edison*, 749 N.E.2d at 970-72. And even if courts still considered the existence of vested rights, the Illinois Supreme Court has squarely held that "there is no vested right in any particular remedy or procedure." *Dardeen*, 710 N.E.2d at 830.

To the extent Plaintiffs stake their vested rights theory on the notion that the BIPA amendment eliminates previously accrued claims under the Act, that argument misunderstands how the amendment functions—it affects only the recovery to which

an aggrieved party is entitled, not the elements of what constitutes a substantive violation of the Act. *See supra* at 7-13. Plaintiffs contend that "[t]he existence of a vested claim is itself constitutionally protected," but cite no Illinois case supporting that incorrect proposition. This is no surprise, as Illinois precedent squarely supports applying remedial and procedural amendments retroactively to pending cases. *See Perry*, 106 N.E.3d at 1027; *Glisson*, 782 N.E.2d at 257; *J.T. Einoder*, 28 N.E.3d at 766; *Dardeen*, 710 N.E.2d at 829. None of those cases suggests that doing so raises any constitutional concern under the Illinois Constitution—and if it had, the Illinois Supreme Court was in the best position to say so.[4]

---

[4] Finally, Plaintiffs' separation-of-powers and constitutional avoidance arguments are forfeited as to Union Pacific and Universal Intermodal Services, Inc., et al. Plaintiffs Clay and Willis did not raise those arguments in the district court proceedings in those cases, and the arguments are forfeited as a result. *See supra* at 18-19.

## CONCLUSION

This Court should hold that Illinois Public Act 103-0769 applies retroactively to cases, like these, pending at the time of its enactment, and accordingly should reverse the district court orders holding otherwise.

Dated: December 10, 2025

Harry J. Secaras
Jennifer H. Kay
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
Suite 4300
155 N. Wacker Drive
Chicago, IL 60606
(312) 558-1220
harry.secaras@ogletree.com

Melissa M. Pesce
[COR NTC Retained]
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
Suite 650
7700 Bonhomme Avenue
St. Louis, MO 63105
(314) 898-4079

*Counsel for Defendants-Appellants*
*Universal Intermodal Services, Inc.,*
*Universal Logistics Holdings, Inc., HR-1*
*LLC, Universal Management Services,*
*Inc., and Data System Services LLC*

Jason A. Selvey
JACKSON LEWIS P.C.
Suite 2500
150 N. Michigan Avenue
Chicago, IL 60601
(312) 787-4949
jason.selvey@jacksonlewis.com

*Counsel for Defendant-Appellant*
*Central Transport LLC*

Respectfully submitted,

*/s/ Gary Feinerman*
Gary Feinerman
Sean Berkowitz
Johanna M. Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

Michael Rubin
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendants-Appellants*
*Union Pacific Railroad Company*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) and Seventh Circuit Rule 32(c) because it contains 6,825 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced 12-point font.

Dated: December 10, 2025          */s/ Gary Feinerman*
                                  Gary Feinerman

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2025, I caused the foregoing Consolidated

Reply Brief for Defendants-Appellants to be served by electronic means through the

Court's CM/ECF system on counsel for all parties who are registered CM/ECF users.

*/s/ Gary Feinerman*
Gary Feinerman

**ADDENDUM**

## TABLE OF CONTENTS

| Page | Description |
|------|-------------|
| Add1 | Defendant DNJ Intermodal Services, LLC's Motion to Strike Plaintiffs' Damages Request, *Sellers v. DNJ Intermodal Services, LLC*, Case No. 2024 LA 00092 (Cir. Ct. Will Cnty. filed Sept. 11, 2024) |
| Add15 | Order Granting Defendant's Motion to Strike Plaintiffs' Damages Request, *Sellers v. DNJ Intermodal Services, LLC*, Case No. 2024 LA 00092 (Cir. Ct. Will Cnty. filed Oct. 31, 2024) |
| Add16 | Report of Proceedings at Hearing held October 31, 2024, *Sellers v. DNJ Intermodal Services, LLC*, Case No. 2024 LA 00092 (Cir. Ct. Will Cnty.)<br><br>—Samuel Eirinberg on behalf of Plaintiff<br><br>—Daniel Saeedi on behalf of Defendant |
| Add22 | Order Denying Motion to Reconsider, *Sellers v. DNJ Intermodal Services, LLC*, Case No. 2024 LA 00092 (Cir. Ct. Will Cnty. filed Feb. 18, 2025) |

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2024LA000092
Filed Date: 9/11/2024 5:13 PM
Envelope: 29329760
Clerk: RR

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL DISTRICT**
**WILL COUNTY, ILLINOIS**

| | |
|---|---|
| JEREMY SELLERS, MARK MCDONALD, FREDERICK NICHOLAS WILKES, RICHARD RANSOM, KENNETH ROCHO, and KEITH REED JR., | ) ) ) ) |
| | ) Case No. 2024 LA 00092 |
| Plaintiffs, | ) |
| | ) Honorable Roger D. Rickmon |
| v. | ) |
| | ) |
| DNJ INTERMODAL SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT DNJ INTERMODAL SERVICES, LLC'S**
**MOTION TO STRIKE PLAINTIFFS' DAMAGES REQUEST**

Defendant DNJ Intermodal Services, LLC ("Defendant"), by and through its counsel, Blank Rome, LLP, hereby moves to strike Plaintiffs Jeremy Sellers, Mark McDonald, Frederick Nicholas Wilkes, Richard Ransom, Kenneth Rocho, and Keith Reed, Jr.'s (collectively "Plaintiffs") damages request under Illinois Code of Civil Procedure Section 2-615. 735 ILCS 5/2-615.

**INTRODUCTION**

After the Illinois Supreme Court in *Cothron v. White Castle* invoked the legislature to "make clear its intent regarding the assessment of damages" under BIPA, the legislature answered the call unequivocally. BIPA Amendment SB 2979 ("Amendment") clarified that when a private entity collects the same biometric identifier of an individual using the same method of collection, the private entity commits only a single BIPA violation under Section 15(b), for which the plaintiff "is entitled to, *at most, one recovery*." Under Section 15(d), the Amendment again instructs that a plaintiff is entitled to "*at most, one recovery*," per disclosure of the same biometric identifier to the same recipient. The Amendment, as of August 2, 2024, is indisputably controlling law.

**Add1**

Plaintiffs' Complaint seeks damages for "each" violation of BIPA and details the hundreds of times Plaintiffs purportedly scanned their fingerprints in Defendant's timeclock. (*See* Compl. ¶¶ 85, 93, 102.) This is clearly a "per scan" theory that has been foreclosed by the Amendment. Regardless of whether Plaintiffs scanned their fingerprints one time or one thousand, and regardless of how many times that information was purportedly disclosed to the same third party, the Amendment provides that there is one violation, ***and at most, one recovery***. Plaintiffs' damages request, seeking damages for "*each time*" Plaintiffs scanned their fingerprints and "*each time*" DNJ disclosed it to the same third party, should be stricken.

Plaintiffs will be unable to overcome the undeniable intent of the Illinois legislature to eliminate windfall damages bearing no constitutional relation to any actual harm, and expressly limit damages under BIPA to ***at most one recovery***. But, Plaintiffs may argue that the Amendment is not retroactive. This argument is baseless and should be rejected out of hand. It is well-settled that procedural statutory amendments, including the limitation of a remedy available under a statutory right of action, are retroactive, and the legislature merely clarified its longstanding intent. Nor would applying the Amendment retroactively raise any constitutional impediment as the Supreme Court has made clear that a plaintiff has no "vested right in a particular remedy or procedure." *Ogdon v. Gianakos*, 415 Ill. 591, 597, 114 N.E.2d 686, 690 (1953).

In sum, the Court should strike Plaintiffs' "per scan" claims of damages as precluded under the Amendment.

## BACKGROUND

### A.  BIPA Amendment SB 2979

BIPA Amendment SB 2979 was enacted in direct response to the Illinois Supreme Court's decision in *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, 216 N.E.3d 918, which held that

a BIPA violation accrued for each collection/capture of an individual's biometric identifiers for the purpose Section 15(b) and for each unauthorized transmission to a third party under 15(d). *Id.* ¶¶ 24, 28. Although the Supreme Court's decision addressed claim accrual, rather than damages, the decision raised grave concerns about extraordinary and unprecedent damages awards that could result from a separate BIPA violation accruing upon each collection or disclosure to a third party. That is because the prior version of Section 20 authorized liquidated damages for "each violation" of BIPA, making the available statutory damages remedy astronomical in employment cases like this one where hundreds, if not thousands, of employees scan their fingerprint multiple times daily. *See generally id*. ¶ 40. In light of these concerns, the Illinois Supreme Court called upon the legislature to "review these policy concerns and make clear its intent regarding the assessment of damages under [BIPA]." *Id.* ¶ 43.

The Illinois legislature answered the call, and on August 2, 2024, the Amendment was singed into law, *effective immediately*. The Amendment clarified that the available damages remedy under Section 15(b) BIPA is limited to only **one violation and one recovery** for any number of collections/captures of the same biometric identifier under the same method of collection. 740 ILCS 14/20(b), *as amended* by SB 2979. Similarly, under Section 15(d), there is likewise only **one violation and one recovery** for any number of transmissions of the same biometric identifier to the same third party. 740 ILCS 14/20(c), *as amended* by SB 2979. In full, the Amendment added the following clarifying, and unequivocal language to Section 20:

***

   (b) For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 **has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section.**

> (c) For purposes of subsection (d) of Section 15, a private entity that, in more than one instance, discloses, rediscloses, or otherwise disseminates the same biometric identifier or biometric information from the same person to the same recipient using the same method of collection in violation of subsection (d) of Section 15 ***has committed a single violation of subsection (d) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section regardless of the number of times the private entity disclosed, redisclosed, or otherwise disseminated the same biometric identifier or biometric information of the same person to the same recipient.***

740 ILCS 14/20, *as amended* by SB 2979 (emphasis added). The Amendment, signed into law on August 2, 2024, is "effective immediately."

## B. Plaintiffs' Complaint

Plaintiffs filed their Complaint in January 2024, on an individual basis, seeking damages for "each" alleged violation of BIPA. (Compl. ¶¶ 93, 102; Prayer). As to Plaintiffs' Section 15(b) claims, the Complaint asserts statutory violations, and seeks damages, for "each time [DNJ] collected, captured, obtained, stored, or used" Plaintiffs' biometric information. (*Id*. ¶ 93, Prayer.) Likewise, under Section 15(d), Plaintiffs assert claims for "each time there was a disclosure, redisclosure or dissemination of the Plaintiffs' biometric identifiers" and seek liquidated damages for "each violation." (*Id*. ¶ 102; Prayer.)

Significantly, Plaintiffs allege that DNJ purportedly collected only one "biometric identifier," Plaintiffs' fingerprints, and through only one method of collection, DNJ's purported biometric ADP timeclock. (Compl. ¶¶ 11, 24, 27, 32, 36, 40, 44.) Specifically, Plaintiffs allege that each Plaintiff respectively "scanned [their] fingerprint[s] to clock in or clock of [DNJ's] ADP time clock system no less than two times each working day." (Compl. ¶¶ 24, 27, 32, 36, 40, 44.) Moreover, as to Plaintiffs' allegations of unauthorized disclosure of their biometric information to a third party, the Complaint identifies only one purported third-party, DNJ's payroll provider, ADP. (*Id*.; Compl. ¶¶ 9-15.)

4

**Add4**

Plaintiffs' request for statutory damages for "each time" DNJ captured or collected their fingerprints under Section 15(b) and for "each" alleged disclosure are conclusively foreclosed by the Amendment. Thus, the Court should strike Plaintiffs' request for damages for "each" collection/disclosure and limit Plaintiffs' requested damages to **at most one recovery** under Sections 15(b) and (d).

## LEGAL STANDARD

A motion to strike allegations from the Complaint is properly brought under Section 2-615(a) of the Illinois Code of Civil Procedure. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 41, 988 N.E.2d 984, 996. Under Section 2-615(a), courts may order that a "pleading or portion thereof be stricken because substantially insufficient in law." 735 ILCS 5/2-615(a). In ruling on a Section 2-615 motion to strike, courts consider only the facts raised in the pleading, and accept them as true. *Wegman v. Pratt*, 219 Ill. App. 3d 883, 896, 579 N.E.2d 1035, 1044 (5th Dist. 1991). Significantly, however, when damages requested in a complaint are not supported by law, an order striking the relief requested is appropriate. *See Dardeen*, 186 Ill. 2d at 292 (striking treble damages from complaint based on statutory amendment that eliminated right to relief.); *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 3, 17 N.E.3d 219, 220 (affirming trial court's order striking complaint's prayer for punitive damages); *Garlick v. Bailitz*, 2012 IL App (1st) 120435-U, ¶ 13 (affirming trial court's order striking request for punitive damages as not available under the cause of action asserted).

## ARGUMENT

### I.  THE AMENDMENT'S PLAIN LANGUAGE LIMITS PLAINTIFFS' RIGHT TO AT MOST ONE $1,000 RECOVERY PER PLAINTIFF

To begin, there is no question that the Amendment expressly limits Plaintiffs' relief to **one recovery** irrespective of the number of times DNJ purportedly scanned their fingerprints, or

disclosed their biometric information to the same third party. 740 ILCS 14/20(b) & (c). Here, as outlined above, the Complaint only places one form of biometric identifiers at issue (fingerprints), one form of collection (DNJ's fingerprint timeclock), and one third party to which Plaintiffs' biometrics were allegedly disclosed (ADP). The Amendment could not be clearer that under these circumstances there is only one violation, ***and at most, one recovery***. *See Petersen v. Wallach*, 198 Ill. 2d 439, 445, 764 N.E.2d 19, 23 (2002) ("When the language of an enactment is clear, it will be given effect without resort to other interpretative aids.") Plaintiffs' request for statutory damages for "each violation" on a per-scan basis runs directly afoul of controlling Illinois law. The Amendment should be enforced as written and Plaintiffs' damages request stricken.

## II. THE AMENDMENT IS RETROACTIVE UNDER CONTROLLING ILLINOIS SUPREME COURT PRECEDENT

### A. As a Procedural Enactment, the Amendment is Retroactive.

Nor should there be any dispute that the Amendment, a procedural amendment implicating only the monetary remedy available, is retroactive under controlling Illinois precedent. The Illinois Supreme Court applies a two-part test to determine whether a statutory amendment will be applied retroactively. *See Commonwealth Edison Co. v. Will Cnty. Collector*, 196 Ill. 2d 27, 39, 749 N.E.2d 964, 972 (2001) (adopting *Landgraf v. USI Film Products*, 511 U.S. 244 (1994)); *Perry v. Dep't of Fin. & Prof'l Regulation*, 2018 IL 122349, ¶ 64, 106 N.E.3d 1016, 1032. Illinois courts, like federal courts, first look to the expressly stated legislative intent to determine retroactivity. *See Perry*, 2018 IL 122349, ¶ 64. When a statutory amendment is silent as to its temporal effect, like the Amendment here, Illinois courts follow Section 4 of the Illinois' statute

on statutes, an Illinois statute that prescribes the temporal reach of all amendments to Illinois legislation. *Perry,* 2018 IL 122349, ¶ 40 (interpreting 5 ILCS 70/4.)[1]

Critically, although Section 4 of the Illinois statute on statutes contains a presumption against retroactivity for **substantive** statutory amendments affecting the parties' underlying obligations, Illinois courts consistently and uniformly interpret Section 4 to apply procedural amendments retroactively. *See Midwest Generation, LLC v. Illinois Pollution Control Bd.*, 2024 IL App (4th) 210304, ¶ 208 ("Section 4 is a general savings clause, which [the supreme court] has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only"). The Supreme Court has explained unequivocally that "Section 4 represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Caveney v. Bower*, 207 Ill. 2d 82, 92, 797 N.E.2d 596, 602 (2003).

Here, under well-settled and controlling Illinois precedent, statutory amendments that merely limit a plaintiff's right to a monetary recovery are procedural and applied retroactively. *Dardeen*, 186 Ill. 2d at 296 (amendment limiting remedy available procedural and thus retroactive); *see Ogdon v. Gianakos*, 415 Ill. 591, 597, 114 N.E.2d 686, 690 (1953) ("when a change of law merely affects the remedy or law of procedure, all rights of action will be

---

[1]While federal courts apply a "retroactive impact" analysis when a statutory amendment is silent on its temporal reach, the Illinois Supreme Court has clarified that "Illinois courts will rarely, if ever, need to go beyond step one of the [federal] analysis. This is because an amendatory act which does not, itself, contain a clear indication of legislative intent regarding its temporal reach, will be presumed to have been framed in view of the provisions of section 4 of our Statute on Statutes." *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 31, 28 N.E.3d 758, 765; *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406, 917 N.E.2d 475, 483 (2009) (Illinois "courts need never go beyond the threshold step of the *Landgraf* test. That is because the legislature will always have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes.")

enforceable under the new procedure without regard to whether they accrued before or after such change of law…") (emphasis added). Significantly, while the Illinois Supreme Court has clarified and evolved its retroactivity test over the past two decades, the retroactive application of procedural enactments has consistently remained the law in this state. *Compare Dardeen*, 186 Ill. 2d at 296, with *Perry,* 2018 IL 122349, ¶ 40 (each confirming overarching principle that procedural amendments are to be given retroactive effect.) Indeed, Illinois courts have continued to affirm and rely on its prior precedent for this purpose. *See People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 36, 28 N.E.3d 758, 766 (*citing Dardeen* following adoption of *Landgraf* test, but finding it distinguishable under facts); *Bank of New York Mellon as Tr. for Certificate Holders of CWALT, Inc.*, 2020 IL App (1st) 191168, ¶ 26, 158 N.E.3d 1164, 1170 (applying *Ogdon*, 415 Ill. 591, 597.)

Against this backdrop, *Dardeen v. Heartland Manor, Inc.,* an Illinois Supreme Court decision requiring retroactive application of a statutory amendment that eliminated a monetary remedy controls. 186 Ill. 2d at 299. There, the Illinois Supreme Court held an amendment removing treble damages from the Nursing Home Care Act, 210 ILCS 45/2–101—thereby dramatically reducing the plaintiff's available statutory recovery—required retroactive application as non-substantive change to the law. *Id.* The Supreme Court, although applying a prior "vested rights" test to retroactivity, confirmed that its decision ultimately came down to whether or not the amendment was procedural— and it was. *See id.* "***Where a statutory amendment is procedural in nature, no vested rights are involved, and the amendment is properly applied to an existing controversy***…" *Id.* (emphasis added). The Supreme Court reasoned that the amendment at issue applied retroactively because a plaintiff simply has no substantive right to the continuance of a

method of procedure or remedy, including "exemplary, punitive, vindictive or aggravated damages" authorized by a statute. *Id*.

Critically, in determining that the removal of plaintiff's right to recover treble damages did not alter the plaintiff's substantive rights, the Supreme Court relied heavily on the fact that a plaintiff's underlying statutory cause of action remained unchanged:

> The repeal of one of the remedies available to plaintiff under the Act does not deprive plaintiff of her cause of action. ***As stated, the amendment alters neither the substance nor the elements of a violation under the Act. The amendment to section 3–602 pertains only to the remedies available to plaintiff once plaintiff has proved her cause of action.***

*Id*. at 300 (emphasis added). In other words, even though the plaintiff could no longer triple his statutory damages upon a violation of the statute, the amendment did not deprive the plaintiff of his underlying cause of action, or even alter it. *See id*.; *see also Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 618, 803 S.E.2d 582, 588 (2017) (applying *Dardee*n and holding limitation of backpay remedy under employment statute applied retroactively as a remedial provision.)

The same outcome is compelled here. The limitation or reduction of an available monetary remedy simply does not implicate a substantive right: it is purely procedural, and thus retroactive under controlling precedent. Tellingly, the substantive obligations under BIPA are governed under an entirely separate provision, Section 14/15, which prescribes obligations relating to the retention, collection, disclosure, and destruction of biometric information. 740 ILCS 14/15. None of these substantive rights are altered by the relief requested in this motion, which involves only the remedies available under Section 14/20. The fact that a plaintiff is entitled to "***at most one recovery***" for an underlying violation, rather an astronomical multiple, does not change the substance of BIPA's underlying mandates, and it is directly in line with, and even stronger, than the removal of treble damages in *Dardeen. See* 740 ILCS 14/20. Indeed, while *Dardeen* removed

9

a longstanding damages provision, the legislature here merely clarified its original intent as to damages recoverable. On these facts, retroactive application of the Amendment is compelled.

### B. The Amendment Clarifies the Legislature's Intended Damages Under BIPA.

Alternatively, even if this Court finds that the Amendment could alter a substantive right, it should nevertheless find that the Amendment merely clarifies the existing damages provisions under BIPA, rather than changes them. Rather than enacting a change in the law, "if an amendment only clarifies existing law, courts should apply it to pending cases." *In re T.T.*, 322 Ill. App. 3d 462, 465, 749 N.E.2d 1043, 1045 (1st Dist. 2001); *Middleton v. City of Chicago*, 578 F.3d 655, 663 (7th Cir. 2009) ("[C]oncerns about retroactive application are not implicated when an amendment ... is deemed to clarify relevant law rather than effect a substantive change in the law") (quoting *Piamba Cortes v. Am. Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir.1999)). Illinois courts have thus not hesitated to apply statutory amendments retroactively where the legislature acts to clarify its original statutory intent. *See Royal Imperial Grp., Inc. v. Joseph Blumberg & Assocs., Inc.*, 240 Ill. App. 3d 360, (1992) (applying statutory amendment retroactively where it clarified legislature's original intent as to whether public or private harm was required for recovery); *see also In re T.T.,* 322 Ill. App. 3d 462, 466, 749 N.E.2d 1043, 1046 (2001) (amendment to Adoption Act clarifying dispute over standards of proof required to prove depravity applied retroactively as a clarification of existing law).

Significantly, under similar circumstances, Illinois courts have construed amendments implicating a plaintiff's right to recovery under a statute as a "clarification", rather than change in the law. *Royal Imperial Grp., Inc. v* 240 Ill. App. 3d at 360. There, the Illinois Appellate Court considered the legislature's specific instruction, made by statutory amendment, that a proof of a public injury was not required for a plaintiff to recover under the Illinois Consumer Fraud Act. *Id.*

at 363. In holding that the legislature's clear instruction merely clarified existing law, the court found significant that the Amendment was enacted in the wake of a dispute over the requisite injury required for a statutory recovery. *Id.* at 355 (quoting *People v. Badoud*, 122 Ill.2d 50, 56, 118 Ill.Dec. 407, 410, 521 N.E.2d 884, 887 (1988) ("Where, as here, an amendment is enacted soon after controversies have arisen regarding the statute amended, it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute.")).

Here, similarly, the Amendment was enacted in response to widespread controversy over the damages authorized under Section 14/20 of BIPA. Significantly, the Illinois Supreme Court's decision in *Cothron* did not directly resolve the available damages under Section 14/20, addressing only claim accrual under Section 14/15. But the dispute over BIPA's resulting damages in light of the Supreme Court's holding that each scan or unauthorized transmission of biometric information amounted to separate violations led the Supreme Court to ask the legislature to "**make clear its intent**." *Cothron* 2023 IL 128004 ¶ 43 (emphasis added). That is exactly what the legislature did in limiting damages authorized under Section 14/20.

Simply put, astronomical damages on a per-scan basis, irrespective of the resulting harm, is not what the legislature intended when it passed BIPA in 2008 or today. *See* 740 ILCS 14/5(a) (addressing legislative findings of original enactment to manage the "promise" of biometric technology for Illinois residents.) The Amendment now clarifies and confirms the legislature's stated purpose. For this additional reason, the Court should apply the Amendment retroactively to strike Plaintiffs' unfounded damages request.

### C. Applying The Amendment Retroactively Will Not Impede Plaintiffs' Constitutional Rights.

Finally, there is nothing unconstitutional about applying the Amendment retroactively, and to the extent Plaintiffs raise such a challenge, it would be entirely unfounded. While Illinois

courts will not apply an amendment retroactively if such application violates a constitutional right, Illinois law is unequivocal that a statutory remedy is not so protected. *White v. Sunrise Healthcare Corp.*, 295 Ill. App. 3d 296, 692 N.E.2d 1363 (1998) (no vested right in statutory penalty); *Doe A. v. Diocese of Dallas,* 234 Ill. 2d 393, 411, 917 N.E.2d 475, 485 (2009) (confirming longstanding constitutional precedent remains controlling under evolving retroactivity standards).

It has been long settled that there is no vested right, let alone a constitutional interest, in a plaintiff's right to a statutory remedy. As the court stated aptly in *Sunrise Healthcare Corp.*, "the claim of a vested right is most clearly untenable where the remedy eliminated is a statutory penalty that goes beyond what is necessary to compensate the plaintiff…***Our courts have consistently viewed any interest in such a penalty as an expectancy that the legislature may negate any time before a final judgment creates a property interest in the award***." *Id*. at 1367 (emphasis added). For the same reasons, retroactive application of the Amendment here likewise raises no constitutional impediments.

In sum, the Amendment should be given retroactive effect, and Plaintiffs' request for per scan and per transmission damages stricken. *See Perry*, 2018 IL 122349, ¶ 43 ("If a statutory change is procedural, then the change will apply retroactively, *i.e.*, to pending cases in the absence of a constitutional impediment to such retroactive application").

## <u>CONCLUSION</u>

For the above reasons, DNJ asks this Court to strike Plaintiffs' statutory liquidated damages request as precluded by BIPA's retroactive Amendment.

Dated: September 11, 2024    Respectfully submitted:

        By: <u>/s/ *Daniel R. Saeedi*</u>
        Daniel R. Saeedi (#6296493)
        Jeffrey N. Rosenthal (#6338497)
        Rachel L. Schaller (#6306921)

12

**Add12**

BLANK ROME LLP
444. W. Lake Street, Suite 1650
Chicago, IL 60606
Phone: (312) 776-2575
daniel.saeedi@blankrome.com
jeffrey.rosenthal@blankrome.com
rachel.schaller@blankrome.com

*Attorneys for DNJ Intermodal Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing on September 11, 2024, and served a copy by email on all parties of record.

/s/ *Daniel R. Saeedi*
Daniel R. Saeedi

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL DISTRICT
## WILL COUNTY, ILLINOIS

|  |  |
|---|---|
| JEREMY SELLERS, MARK MCDONALD, FREDERICK NICHOLAS WILKES, RICHARD RANSOM, KENNETH ROCHO, and KEITH REED JR., | : <br> : <br> : <br> : Case No. 2024LA00092 <br> : <br> : Honorable Roger D. Rickmon <br> : |
| Plaintiffs, <br> vs. | : <br> : <br> : |
| DNJ INTERMODAL SERVICES, LLC., | : <br> : |
| Defendant. | : |

### [PROPOSED] AGREED ORDER

This matter having come before the Court on October 31, 2024, on Defendant DNJ Intermodal Services LLC's Section 2-615 Motion to Strike Plaintiffs' Damages Request, IT IS HEREBY ORDERED:

1.   Defendant's Motion is Granted.

2.   Plaintiffs shall file an Amended Complaint consistent with this Order by no later than December 2, 2024.

3.   Plaintiffs have indicated in open court that they will move to reconsider this Order. Should Plaintiffs seek to do so, the motion should be filed by December 2, 2024.

Dated: 10/31/2024 2:54 PM _____

ENTERED: *Roger Rick* _____
Hon. Roger D. Rickmon

1    STATE OF ILLINOIS )
                      )  SS.
2    COUNTY OF WILL   )

3         IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT
                      WILL COUNTY, ILLINOIS
4
     JEREMY SELLERS,                      )
5                                         )
                              Plaintiff,)
6                                         )
                -vs-                     ) NO. 2024 LA 92
7                                         )
     DNJ INTERMODAL SERVICES, LLC,        )
8                                         )
                              Defendant.)
9

10        REPORT OF PROCEEDINGS had at the hearing of the

11   above-entitled cause before the Honorable ROGER D. RICKMON,

12   on the 31st day of October, A.D., 2024.

13

14   APPEARANCES:

15       MR. SAMUEL EIRINBERG, Attorney At Law
             Appeared on behalf of the Plaintiff;
16
         MR. DANIEL SAEEDI, Attorney At Law
17           Appeared on behalf of the Defendant.

18

19

20

21

22            STEVE VITHOULKAS, CSR, RPR, RMR
                   Will County Courthouse
23                   Joliet, IL  60432

24

1      THE COURT:  24 LA 92, Sellers versus DNJ Intermodal

2   Services, Inc.

3      MR. SAEEDI:  Good morning, your Honor.  Dan Saeedi on

4   behalf of defendant DNJ.

5      MR. EIRINBERG:  Sam Eirinberg on behalf of the

6   plaintiffs.

7      THE COURT:  And this a motion to strike the damages

8   provision of the complaint.  It's a BIPA claim, correct?

9      MR. SAEEDI:  Yes, your Honor.

10      THE COURT:  I want to make sure that I don't mess up

11   with Bersani, that I got the right case in mind.  All right.

12   Thank you all for bringing me an issue that -- I love this

13   act.  I mean, fine piece of legislation, expertly crafted.

14      MR. SAEEDI:  That is the truth.

15      THE COURT:  We start out not even knowing if it's going

16   to be a law case or a comp case, although trying to use the

17   limited logic that I have, I assumed it would be hard to

18   assign a percentage of a man as a whole on these and thought

19   they wind up being law cases, which they did.  I guessed

20   right once, 30 years.

21          All right.  In this case we have a Supreme Court

22   opinion that subsequent amendment to the legislation which

23   in my opinion was a direct response to the Supreme Court.

24   The question is whether or not that new provision is

1    proactive or retroactive.  I believe that the revision to

2    the statute is procedural in nature which may make it

3    retroactive.  So the prayer for damages which would suggest

4    that there is an injury every time there is a violation and,

5    therefore, a separate award of damages for each violation

6    would be inappropriate.  The motion to strike the damages

7    requested is granted.  Do you want some time to fix the --

8    fix it?

9        MR. EIRINBERG:  Judge, we're going to file a motion to

10   reconsider.  We've obtained multiple opinions from other

11   courts.

12       THE COURT:  Appellate courts?

13       MR. EIRINBERG:  No.

14       THE COURT:  Well, then, what precedential value do they

15   have on this Court?

16       MR. EIRINBERG:  Well, they don't, but there is actually

17   additional reasoning that I was made aware of afterwards

18   that I would like to make the Court aware of.

19       THE COURT:  Well, Hoss, you file whatever you think you

20   need to to protect your client's rights, and good luck to

21   you.

22       MR. EIRINBERG:  Well, I will, Judge, because prior to

23   the amendment, each of my clients had hundreds of individual

24   fully formed substantive claims, and if the amendment

1   applies, they each have three.  So it's difficult for -- to

2   let a decision like this just --

3       THE COURT:  It's never pleasant when someone cuts the

4   throat of the golden goose.  So enter the order.  If you

5   want to file a motion to reconsider, do so.  That's your

6   decision to make.  You should always vigorously protect your

7   clients' rights and assert them, and that's all that is.

8   And no offense will be taken.

9       MR. EIRINBERG:  I appreciate that, Judge.

10      THE COURT:  But I don't put a lot of weight on what

11  other courts think unless they have Ill. App. or Illinois

12  Supreme behind them.

13      MR. EIRINBERG:  Well, I agree with that position.  I

14  just think the reasoning contained in the opinions is quite

15  persuasive and I thought that we should bring it to the

16  Court's attention.

17      THE COURT:  Well, you always make a big hit citing a

18  bunch of decisions out of Cook County, but go ahead and do

19  what you need to do.  When is our next date on this case?

20      MR. EIRINBERG:  I don't believe we have a future date,

21  do we?

22      MR. SAEEDI:  I do not belive so.  I think we need a

23  date.

24      THE COURT:  All right.  So I will give you 28 days to

1   file an amended complaint to be consistent with this order.

2   In the interim, if you want to file a motion to reconsider,

3   do so.  Your chances of getting it heard before I start my

4   next career at Sam's is remote, but there will be someone

5   here to take care of you.  So 28 days.  I'll see you back

6   here for status on pleadings January 16th, if that date

7   works for you folks.

8        MR. SAEEDI:  It does, your Honor.

9        MR. EIRINBERG:  That works, Judge.

10       THE COURT:  And then whatever time then you need to get

11   your motion put together.  Just notice it up and we'll deal

12   with it on a briefing schedule hearing date then, okay?

13       MR. EIRINBERG:  We will get it up shortly, Judge.

14       THE COURT:  You guys have a good day.

15       MR. EIRINBERG:  Thank you, your Honor.

16       MR. SAEEDI:  You, too.

17          (AND THOSE WERE ALL THE PROCEEDINGS HAD.)

18

19

20

21

22

23

24

1    STATE OF ILLINOIS   )

                          )   SS.

2    COUNTY OF W I L L   )

3

4

5

6

7           I, STEVE VITHOULKAS, Official Court Reporter for

8    the 12th Judicial Circuit, Will County, Illinois, do hereby

9    certify the foregoing to be a true and accurate transcript

10    of the electronic recording of the proceedings of the

11    above-entitled cause, which recording contained a

12    certification in accordance with rule or administrative

13    order.

14

15

16

17

18

19

20                                         

21                        STEVE VITHOULKAS

                       Official Court Reporter.

22

23

24

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

Sellers, et al.,
**Plaintiff/Petitioner**

vs

DNJ Intermodal Services, LLC
**Defendant/Respondent**

FILED

2025 FEB 18 AM 11:34

CLERK CIRCUIT COURT
WILL COUNTY, ILLINOIS

CASE NO: 24 LA 00092

## ORDER

| PLAINTIFF/PETITIONER PRESENT: ☐ YES ☐ NO | Judge Daniel Rippy | PLAINTIFF/PETITIONER'S ATTORNEY: Sam Eirinberg | PRESENT: ☒ YES ☐ NO |
|---|---|---|---|
| DEFENDANT/RESPONDENT PRESENT: ☐ YES ☐ NO | SELF-REPRESENTED LITIGANT (SRL): ☐ PLAINTIFF/PETITIONER ☐ DEFENDANT/RESPONDENT | DEFENDANT/RESPONDENT'S ATTORNEY: Daniel Saeedi | PRESENT: ☒ YES ☐ NO |

1. Plaintiffs' Motion to Reconsider is DENIED.

2. Plaintiffs shall amend their Complaint pursuant to the Court's October 31, 2024 Order by March 18, 2025.

3. This case is set for status on March 25, 2025 at 9:30 a.m. in courtroom 802, in-person or by zoom video conference.

Dated: 02/18, 20 25

Enter: _____ Judge

_____
(Signature of Plaintiff/Petitioner or Plaintiff/Petitioner's Attorney)

_____
(Signature of Defendant/Respondent or Defendant/Respondent's Attorney)

## ANDREA LYNN CHASTEEN, CLERK OF THE CIRCUIT COURT OF WILL COUNTY

White – Court   Yellow – Plaintiff   Pink – Defendant

7C (Revised 06/17)

REQUEST RECEIVED ON MONICA.PRISCO@BLANKROME.COM-12/08/2025 08:47:39 AM DOCUMENT SUPPLIED ON 12/08/2025 11:18:04 AM # 17197258123

Add22